**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------- X
                                                         :
In re:                                                   :    Chapter 11
                                                         :
MACH Gen, LLC, *et al.*,[1]                              :    Case No. 14- _____ (__)
                                                         :
                                 Debtors.                :    (Joint Administration Requested)
                                                         :
-------------------------------------------------------- X

**MACH GEN'S MOTION FOR INTERIM AND FINAL ORDERS
(I) AUTHORIZING MACH GEN TO OBTAIN POSTPETITION FINANCING,
(II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING
LIENS AND SUPER-PRIORITY CLAIMS, AND (IV) GRANTING
ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS**

MACH Gen, LLC, MACH Gen GP, LLC, Millennium Power Partners, L.P., New Athens

Generating Company, LLC, and New Harquahala Generating Company, LLC (each, a "MACH

Gen Entity," and collectively, "MACH Gen") hereby file this motion (the "Motion") seeking

entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the "Interim

Order"), and a final order, substantially in the form attached hereto as **Exhibit B** (the "Final

Order"):  (i) authorizing MACH Gen, LLC (the "Borrower") to obtain, and each of MACH Gen

GP, LLC, Millennium Power Partners, L.P., New Athens Generating Company, LLC, and New

Harquahala Generating Company, LLC (collectively, the "Subsidiaries") to guarantee,

postpetition financing in the form of a revolving credit facility from Beal Bank USA, Beal Bank

SSB, and/or one or more of their affiliates, as lenders (the "DIP Lenders"), with CLMG Corp.

("CLMG"), as administrative agent and collateral agent (in such capacities, the "DIP Agent"), in

---

[1]    The debtors in these chapter 11 cases and the last four digits of each debtor's taxpayer identification number are
       as follows:  (a) MACH Gen, LLC (6738); (b) MACH Gen GP, LLC (6738); (c) Millennium Power Partners,
       L.P. (6688); (d) New Athens Generating Company, LLC (0156); and (e) New Harquahala Generating
       Company, LLC (0092).  The debtors' principal offices are located at 9300 US Highway 9W, Athens, New York
       12015.

an amount up to $200 million (the "DIP Facility," and all loans and letters of credit made to or

for the benefit of any of the MACH Gen Entities in accordance therewith, the "DIP Extensions

of Credit," and together with all interest thereon and all fees, costs, expenses, indemnification

obligations and other liabilities owing by MACH Gen to the DIP Lenders or the DIP Agent, the

"DIP Obligations"), of which $55.7 million, plus the amount of deemed DIP Extensions of

Credit described in paragraph 5(e) below, shall be available on an interim basis, under the terms

of the Interim Order and the other DIP Loan Documents (as defined below), (ii) authorizing the

Borrower to use any proceeds from Prepetition Collateral (as defined below) to repay and

permanently reduce the Prepetition Revolving Credit Balance (as defined below) and, upon entry

of the Final Order, to use the proceeds of DIP Extensions of Credit to repay in full the remaining

Prepetition Revolving Credit Balance, (iii) authorizing the use of Cash Collateral (as defined

below) by MACH Gen effective as of the Petition Date, (iv) allowing superpriority

administrative expense status of the DIP Obligations in these chapter 11 cases and authorizing

MACH Gen to grant to the DIP Agent on behalf of the DIP Lenders automatically perfected

security interests in and liens on all of the Collateral (as defined below), (v) vacating and

modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent

necessary to implement and effectuate the terms and provisions of the Interim Order and the

Final Order, (vi) granting adequate protection to the Prepetition Agents (as defined below) and

the First and Second Lien Lenders (each, as defined below), (vii) scheduling a final hearing (the

"Final Hearing") to consider entry of the Final Order, and (viii) granting related relief.  In

support of the Motion, MACH Gen relies upon and incorporates by reference the *Declaration of*

*Garry N. Hubbard in Support of MACH Gen's Chapter 11 Petitions and First Day Pleadings*

(the "First Day Declaration") and the *Declaration of Mark S. Hootnick in Support of MACH*

*Gen's Motion for Entry of Interim and Final Orders (I) Authorizing MACH Gen to Obtain Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Super-Priority Claims, and (IV) Granting Adequate Protection to Prepetition Secured Lenders* (the "Moelis Declaration"), each filed contemporaneously herewith, and respectfully states as follows:

## Jurisdiction

1.      This court (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105, 361, 362, 363, 364, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2002-1 and 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Concise Summary

4.      The following chart contains a summary of the essential terms of the proposed debtor-in-possession financing, together with references to the applicable sections of the relevant source documents, in accordance with Bankruptcy Rule 4001(b)(1)(B) and (c)(1)(B) and Local Rule 4001-2:[2]

---

[2]      The summaries contained in this Motion are qualified in their entirety by the provisions of the documents referenced.  To the extent anything in this Motion is inconsistent with such documents, the terms of the documents shall control.  Capitalized terms used in this concise summary but not otherwise defined in this Motion shall have the meaning ascribed to them in the form of debtor-in-possession credit and guaranty agreement attached hereto as **Exhibit C** (the "DIP Credit Agreement").

| | |
|---|---|
| *Borrower*<br>*Bankruptcy Rule*<br>*4001(c)(1)(B)* | MACH Gen, LLC. |
| *Guarantors*<br>*Bankruptcy Rule*<br>*4001(c)(1)(B)* | MACH Gen GP, LLC, Millennium Power Partners, L.P., New Athens Generating Company, LLC, and New Harquahala Generating Company, LLC. |
| *Lenders*<br>*Bankruptcy Rule*<br>*4001(c)(1)(B)* | Beal Bank USA, Beal Bank SSB, and/or one or more of their affiliates. |
| *Commitment*<br>*Bankruptcy Rule*<br>*4001(c)(1)(B)*<br>*Local Rule 4001-2(a)(ii)* | $200,000,000, of which $160,000,000 may be used for letters of credit and of which $55,700,000, plus the amount of deemed DIP Extensions of Credit shall be available on an interim basis.<br>    (DIP Credit Agreement § 2.01(b)) (Interim Order ¶ 6) |
| *Interest Rates*<br>*Bankruptcy Rule*<br>*4001(c)(1)(B)*<br>*Local Rule 4001-2(a)(ii)* | Eurodollar Rate (Reserve adjusted) plus 4.75% per annum.<br>    (DIP Credit Agreement § 2.07(a) and § 1.01 definitions of "Eurodollar Rate" and "Applicable Margin")<br>Default Interest Rate:  Applicable rate plus 2.00% per annum for the first Event of Default and 1% for each additional Event of Default.<br>    (DIP Credit Agreement § 2.07(c)) |
| *Term/Maturity*<br>*Bankruptcy Rule*<br>*4001(c)(1)(B)*<br>*Bankruptcy Rule*<br>*4001(b)(1)(B)(iii)*<br>*Local Rule 4001-2(a)(ii)* | The right to use the DIP Facility and Cash Collateral shall terminate on the earliest to occur of (i) the date that is 30 days after the date of entry of the Interim Order if the Final Order has not been entered by such date, (ii) the seventh day following delivery of written notice of the occurrence of an Event of Default, (iii) the Outside Date (as defined in the RSA and as may be extended by 75 calendar days pursuant to clause (ii) of the second sentence of Section 11 of the RSA), and (iv) the effective date of any chapter 11 plan of the MACH Gen Entities.<br>    (DIP Credit Agreement § 1.01, definition of "Revolving Credit Maturity Date") (Interim Order ¶ 32) |
| *Events of Default*<br>*Bankruptcy Rule*<br>*4001(c)(1)(B)*<br>*Local Rule 4001-2(a)(ii)* | The DIP Credit Agreement contains usual and customary events of default for postpetition financings, including (i) failure to make principal or interest payments when due, (ii) material breaches of representations or warranties, (iii) non-performance of certain covenants and obligations, (iv) certain uncured defaults on postpetition indebtedness (other than the obligations arising in connection with the DIP Credit Agreement), (v) certain unsatisfied and unstayed judgments against any Mach Gen Entity in excess of $25,000,000 (or $5,000,000 if such judgment is superior in right of payment to any obligation under the DIP), (vi) the occurrence of certain ERISA Events, (vii) the occurrence of a Change of Control, (viii) the impairment of any Loan Document or Lien approved by the Orders, (ix) any termination of the RSA by the Consenting First Lien Lenders (as defined in the RSA) on account of (a) the failure of the Interim Order to be entered by the fourth business day after the Petition Date, (b) the failure of the Final Order to be entered by the 30th calendar day after the Petition Date or (c) the failure of the Court to enter an acceptable order confirming the Plan and approving the Disclosure Statement by the 90th calendar day after the Petition Date, or (x) any "Event of Default" occurs under the Prepetition First Lien Credit Agreement other than an Event of Default caused by entry into the RSA or |

| | any of the transactions contemplated therein.<br>(DIP Credit Agreement § 6.01) (Interim Order ¶ 33) |
|---|---|
| ***Use of DIP Loan***<br>*Bankruptcy Rule*<br>*4001(b)(1)(B), (c)(1)(B)*<br>*Local Rule 4001-2(a)(ii)* | The proceeds of the Loans under the DIP Credit Agreement may be used solely for the purposes permitted by the Interim Order or Final Order (as applicable) and the Approved Budget, including to (i) pay interest, fees, and expenses associated with the DIP Credit Agreement, (ii) pay quarterly fees of the U.S. Trustee, (iii) pay fees and expenses of professionals retained by MACH Gen to the extent approved in accordance with compensation procedures approved by the Court; (iv) fund adequate assurance deposits, (v) pay the Adequate Protection Obligations, as provided for in the Interim Order or Final Order, as applicable, (vi) provide working capital and credit support, and (viii) carry on the other general corporate purposes of MACH Gen consistent with Prudent Industry Practices (including keeping reasonable cash reserves not to exceed $25,000,000.<br>(DIP Credit Agreement § 2.14(b))<br>Neither the proceeds of the DIP Credit Agreement nor Cash Collateral may be used to pay any costs, fees, or expenses in connection with asserting or prosecuting any claims, causes of action, or Challenge against the Prepetition Secured Lenders or asserting any Challenge or raising any defenses to the Prepetition Obligations, the DIP Obligations, or the liens of the Prepetition Secured Parties (other than the Investigation Budget)<br>(Interim Order ¶ 26) |
| ***Borrowing Limits***<br>*Bankruptcy Rule*<br>*4001(c)(1)(B)* | The DIP Credit Agreement contains negative covenants, including restrictions on incurrence of certain Debt, the incurrence of Liens, and the making of certain Investments.<br>(DIP Credit Agreement § 5.02) |
| ***Borrowing Conditions***<br>*Bankruptcy Rule*<br>*4001(c)(1)(B)*<br>*Local Bankruptcy Rule*<br>*4001-2(a)(ii)* | The DIP Credit Agreement contains usual and customary conditions precedent to extensions of credit.<br>(DIP Credit Agreement Article III) |
| ***Fees***<br>*Bankruptcy Rule*<br>*4001(c)(1)(B)* | In connection with the DIP Credit Agreement:<br>Commitment Fee:  the Eurodollar Rate multiplied by the Unused Revolving Commitment; paid quarterly.<br>(DIP Credit Agreement § 2.08(a))<br>Letters of Credit Fee: the aggregate Available Amount under all issued Revolving Letters of Credit multiplied by the Eurodollar Rate plus 2.00%, paid quarterly.<br>(DIP Credit Agreement § 2.08(c)(i))<br>Letter of Credit Related Fees: commissions, issuance fees, fronting fees, and transfer fees to the Revolving Issuing Bank, in amounts agreed with the Borrower.<br>(DIP Credit Agreement § 2.08(c)(ii))<br>Agency Fee:  to be paid to the DIP Agent.<br>(DIP Credit Agreement § 2.08(d))<br>Yield Maintenance Fee:  payable on any permanent reduction or termination of Revolving Credit Commitments under the DIP Facility.  Equal to a percentage (ranging from 4.78% to 6.51%) of such reduction.  Not payable in connection with a reduction that results from refinancing pursuant to the Plan.<br>(DIP Credit Agreement § 2.08(b)) |

| | |
|---|---|
| ***Entities with Interest in Cash Collateral*** *Bankruptcy Rule 4001(b)(1)(B)(i)* | The First Lien Agent on behalf of the First Lien Lenders, and the Second Lien Agent on behalf of the Second Lien Lenders.<br>   (Interim Order ¶ G) |
| ***Use of Cash Collateral*** *Bankruptcy Rule 4001(b)(1)(B)(ii) Local Rule 4001-2(a)(ii)* | MACH Gen is authorized to use Cash Collateral subject to the terms of the Interim Order, and the DIP Loan Documents.<br>   (Interim Order ¶3) |
| ***Liens, Cash Payments or Adequate Protection Provided for Use of Cash Collateral*** *Bankruptcy Rule 4001(b)(1)(B)(iv)* | The Interim Order provides as "Adequate Protection Obligations" to the First Lien Secured Parties:<br> (a) postpetition security interests and liens (the "<u>Adequate Protection Liens</u>") on all of the Collateral of MACH Gen and their estates. The Adequate Protection Liens granted to the First Lien Secured Parties shall remain subject and subordinate only to (i) the DIP Liens, and (ii) solely upon the occurrence of a Termination Date, payment of the Carve-Out;<br>(b) superpriority claims under section 507(b) of the Bankruptcy Code, subject to the DIP Superpriority Claims and solely upon the occurrence of a Termination Date, payment of the Carve-Out;<br>(c) on entry of the Interim Order, cash payment of all accrued and unpaid interest, fees, and disbursements (including reasonable legal and advisory fees and expenses) owing to the First Lien Secured Parties under the First Lien Loan Documents and incurred before the Petition Date;<br>(d) periodic adequate protection payments in the amounts set forth in the Approved Budget which shall include payment of all interest (at the non-default rate), fees, disbursements (including reasonable legal and advisory fees and expenses), and principal when due under the First Lien Credit Agreement; provided that such interest shall be payable at the default rate following an Event of Default (as defined in the Prepetition First Lien Loan Agreement) other than one arising from entry into the RSA or consummation of the transactions contemplated thereunder;<br>(e) payment of the Yield Maintenance Fee in accordance with the terms of the DIP Loan Agreement; and<br>(f) authorization to terminate the RSA as to itself and to exercise its rights thereunder.<br><br>The Interim Order provides as "Adequate Protection Obligations" to the Second Lien Secured Parties:<br> (a) adequate Protection Liens on all of the Collateral of MACH Gen and their estates. The Adequate Protection Liens granted to the Second Lien Secured Parties shall remain subject and subordinate to (i) the Prepetition Liens, (ii) the DIP Liens, and (iii) the Adequate Protection Liens granted to the First Lien Secured Parties and shall be subject as "Second Liens" to the terms of the Intercreditor Agreement;<br>(b) reimbursement of reasonable past, present, and future costs and expenses, including reasonable fees and expenses of professionals; and<br>(c) authorization to terminate the RSA as to itself and to exercise its rights thereunder.<br>   (Interim Order ¶¶ 23 and 24) |
| ***Other Covenants*** | DIP Credit Agreement contains usual and customary affirmative and negative covenants.<br>   (DIP Credit Agreement Article 5) |

| | |
|---|---|
| *Liens and Priorities*<br>*Bankruptcy Rule*<br>*4001(c)(1)(B)(i), (xi),*<br>*Local Rules 4001-*<br>*2(a)(i)(A), D), (G),and*<br>*4001-2(a)(ii)* | All Obligations under the DIP Facility, subject only to the Carve-Out,<br>  (i) shall constitute allowed super-priority administrative expenses claims (the "<u>DIP Superpriority Claims</u>") having priority over any and all administrative expenses of MACH GEN, including, without limitation, of the kind specified in Sections 105, 326, 328, 330, 331, 364, 365, 503(b), 506(c) (upon entry of the Final Order), 507(b), 546(c), 726, 1113, 1114 or any other provisions of the Bankruptcy Code,  and shall be payable from and have recourse to all prepetition and postpetition property of MACH Gen including the Avoidance Action (subject to entry of the Final Order);<br>(ii) shall be secured by valid, enforceable,  non-avoidable, and fully perfected security interests in, and liens and mortgages upon (the "<u>DIP Liens</u>") all assets of MACH Gen (other than Avoidance Actions and, prior to entry of the Final Order, the proceeds thereof).<br>The DIP Liens shall (i) pursuant to section 364(c)(2) of the Bankruptcy Code constitute first priority liens against Collateral that is not subject to a valid, perfected, enforceable and non-avoidable lien as of the Petition Date,<br>(ii) pursuant to section 364(d)(1) of the Bankruptcy Code constitute senior priming liens against Prepetition Collateral and shall be senior to and prime the Prepetition Liens, (iii) pursuant to section 364(c)(3) of the Bankruptcy Code constitute junior liens on all Collateral that is subject to a valid Existing Lien (not including the Prepetition Liens) as of the Petition Date, and (iv) shall be senior to and prime any Adequate Protection Liens.<br>    (DIP Credit Agreement §§ 2.17 and 1.01, definition of "Collateral")<br>(Interim Order ¶¶ 16, 17, and 22) |
| *Carve Out*<br>*Local Rule 4001-2(a)(ii)* | The DIP Liens, DIP Superpriority Claims, and Adequate Protection Obligations shall, upon the DIP Agent's issuance of a Default Notice, be subject to (i) fees to be paid pursuant to 28 U.S.C. §1930(a), and 28 U.S.C. § 156(c); (ii) unpaid fees and expenses of MACH Gen's retained professionals incurred after the issuance of the Default Notice in an amount not in excess of $2,300,000; (iii) unpaid fees and expenses of any professionals retained by any Committee incurred after the issuance of the Default Notice in an amount not in excess of $50,000; and (iv) unpaid professional fees and expenses incurred and accruing prior to or on the date a Default Notice is issued, to the extent such fees and expenses are set forth in the Approved Budget and approved by the Court.<br>    (DIP Credit Agreement § 1.1, definition of "Carve-Out Cap", 11.1(g), Interim Order ¶ 25) |
| *Determination*<br>*Regarding Prepetition*<br>*Claim*<br>*Bankruptcy Rule*<br>*4001(c)(1)(B)(iii)* | The Interim Order contains stipulated findings of fact, including those related to the validity and enforceability of the Prepetition Obligations and the liens of the Prepetition  Secured Parties.<br>    (Interim Order ¶ F)<br>The stipulations referenced above shall become irrevocably binding on all persons and entities; however, parties in interest (including any Committee) may expressly challenge any such stipulation by commencing a contested matter or adversary proceeding (i) if no Committee has been appointed, the earlier of (a) 75 days from the Petition Date and (b) the date on which objections to a plan of reorganization for any MACH Gen entity are due or (ii) if a Committee has been appointed, the earlier of (a) 60 days after such Committee is appointed and (b) the date on which objections to a plan of reorganization for any MACH Gen entity are due.  Any stipulation not timely and successfully challenged shall be binding on all parties. |

| | (Interim Order ¶ 37) |
|---|---|
| **Waiver or Modification of the Automatic Stay** *Bankruptcy Rule 4001(c)(1)(B)(iv)* | The automatic stay shall be automatically vacated and modified to permit the DIP Agent, DIP Lenders, and/or Prepetition First Lien Secured Parties to exercise all rights or remedies provided in the DIP Credit Agreement, Interim Order or Final Order upon (i) the Outside Date (as defined in the RSA and as may be extended by 75 calendar days pursuant to clause (ii) of the second sentence of Section 11 of the RSA, (ii) the date that is 30 days after the date of entry of the Interim Order if the Final Order has not been entered by such date, (iii) the seventh day following delivery of written notice of the occurrence of an Event of Default to counsel to MACH Gen, the U.S. Trustee, the Second Lien Lenders, and any Committee, and (iv) the effective date of any chapter 11 plan of the MACH Gen Entities.<br>    (DIP Credit Agreement § 1.01, definition of "Revolving Credit Maturity Date") (Interim Order ¶¶ 32 and 34)<br>Irrespective of the occurrence of  any Event of Default, the Prepetition Secured Parties shall be entitled to exercise their rights under the RSA, including any termination right.<br>    (Interim Order ¶ 24) |
| **Plan, Disclosure Statement and Confirmation Deadlines** *Bankruptcy Rule 4001(c)(1)(B)(vi)* | The DIP Lenders have the right to terminate the RSA and the DIP Credit Agreement upon (a) the failure of the Interim Order to be entered by the fourth business day after the Petition Date, (b) the failure of the Final Order to be entered by the 30th calendar day after the Petition Date or (c) the failure of the Court to enter an acceptable order confirming the Plan and approving the Disclosure Statement by the 90th calendar day after the Petition Date.<br>    (DIP Credit Agreement § 6.01) |
| **Waiver or Modification of Applicability of Non-Bankruptcy Law Relating to the Perfection or Enforcement of a Lien** *Bankruptcy Rule 4001(c)(1)(B)(vii)* | All Liens created pursuant to the DIP Credit Agreement and Interim Order shall be valid, enforceable, non-avoidable, and duly perfected upon the entry of the Interim Order, without the requirement to file or serve financing statements, notices of lien, mortgage deeds, deeds of trust or similar instruments which otherwise may be required under federal, state or local law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens.<br>    (Interim Order ¶¶ 19 and 21)) |
| **Release, Waivers or Limitation on any Claim or Cause of Action** *Bankruptcy Rule 4001(c)(1)(B)(viii)* | MACH Gen releases the DIP Agent, the DIP Lenders, the First Lien Secured Parties, and their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys and agents, of and from any and all claims.<br>    (Interim Order ¶ F(viii)) |
| **Indemnification** *Bankruptcy Rule 4001(c)(1)(B)(ix)* | MACH Gen agrees to indemnify and hold harmless the DIP Agent, the DIP Lenders, the First Lien Secured Parties, and their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys and agents.<br>    (DIP Credit Agreement §7.05) (Interim Order ¶ F(vii)) |
| **Release, Waivers or Limitation of Rights** *Bankruptcy Rule 4001(c)(1)(B)(x) Local Rules 4001-* | Subject to entry of the Final Order, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall not be subject to any surcharge under section 506(c).  Subject to entry of the Final Order, the DIP Agent, the DIP Lenders, and the Prepetition First Lien Secured Parties shall not be subject to the equities of the case exception to section 552(b) of the Bankruptcy Code. |

| 2(a)(i)(B), (C) | (Interim Order ¶¶ 27 and 48) |
|---|---|

5.    In accordance with Local Rule 4001-2, the following provisions of the DIP Credit

Agreement are highlighted below:

(a)    ***Provisions that grant cross-collateralization protection (other than replacement liens or other adequate protection) to the prepetition secured creditors***.  See description in paragraph 5(e) below.

(b)    ***Provisions or findings of fact that bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order and the creditors' committee, if formed, at least sixty (60) days from the date of its formation to investigate.***  MACH Gen's stipulations regarding the Prepetition Liens and Prepetition Obligations (each as defined below) may be binding on the estate and the parties in interest prior to the 75th day after the Petition Date (or 60th day after the appointment of a Committee, as applicable) in the event that the objection deadline to the confirmation of a chapter 11 plan for a MACH Gen Entity occurs prior to such date.
(Interim Order ¶ 37)

(c)    ***Provisions that waive rights of the debtor's estate under section 506(c)***.  The proposed 506(c) waiver will be effective only after entry of the Final Order.
(Interim Order ¶ 27)

(d)    ***Provisions that immediately grant prepetition secured creditors liens on the debtor's claims and causes of action arising under sections 544, 547, 548, and 549 of the Bankruptcy Code***.  DIP Liens will not be granted on Avoidance Actions or the proceeds thereof; provided that upon entry of the Final Order, the proceeds of Avoidance Actions shall constitute Collateral.
(DIP Credit Agreement § 1.01, definition of "Collateral") (Interim Order ¶ 16)

(e)    ***Provisions that deem prepetition secured debt to be postpetition debt or prepetition loans from a prepetition secured lender used to pay part or all of that secured creditor's prepetition debt***.  All letters of credit issued and outstanding under the First Lien Revolver (as defined below) shall immediately, upon entry of the Interim Order be deemed to have been issued under the DIP Facility.  Upon entry of the Interim Order and until entry of the Final Order, each dollar of proceeds of Prepetition Collateral received by MACH Gen will be deemed to (i) repay one dollar of the Prepetition Revolving Credit Balance and (ii) be a one dollar DIP Extension of Credit. Upon entry of the Final Order, the then-remaining Prepetition Revolving

Credit Balance will be deemed to be repaid in full, and an equal amount will be deemed to be borrowed under the DIP Facility.  Thus, upon entry of the Final Order, the entire First Lien Revolver will have been rolled-up into the DIP Facility.
(DIP Credit Agreement § 2.01(a)) (Interim Order ¶¶ 8 and 9)

(f) ***Provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the debtor with respect to a professional fee carve-out; There are no provisions that provide disparate treatment for the Creditors' Committee's retained professionals with respect to professional fee carve out.***  With respect to professional fees incurred prior to the issuance of a Default Notice, there is no disparate treatment between MACH Gen's professionals and those of a Committee.  After the issuance of a Default Notice, the Carve Out has a cap of $2,300,000 for fees incurred by MACH Gen's professionals and $50,000 for professionals of a Committee.  This treatment is justified as MACH Gen has already solicited a Plan that does not impair unsecured creditors and has been accepted by each and every class that is impaired, including equity interests.

(g) ***Provisions that prime any secured lien absent consent of the affected lienor.***  The Prepetition Secured Lenders (as defined in the Interim and Final Orders) have consented to the priming occasioned by the DIP Liens and the Adequate Protection Liens granted to the First Lien Secured Parties.

## Background

6.      On March 3, 2014 (the "Petition Date"), each of the MACH Gen Entities filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The MACH Gen Entities continue to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner and no committee has been appointed or designated in these chapter 11 cases.  MACH Gen's request for the joint administration of these chapter 11 cases for procedural purposes only is currently pending.

## I.    Overview of MACH Gen's Business Operations

7.      Since 2004, MACH Gen has owned and managed a portfolio of merchant power plants within wholesale power markets across the United States.  As of the Petition Date, MACH Gen owns three technologically advanced natural gas-fired electric generating facilities located

in Athens, New York; Maricopa County, Arizona; and Charlton, Massachusetts (collectively, the "Facilities").  The Facilities dispatch electricity into geographically-diverse power markets and are among the most competitive gas-fired generating facilities in their respective markets.  MACH Gen's revenues are primarily derived from the sale of energy, capacity, and ancillary services from the Facilities into these markets.

8.     As of December 31, 2013, MACH Gen generated approximately $350 million in operating revenue for the prior 12-month period at a net loss of approximately $120 million.  Its unaudited balance sheet reflected assets of approximately $750 million and liabilities of approximately $1.6 billion as of December 31, 2013.

**II.     Prepetition Circumstances, Negotiations, and Solicitation**

9.     MACH Gen's balance sheet first came under pressure in the early 2000s, shortly after the original financing for the Facilities was put into place.  Although a number of restructuring or refinancing transactions have since occurred and, in 2008, sale proceeds from one of MACH Gen's then-owned four generating facilities provided MACH Gen with additional liquidity and borrowing capacity adequate to meet all of its current obligations, MACH Gen's leverage remained high, with a significant level of second lien payment-in-kind debt, with a maturity in February 2015 and interest continuing to accrue and augment the loan balance.  MACH Gen's ability to service its long term debt has also been negatively impacted by declining operating revenues since 2009 that have resulted from industry-wide circumstances, despite the advanced capabilities of the Facilities.

10.     In late 2013, MACH Gen entered into discussions with certain of its key stakeholders regarding a comprehensive solution to its balance sheet and related liquidity issues.  As a result of those efforts, MACH Gen entered into that certain Restructuring Support

Agreement, dated as of January 15, 2014 (the "RSA"), with holders of all of its first lien debt,

holders of in excess of 75% of its second lien debt, and holders of in excess of 85% of the

interests in MACH Gen, LLC.  The RSA provides for a consensual restructuring under a

prepackaged chapter 11 plan that will, among other things, significantly reduce MACH Gen's

long-term liabilities by approximately $1 billion, improve its overall financial condition and

creditworthiness, and ensure MACH Gen's continued operations as a competitively-positioned

going concern.

11.     In accordance with the RSA, on January 21, 2014, MACH Gen began soliciting

votes on the *Joint Prepackaged Chapter 11 Plan of MACH Gen, LLC and Its Affiliated Debtors

and Debtors in Possession*, dated January 21, 2014 (as may be amended, supplemented, restated,

or modified from time to time, the "Plan"), which provides for all non-voting classes, including

general unsecured creditors, to be paid in full or otherwise rendered unimpaired.  The Plan has

received the overwhelming support of MACH Gen's stakeholders, with all voting classes under

the Plan voting unanimously to accept the Plan.  Contemporaneously herewith, MACH Gen is

filing a motion seeking entry of an order approving the disclosure statement for the Plan

(the "Disclosure Statement"), approving MACH Gen's prepetition solicitation of the Plan, and

confirming the Plan, as well as a scheduling order for a combined hearing with respect to such

relief.

## III.     Additional Information

12.     Additional information regarding MACH Gen's businesses, assets, capital

structure, and the circumstances leading to the filing of these chapter 11 cases is set forth in the

*Declaration of Garry N. Hubbard in Support of MACH Gen's Chapter 11 Petitions and First*

*Day Pleadings* (the "First Day Declaration") and the Disclosure Statement, each of which is

being filed contemporaneously herewith.

**Prepetition Indebtedness**

13.     MACH Gen's material long-term debt obligations consist of two secured debt

facilities.  These facilities have been restructured, amended, and/or restated several times since

they were first put into place in connection with MACH Gen's formation in 2004.

**I.     First Lien Credit Facility**

14.     The MACH Gen Entities are party to the Amended and Restated First Lien Credit

and Guaranty Agreement (as the same has been amended, supplemented, modified, extended,

renewed, restated and/or replaced at any time prior to the Petition Date, the "First Lien Credit

Agreement" and together with all other agreements, documents and instruments executed and/or

delivered with, to or in favor of the First Lien Lenders, the "First Lien Loan Documents" and the

obligations thereunder, the "First Lien Prepetition Obligations"), dated as of June 26, 2012, by

and among the Borrower, the Subsidiaries, as guarantors, Beal Bank USA and Beal Bank, SSB

as lenders and revolving issuing bank (the "First Lien Lenders"), and CLMG Corp. as first lien

collateral and administrative agent (the "First Lien Agent" and together with the First Lien

Lenders, the "First Lien Secured Parties").  As restated in 2012, the First Lien Credit Agreement

provided for (a) a term loan facility (as amended, the "First Lien Term Loan") of up to $450

million in principal and $40 million in capitalized interest and (b) a $160 million revolving credit

facility (as amended, the "First Lien Revolver") of which $120 million was available for the

issuance of letters of credit.  At any time, the First Lien Prepetition Obligations arising under the

First Lien Revolver, including accrued but unpaid interest but excluding fees and expenses is

referred to as the "Prepetition Revolving Credit Balance."

15.     On January 15, 2014, MACH Gen entered into an amendment of the First Lien Credit Agreement that, among other things, increased the aggregate principal of the Prepetition First Lien Term Facility by $23 million to approximately $483 million and temporarily increased the commitment under the First Lien Revolver by $40 million to $200 million (the letter of credit sublimit was also temporarily increased by $40 million to $160 million).  As of the Petition Date, the Prepetition Revolving Credit Balance was approximately $144 million, and the balance of the First Lien Term Loan was approximately $483 million.

## II.    Second Lien Credit Facility

16.     The MACH Gen Entities are party to the Second Lien Credit and Guaranty Agreement (as the same has been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, the "Second Lien Credit Agreement" and together with all other agreements, documents and instruments executed and/or delivered with, to or in favor of the Second Lien Lenders, the "Second Lien Loan Documents" and the obligations thereunder, the "Second Lien Prepetition Obligations"),[3] dated as of February 22, 2007 as amended by that certain Amendment No. 1 dated as of June 26, 2012, by and among the Borrower, the Subsidiaries, as guarantors, the lenders party thereto (the "Second Lien Lenders"), and The Bank of New York Mellon, as administrative and collateral agent (the "Second Lien Agent" and together with the Second Lien Lenders, the "Second Lien Secured Parties").[4]

17.     As of the Petition Date the Second Lien Prepetition Obligations totaled approximately $1.03 billion.

---

[3]     The First Lien Prepetition Obligations and the Second Lien Prepetition Obligations are referred to herein, collectively, as the "Prepetition Obligations."

[4]     The First Lien Secured Parties and the Second Lien Secured Parties are referred to herein, collectively, as the "Prepetition Secured Parties."

### III.    Intercreditor Agreement

18.    MACH Gen, the First Lien Agent, and the Second Lien Agent are parties to that

certain Collateral Agency and Intercreditor Agreement dated as of December 5, 2006 (as

amended, supplemented or modified, the "Intercreditor Agreement").  The collateral securing the

First Lien Credit Agreement or the Second Lien Credit Agreement is referred to as the

"Prepetition Collateral," and the Prepetition Secured Parties' security interests therein and

continuing liens thereon is referred to as the "Prepetition Liens."

### Postpetition Financing

### I.    Prepetition Negotiations

19.    As discussed above, prior to the Petition Date, MACH Gen negotiated and entered

into the RSA with, among other parties, all of the First Lien Lenders and over two-thirds of the

Second Lien Lenders (in such capacities, the "Consenting Second Lien Lenders").  As part of the

RSA negotiations, MACH Gen sought to negotiate an arrangement with its incumbent lenders

that would provide incremental funding for MACH Gen's operations to bridge to the

comprehensive and consensual restructuring now embodied in the Plan.  In late 2013, over the

course of several weeks, MACH Gen, the First Lien Lenders, and the Consenting Second Lien

Lenders extensively negotiated the terms of the additional financing to be provided by the First

Lien Lenders, including MACH Gen's access to the additional financing in advance of these

chapter 11 cases, as well as the First Lien Lenders' agreement to continue providing the

additional liquidity during and after these chapter 11 cases.  As a result, forms of the Interim

Order, Final Order, and post-emergence credit and guaranty agreement were each attached to the

RSA, such that all material terms of the DIP Facility were substantially agreed and disclosed to parties in interest in connection with MACH Gen's prepetition solicitation of the Plan.[5]

20.    MACH Gen believes that the DIP Facility represents the best option available to address its immediate liquidity needs because, in part, it is an essential component of a broader restructuring transaction contemplated by the RSA and the Plan, which has the support of the First Lien Lenders, the Consenting Second Lien Lenders, and a majority of the Borrower's equity holders, and represents the only viable financing available that would not require MACH Gen to seek to prime the Prepetition Liens on a nonconsensual basis in what would likely have been a costly extended, contested hearing.[6]

## II.    Overview of DIP Facility

21.    The DIP Facility consists of a $200 million revolving credit facility, of which $160 million is available for letters of credit.  The DIP Facility will be secured by the priming DIP Liens (as described above) and will be granted the DIP Superpriority Claim.  The First Lien Lenders and the Second Lien Lenders have consented to the priming of the Prepetition Liens and the Adequate Protection Liens through their execution of the RSA and their affirmative votes for the Plan.

22.    The DIP Facility provides for a roll-up of the First Lien Revolver in a three-step process.  First, upon entry of the Interim Order, all outstanding letters of credit under the First Lien Revolver will be deemed to have been issued under the DIP Facility.  Second, from the entry of the Interim Order and until entry of the Final Order, upon the receipt by MACH Gen of

---

[5]    In addition to the descriptions of these arrangements contained in the Disclosure Statement, MACH Gen included these forms in the solicitation packages sent to parties entitled to vote on the Plan.

[6]    Under sections 7 and 8 of the RSA, each of the First Lien Lenders and Consenting Second Lien Lenders would be permitted to terminate their own obligations thereunder and change any vote on the Plan that had been previously tendered if any use of cash collateral or postpetition financing is permitted other than as contemplated by the Interim Order and Final Order, or if the Interim Order and Final Order are not entered in accordance with applicable milestones.

any proceeds of Prepetition Collateral, the amount of such proceeds will be deemed (on a dollar

for dollar basis) to have repaid the First Lien Revolver (and reduced the Prepetition Revolving

Credit Balance) and to have been borrowed under the DIP Facility as a DIP Extension of Credit.

Third, upon entry of the Final Order, the remaining Prepetition Revolving Credit Balance shall

be deemed (on a dollar for dollar basis) to have been repaid and borrowed under the DIP Facility.

23.    The DIP Facility contemplates that the Prepetition Secured Parties will receive

adequate protection for any diminution in the value of their interests in the Prepetition Collateral.

The Interim Order provides that the use of any cash collateral (as defined in section 363 of the

Bankruptcy Code) in which any Prepetition Secured Party has a security interest (the "Cash

Collateral") for any purpose shall constitute diminution on a dollar for dollar basis.  The Interim

Order provides adequate protection to the First Lien Secured Parties through Adequate

Protection Liens; superpriority claims; periodic cash payment of principal, interest, fees, and

expenses; payment of prepetition expenses; payment of the Yield Maintenance Fee upon a

reduction or cancellation of the commitments under the DIP Facility; and the lifting of the stay

with respect to certain actions taken under the RSA.  The Interim Order provides adequate

protection to the Second Lien Secured Parties through junior Adequate Protection Liens,

payment of advisor fees, and the lifting of the stay with respect to certain actions taken under the

RSA.

## Relief Requested

24.    MACH Gen seeks seeking entry of the Interim Order, substantially in the form

attached hereto as **Exhibit A**, and the Final Order, substantially in the form attached hereto as

**Exhibit B**:

> (i)    authorizing the Borrower to obtain, and each of the Subsidiaries to
> guarantee, postpetition financing in the form of the $200 million DIP
> Facility, of which $55.7 million, plus the amount of deemed DIP

Extensions of Credit, shall be available on an interim basis, under the terms of the Interim Order and the other DIP Loan Documents;

(ii)    authorizing MACH Gen to use any proceeds from Prepetition Collateral received after the Petition Date to repay and permanently reduce the Prepetition Revolving Credit Balance and, upon entry of the Final Order, to use the proceeds of DIP Extensions of Credit to repay in full the remaining Prepetition Revolving Credit Balance;

(iii)   authorizing the use of Cash Collateral by MACH Gen effective as of the Petition Date;

(iv)   allowing superpriority administrative expense status of the DIP Obligations in MACH Gen's chapter 11 cases and authorizing MACH Gen to grant to the DIP Agent on behalf of the DIP Lenders automatically perfected security interests in and liens on all of the Collateral;

(v)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order and the Final Order;

(vi)   granting adequate protection to the Prepetition Secured Parties;

(vii)  scheduling the Final Hearing to consider entry of the Final Order; and

(viii) granting related relief.

**Basis for Relief**

**I.    Authority to Grant Liens and Superpriority Claims Should Be Approved**

25.    The DIP Facility requires MACH Gen to provide superpriority claims, security interests, and liens pursuant to section 364(c) and (d) of the Bankruptcy Code. Section 364(c) of the Bankruptcy Code provides, among other things, that, if a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, the court may authorize the debtor to obtain credit or incur debt (i) with priority over any and all administrative expenses as specified in section 503(b) or 507(b) of the Bankruptcy Code, (ii) secured by a lien on property of the estate that is not otherwise subject to a lien, or (iii) secured by a junior lien on property of the estate that is subject to a lien. 11 U.S.C. § 364(c).

26.     Section 364(d) of the Bankruptcy Code allows a debtor to obtain credit secured by a senior or equal lien on property of the estate that is subject to a lien, after notice and a hearing, provided that (i) the debtor is unable to obtain such credit otherwise, and (ii) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.  11 U.S.C. § 364(d).

27.     As discussed above, despite the efforts of MACH Gen and its advisors, MACH Gen has been unable to (a) procure sufficient financing (i) in the form of unsecured credit allowable under section 503(b)(1), (ii) as an administrative expense under section 364(a) or (b), (iii) in exchange for the grant of a superpriority administrative expense claim pursuant to section 364(c)(1), or (iv) without granting limited priming liens pursuant to section 364(d), or (b) obtain postpetition financing or other financial accommodations from any alternative prospective lender or group of lenders on more favorable terms and conditions than those for which approval is sought herein.

28.     Having determined that financing is available only under sections 364(c) and (d) of the Bankruptcy Code, MACH Gen commenced extensive, arm's-length negotiations with the DIP Lenders over the DIP Facility (with involvement by certain of the Second Lien Lenders). Provided that a debtor's business judgment does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance therewith.  See, e.g., In re L.A. Dodgers LLC, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("Cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not

contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest.").

29.     Section 364 of the Bankruptcy Code does not require that a debtor seek alternative financing from every possible lender; rather, the debtor simply must demonstrate sufficient efforts to obtain financing without the need to grant a senior lien.  Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986) (demonstrating that credit was unavailable absent the senior lien by establishment of unsuccessful contact with other financial institutions in the geographic area); L.A. Dodgers, 457 B.R. at 313 (citing Ames Dep't Store, 115 B.R. at 37 (noting the court "may not approve any credit transaction under subsection (c) [of section 364] unless the debtor demonstrates that it has attempted, but failed, to obtain unsecured credit under section 364(a) or (b)"); In re 495 Central Park Ave. Corp., 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (debtor testified to numerous failed attempts to procure financing from various sources, explaining that "most banks lend money only in return for a senior secured position"); In re Aqua Assocs., 123 B.R. 192, 197 (Bankr. E.D. Pa. 1991) (debtor adequately established that some degree of priming loan was necessary if debtor were to obtain funding).

30.     Furthermore, a debtor may borrow money under section 364(d)(4) of the Bankruptcy Code if it meets its burden of establishing that the holder of the lien to be primed is adequately protected.  In re Futures Equity L.L.C., 2001 Bankr. LEXIS 2229 *14 (Bankr. N.D. Tex. April 11, 2001) (Houser, J.).  The transaction "should provide the pre-petition secured creditor with the same level of protection it would have had if there had not been post-petition superpriority financing."  Id. at *15 (internal citations omitted).  The debtor also has the burden

of demonstrating that (i) the credit transaction is necessary to preserve the estate and (ii) the terms of the transaction are fair and reasonable given the circumstances.  Id.

31.     Substantially all of MACH Gen's assets are encumbered and, despite the diligent efforts of MACH Gen and its advisor, Moelis & Company LLC, working capital for these chapter 11 cases was not available absent the proposed superpriority claims and consensual priming liens.

32.     MACH Gen believes that the proposed DIP Facility represents the best terms that it could obtain for postpetition financing while providing liquidity for both these chapter 11 cases and the planned exit pursuant to the Plan.  As provided in the Plan and reflected in the Interim Order, the DIP Facility (together with the First Lien Term Loan) will be rolled into an exit facility on terms substantially similar to those set forth in the existing First Lien Loan Documents.  See Article II.C of the Plan; Interim Order ¶¶ 22 and 30.  Additionally, the interest that MACH Gen will pay on the First Lien Revolving Facility that is rolled-up into the DIP Facility is the same that it would have to pay on the First Lien Revolving Credit Facility if it were not rolled-up.  As demonstrated by the Moelis Affidavit, the pricing of the DIP Facility is well within the range of market rates and fair and reasonable in light of the credit profile of MACH Gen, the Collateral, and their assets.

33.     Thus, MACH Gen believes that it was required to obtain financing under sections 364(c) and (d) of the Bankruptcy Code, and accordingly, the DIP Facility reflects the exercise of MACH Gen's sound business judgment.  The DIP Lenders were unwilling to extend financing on terms more favorable to MACH Gen, and MACH Gen was not able to obtain alternative sources of financing.  The ability of MACH Gen to continue to operate their businesses and reorganize under chapter 11 of the Bankruptcy Code depends upon their ability to obtain the DIP

Extensions of Credit.  Without the proposed financing, MACH Gen would not have sufficient fund to operate, causing it to cease generating power at the Facilities.

34.     The DIP Facility, together with use of Cash Collateral, will enable MACH Gen to operate its business in the ordinary course and seek to obtain confirmation of, and implement, the Plan.  MACH Gen believe that this will preserve and enhance the value of their estates for the benefit of all parties in interest.  Implementation of postpetition financing will be viewed favorably by MACH Gen's customers and vendors, thereby promoting a successful reorganization.

## II.     Use of Cash Collateral Should Be Approved

35.     Under section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).  MACH Gen requires the use of the Cash Collateral to fund its operations in conjunction with the liquidity provided by the DIP Facility.  Absent such relief, MACH Gen's business will be brought to an immediate halt, with damaging consequences for its estates and creditors.  The interests of the Prepetition Secured Parties in the Cash Collateral will be protected by the adequate protection detailed above, and they have agreed and consented to the use of Cash Collateral on such basis.  Accordingly, MACH Gen requests that it be permitted to use the Cash Collateral in the operation of its businesses and administration of these chapter 11 cases.

## III.    DIP Facility's "Roll-Up" Feature is Appropriate

36.     By this Motion, MACH Gen also seeks authority, pursuant to section 363(b) of the Bankruptcy Code, to utilize the proceeds from the DIP Facility to the extent necessary to permanently repay the Prepetition Revolving Credit Balance, as described above, such that, upon

entry of the Final Order, the entire First Lien Revolver will have been "rolled-up" into the DIP

Facility.

37.     Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease

property, other than in the ordinary course of business, with court approval.  11 U.S.C. § 363(b).

Section 363 does not set forth a standard for determining when it is appropriate for a court to

authorize the use of a debtor's property prior to confirmation of a plan, however, it is well settled

that transactions should be approved when they are supported by a sound business purpose.  See,

e.g., In re Abbotts Dairies, Inc., 788 F.2d 143 (3d Cir. 1986) (holding that in the Third Circuit, a

court should approve a debtor's use of assets outside the ordinary course of business under

section 363(b) if the debtor can demonstrate a sound business justification for the proposed

transaction); Computer Sales Int'l Inc. v. Fed. Mogul Global, Inc. (In re Fed. Mogul Global,

Inc.), 293 B.R. 124, 126 (D. Del. 2003) (same); In re Champion Enters., Inc., 2010 WL 2723820,

at *4 (Bankr. D. Del. 2010) (noting that criteria for approval of a transaction under 363(b) is

whether the debtor has demonstrated "good, sufficient and sound business purpose

justifications").  Once the debtor articulates sound business reasons, "[t]he business judgment

rule 'is a presumption that in making a business decision the directors of a corporation acted on

an informed basis, in good faith, and in the honest belief that the action taken was in the best

interests of the company.'" In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992)

(quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

38.     In this case, MACH Gen has articulated a sound business reason for repayment of

the Prepetition Revolving Credit Balance.  This feature was a critical component of the First Lien

Lenders' willingness to commit to provide funding under the DIP Facility.  Moreover, where, as

is the case here, a prepetition secured creditor is oversecured, rolling up a debt on account of

which such creditor stands to receive payment in full will not harm the debtor's estates and other creditors.  The Disclosure Statement valuation supports the view that the First Lien Lenders are oversecured, and, as such, the DIP Facility's roll-up feature is reasonable.  The First Lien Revolving Credit Facility will be rolled-up pursuant to the Plan, for which there is wide support.  Accordingly, in essence, the roll-up feature merely affects the timing – and not the amount – of the First Lien Lenders' recovery.  In addition, the roll-up feature is reasonable because the interest that MACH Gen will pay on the First Lien Revolving Facility that is rolled-up into the DIP Facility is the same that it would have to pay on the First Lien Revolving Credit Facility if it were not rolled-up.

39.     Repayment of prepetition debt in the form of a "roll-up" is a common feature in debtor-in-possession financing arrangements and courts have approved roll-ups in a variety of cases. See, e.g., In re Furniture Brands Int'l, Inc., et al., Case No. 13-12329 (Bankr. D. Del. Oct. 11, 2013) (authorizing up to $140 million in debtor-in-possession financing that included roll-up of approximately $91 million prepetition debt pursuant to interim order);  In re Appleseed's Intermediate Holdings LLC, et al., Case No. 11-10160 (Bankr. D. Del. Jan. 20, 2011) (authorizing up to $140 million in debtor-in-possession financing that included roll-up of approximately $48 million prepetition debt pursuant to interim order); In re Source Interlink Cos. Inc., Case No. 09-11424 (Bankr. D. Del. Apr. 29, 2009) (authorizing up to $385 million in debtor-in-possession financing that included roll-up of approximately $149 million prepetition debt pursuant to interim order); In re Dayton Superior Corp., Case No. 09- 10785 (Bankr. D. Del. Apr. 19, 2009) (authorizing up to $165 million in debtor-in-possession financing that included roll-up of approximately $109.8 million prepetition debt pursuant to interim order); In re Pac. Energy Res., Ltd., Case No. 09-10785 (Bankr. D. Del. Mar. 10, 2009) (authorizing up to $183

million in debtor-in-possession financing that included roll-up of approximately $143 million prepetition debt pursuant to interim order); In re Foamex Int'l Inc., Case No. 09-10560 (Bankr. D. Del. Feb. 20, 2009) (authorizing approximately $95 million in debtor-in-possession financing that included full roll-up of approximately $39 million prepetition debt pursuant to interim order); In re Hilex Poly Co. LLC, Case No. 08-10890 (Bankr. D. Del. May 7, 2008) (authorizing up to $140 million in debtor-in-possession financing that included roll-up of approximately $51 million prepetition debt pursuant to interim order); In re Holley Performance Prods. Inc., No. 08-10256 (Bankr. D. Del. Feb. 12, 2008) (authorizing approximately $60 million in debtor-in-possession financing that included roll-up of approximately $40 million prepetition debt pursuant to interim order).

## IV.    Proposed Adequate Protection Should Be Authorized

40.    Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used by a debtor in possession, the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).  Section 361 of the Bankruptcy Code delineates the forms of adequate protection, which include periodic cash payments, additional liens, replacement liens and other forms of relief.  11 U.S.C. § 361.  What constitutes adequate protection must be decided on a case-by-case basis.  See MNBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1396–97 (10th Cir. 1987); Martin v. U.S. (In re Martin), 761 F.2d 472, 474 (8th Cir. 1985); In re Shaw Indus., Inc., 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003).  The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use.  See In re Swedeland Dev. Group, Inc., 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (citations omitted).

41.     As noted above, as adequate protection for the Prepetition Secured Parties'
interests, MACH Gen will provide the First Lien Secured Parties with Adequate Protection
Liens; superpriority claims; periodic cash payment of principal, interest, fees, and expenses;
payment of prepetition expenses; payment of the Yield Maintenance Fee upon a reduction or
cancellation of the commitments under the DIP Facility; and the lifting of the stay with respect to
certain actions taken under the RSA.  Additionally, MACH Gen will provide the Second Lien
Secured Parties with junior Adequate Protection Liens, payment of advisor fees, and the lifting
of the stay with respect to certain actions taken under the RSA.  All of the First Lien Lenders and
more than two thirds of the Second Lien Lenders have consented to the use of Cash Collateral
and the priming occasioned by the DIP Liens by entering into the RSA.  Without access to the
proposed DIP Facility and use of Cash Collateral, MACH Gen will be forced to cease operations
and will not be able to consummate the Plan.  In contrast, the value of the Prepetition Secured
Parties' interest in their Prepetition Collateral will be preserved, if not increased, by the DIP
Facility and use of Cash Collateral because it ensures the uninterrupted continuation of MACH
Gen's operations and its continued upkeep of the Prepetition Collateral. Accordingly, the
proposed adequate protection is fair and reasonable and sufficient to satisfy the requirements of
sections 363(c)(2) and (e) of the Bankruptcy Code.

**V.      Automatic Stay Should Be Modified on Limited Basis**

42.     The relief requested herein contemplates a modification of the automatic stay (to
the extent applicable) to permit MACH Gen to grant the security interests, liens, and
superpriority claims described above and to perform such acts as may be requested to assure the
perfection and priority of such security interests and liens.  The relief also contemplates a
modification of the automatic stay to permit the DIP Agent, DIP Lenders, and/or First Lien
Secured Parties to exercise all rights or remedies provided in the DIP Credit Agreement, Interim

Order, or Final Order upon (i) the Outside Date, (ii) the date that is 30 days after the date of entry

of the Interim Order if the Final Order has not been entered by such date, (iii) the seventh day

following delivery of written notice of the occurrence of an Event of Default to counsel to

MACH Gen, the U.S. Trustee, the Second Lien Lenders, and any Committee, and (iv) the

effective date of any chapter 11 plan of the MACH Gen Entities.  Finally, it is contemplated that

the automatic stay would be modified to permit the Prepetition Secured Parties to exercise their

rights (including rights of termination) under the RSA.

43.    Stay modifications of this kind are ordinary and standard features of postpetition

debtor financing facilities and, in MACH Gen's business judgment, are reasonable and fair under

the present circumstances.

**VI.    Interim Approval Should Be Granted**

44.    Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use

cash collateral or obtain credit, respectively, may not be commenced earlier than fourteen (14)

days after the service of such motion.  Upon request, however, the Court is empowered to

conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral

and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a

debtor's estate pending a final hearing.

45.    Pursuant to Bankruptcy Rules 4001(b) and (c), MACH Gen requests that the

Court conduct an expedited preliminary hearing on this motion and (a) authorize the use of Cash

Collateral and borrow up to $55.7 million under the DIP Facility (plus any deemed DIP

Extensions of Credit) on an interim basis, pending entry of a final order, in order to (i) maintain

and finance the ongoing operations of MACH Gen, and (ii) avoid immediate and irreparable

harm and prejudice to their estates and all parties in interest, and (b) schedule the Final Hearing.

46.    Absent authorization from the Court to obtain secured credit, as requested, on an interim basis pending the Final Hearing, MACH Gen will be immediately and irreparably harmed.  Accordingly, the interim relief requested is critical to preserving and maintaining the going concern value of MACH Gen and facilitating their reorganization efforts.

### Waiver of Bankruptcy Rules 6004(a) and (h)

47.    To implement the foregoing successfully, MACH Gen seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Notice

48.    MACH Gen will provide notice of this Motion to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims on a consolidated basis; (iii) counsel to the First Lien Agent and DIP Agent; (iv) counsel to the Consenting Second Lien Lenders; and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002(i).  As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, MACH Gen will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).  MACH Gen submits that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

49.    No previous request for the relief sought herein has been made to this Court or any other court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, MACH Gen respectfully requests that the Court grant the relief requested herein and such further relief as may be appropriate and proper.

Wilmington, Delaware
Dated:  March 3, 2014

Respectfully submitted,

**RICHARDS, LAYTON, & FINGER, P.A.**

 /s/ Russell C. Silberglied
Russell C. Silberglied (No. 3462)
John H. Knight (No. 3848)
Zachary I. Shapiro (No. 5103)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: silberglied@rlf.com
           knight@rlf.com
           shapiro@rlf.com

- and -

**MILBANK, TWEED, HADLEY & MᶜCLOY LLP**
Matthew S. Barr (*pro hac vice* admission pending)
Tyson M. Lomazow (*pro hac vice* admission pending)
Michael E. Comerford (*pro hac vice* admission pending)
One Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000
Facsimile: (212) 830-5000
Email: mbarr@milbank.com
           tlomazow@milbank.com
           mcomerford@milbank.com

*Proposed Counsel to MACH Gen, LLC
and Its Affiliated Debtors and Debtors in Possession*