**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------x
                                                         :
In re:                                                   :          Chapter 11
                                                         :
MACH GEN, LLC, et al.,[1]                                :          Case No. 14-_____
                                                         :
                                    Debtors.             :          (Joint Administration Requested)[2]
---------------------------------------------------------x

**JOINT PREPACKAGED CHAPTER 11 PLAN OF MACH GEN, LLC**
**AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION**

**January 21, 2014**

MILBANK, TWEED, HADLEY & M$^C$CLOY LLP          RICHARDS, LAYTON & FINGER, P.A.

Matthew S. Barr                                  Russell C. Silberglied (No. 3462)
Tyson M. Lomazow                                 John H. Knight (No. 3848)
Michael E. Comerford                             One Rodney Square
1 Chase Manhattan Plaza                          920 North King Street
New York, New York 10005                         Wilmington, Delaware 19801

*Proposed Counsel to MACH Gen, LLC*
*and Its Affiliated Debtors and Debtors in Possession*[3]

---

[1]     The debtors in these anticipated chapter 11 cases and the last four digits of their respective federal tax identification numbers are expected to be as follows:  MACH Gen, LLC (6738), MACH Gen GP, LLC (6738), Millennium Power Partners, L.P. (6688), New Athens Generating Company, LLC (0156), and New Harquahala Generating Company, LLC (0092).  MACH Gen's principal offices are located at 9300 US Highway 9W, Athens, New York 12015.

[2]     MACH Gen expects to request joint administration upon or immediately following commencement of these anticipated chapter 11 cases.

[3]     MACH Gen expects to seek retention of the counsel identified above following commencement of these anticipated chapter 11 cases.

# TABLE OF CONTENTS

I.    DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ............................................................................................. 1

    A.    Defined Terms ................................................................................................. 1
    B.    Rules of Interpretation .................................................................................. 12
    C.    Computation of Time .................................................................................... 13
    D.    Governing Law ............................................................................................. 13
    E.    Reference to Monetary Figures .................................................................... 13

II.    ADMINISTRATIVE EXPENSES AND OTHER UNCLASSIFIED CLAIMS ............. 13

    A.    General Administrative Expenses ................................................................ 13
    B.    Professional Fees .......................................................................................... 14
        1.    Final Fee Applications ...................................................................... 14
        2.    Post-Effective Date Fees and Expenses ........................................... 14
    C.    DIP Claims .................................................................................................... 14
    D.    Priority Tax Claims ...................................................................................... 15

III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ................. 15

    A.    Classification of Claims and Interests .......................................................... 15
    B.    Treatment of Claims and Interests ............................................................... 16
        1.    Class 1 – Priority Non-Tax Claims .................................................. 16
        2.    Class 2 – Other Secured Claims ....................................................... 16
        3.    Class 3A – First Lien Revolver Claims ........................................... 17
        4.    Class 3B – First Lien Term Loan Claims ......................................... 17
        5.    Class 4 – Second Lien Claims .......................................................... 18
        6.    Class 5A – General Unsecured Claims ............................................ 18
        7.    Class 5B – Lease Rejection Claims .................................................. 19
        8.    Class 6 – Intercompany Claims ....................................................... 19
        9.    Class 7(a) – Interests in MACH Gen, LLC ...................................... 20
        10.    Class 7(b)-(e) – Intercompany Interests ........................................... 20
    C.    Special Provision Governing Unimpaired Claims ....................................... 20

IV.    ACCEPTANCE OR REJECTION OF PLAN ............................................................... 21

    A.    Voting Classes .............................................................................................. 21
    B.    Presumed Acceptance of the Plan ................................................................ 21
    C.    Non-Consensual Confirmation ..................................................................... 21
    D.    Subordinated Claims .................................................................................... 21

V.    MEANS FOR IMPLEMENTATION OF PLAN ........................................................... 22

    A.    General Settlement of Claims and Interests ................................................. 22
    B.    Restructuring Transactions ........................................................................... 22
    C.    Sources of Consideration for Plan Distributions ......................................... 23

|  | | 1. | Issuance of New Common Units | 23 |
|  | | 2. | Cash | 23 |
|  | D. | | Corporate Existence | 23 |
|  | E. | | Vesting of Assets in Reorganized MACH Gen | 24 |
|  | F. | | Cancellation of Loans, Securities, and Agreements | 24 |
|  | G. | | Corporate and Other Entity Action | 25 |
|  | H. | | New Organizational Documents | 25 |
|  | I. | | Managers and Officers of Reorganized MACH Gen | 25 |
|  | J. | | Effectuating Documents; Further Transactions | 28 |
|  | K. | | Section 1146 Exemption | 28 |
|  | L. | | Preservation of Causes of Action | 28 |

VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........ 29

|  | A. | Assumption and Rejection of Executory Contracts and Unexpired Leases ........ 29 |
|  | B. | Cure of Defaults for Executory Contracts and Unexpired Leases Assumed ........ 29 |
|  | C. | Indemnification Obligations | 30 |
|  | D. | Insurance Policies | 31 |
|  | E. | Payment of Management Incentive Compensation | 31 |
|  | F. | Modifications, Amendments, Supplements, Restatements, or Other Agreements | 31 |
|  | G. | Reservation of Rights | 31 |
|  | H. | Non-occurrence of Effective Date | 31 |
|  | I. | Contracts and Leases Entered into after Petition Date | 31 |

VII. PROVISIONS GOVERNING DISTRIBUTIONS ........... 32

|  | A. | | Timing and Calculation of Amounts to Be Distributed | 32 |
|  | B. | | Application of Distributions | 32 |
|  | C. | | Disbursing Agent | 32 |
|  | D. | | Rights and Powers of Disbursing Agent | 32 |
|  | | 1. | Powers of the Disbursing Agent | 32 |
|  | | 2. | Incurred Expenses | 33 |
|  | E. | | Delivery of Distributions and Undeliverable or Unclaimed Distributions ........ 33 |
|  | | 1. | Delivery of Distributions to Holders of First Lien Claims and DIP Claims | 33 |
|  | | 2. | Delivery of Distributions to Second Lien Agent | 33 |
|  | | 3. | Delivery of Distributions in General | 33 |
|  | | 4. | Minimum Distributions of New Common Units | 33 |
|  | | 5. | Undeliverable Distributions and Unclaimed Property | 34 |
|  | F. | | Section 1145 Exemption | 34 |
|  | G. | | Compliance with Tax Requirements | 34 |
|  | H. | | No Postpetition Interest on Claims and Interests | 35 |
|  | I. | | Setoffs and Recoupment | 35 |
|  | J. | | Claims Paid or Payable by Third Parties | 35 |
|  | | 1. | Claims Paid by Third Parties | 35 |
|  | | 2. | Claims Payable by Third Parties | 35 |

         3.      Applicability of Insurance Policies ............................................ 36

VIII.   PROCEDURES FOR TREATING DISPUTED CLAIMS AND INTERESTS
        UNDER PLAN ........................................................................................ 36

        A.      Disputed Claims and Interests Process .................................... 36
        B.      No Distributions Pending Allowance ...................................... 36
        C.      Distributions after Allowance ................................................. 36

IX.     SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ............. 37

        A.      Compromise and Settlement ................................................... 37
        B.      Discharge of Claims and Termination of Interests .................. 37
        C.      Release of Liens ..................................................................... 38
        D.      Releases of Released Parties ................................................... 38
                1.      Releases by MACH Gen ............................................... 38
                2.      Third-Party Releases by Holders of Claims or Interests ........ 39
        E.      Exculpation ............................................................................. 39
        F.      Injunction ............................................................................... 40

X.      CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE .............................. 41

        A.      Conditions to Confirmation .................................................... 41
        B.      Conditions to Effective Date ................................................... 41
        C.      Waiver of Conditions .............................................................. 42
        D.      Effect of Non-Occurrence of Effective Date ........................... 42

XI.     MODIFICATION, REVOCATION OR WITHDRAWAL OF PLAN .......................... 43

        A.      Modification and Amendments ................................................ 43
        B.      Effect of Confirmation on Modifications ................................ 43
        C.      Revocation or Withdrawal of Plan .......................................... 43

XII.    RETENTION OF JURISDICTION ................................................................... 44

XIII.   MISCELLANEOUS PROVISIONS ................................................................. 46

        A.      Immediate Binding Effect ....................................................... 46
        B.      Additional Documents ............................................................ 46
        C.      Payment of Statutory Fees ...................................................... 46
        D.      Statutory Committee and Cessation of Fee and Expense Payment ..... 46
        E.      Reservation of Rights .............................................................. 47
        F.      Successors and Assigns ........................................................... 47
        G.      Notices ................................................................................... 47
        H.      Term of Injunctions or Stays .................................................. 50
        I.      Entire Agreement .................................................................... 50
        J.      Exhibits .................................................................................. 50
        K.      Nonseverability of Plan Provisions ......................................... 50

iv

L.      Votes Solicited in Good Faith.............................................................................. 51
M.      Closing of Chapter 11 Cases............................................................................... 51
N.      Document Retention ............................................................................................ 51
O.      Conflicts................................................................................................................ 51

## Introduction

MACH Gen, LLC and its subsidiaries MACH Gen GP, LLC, Millennium Power Partners, L.P., New Athens Generating Company, LLC, and New Harquahala Generating Company, LLC, as debtors and debtors in possession (each a "MACH Gen Entity" and, collectively, the "MACH Gen Entities" or "MACH Gen"), jointly propose this prepackaged plan of reorganization, as it may be amended, supplemented, restated, or modified from time to time (together with the Plan Supplement, the "Plan"), for the resolution of certain outstanding Claims against, and Interests in, the MACH Gen Entities, pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended and as in effect on the Confirmation Date or otherwise applicable to the Chapter 11 Cases, the "Bankruptcy Code").

Capitalized terms used and not otherwise defined shall have the meanings ascribed to such terms in Article I.A.

Each MACH Gen Entity is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code, and the Plan constitutes a separate plan of reorganization for each MACH Gen Entity. Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of MACH Gen's history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan.

ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms*

As used in the Plan, capitalized terms have the meanings set forth below:

1.    "*Administrative Expense*" means any cost or expense of administration of the Chapter 11 Cases entitled to priority pursuant to sections 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating MACH Gen's businesses; (b) professional compensation and reimbursement awarded or allowed pursuant to sections 330(a) or 331 of the Bankruptcy Code, including the Professional Fees; (c) an administrative expense of the type described in section 503(b)(9) of the Bankruptcy Code; and (d) any and all fees and charges assessed against the Estates pursuant to chapter 123 of title 28 of the United States Code; provided, however, that "Administrative Expense" shall not include any DIP Claim.

2.    "*Allowed*" means, with respect to (a) a Claim, that MACH Gen does not have the right to object to such Claim, and that such Claim is not Disputed or Disallowed; provided, however, that notwithstanding the foregoing, Reorganized MACH Gen

shall retain all claims and defenses with respect to Allowed Claims that are reinstated or are otherwise Unimpaired pursuant to the Plan; (b) an Interest, that such Interest is reflected as outstanding in the stock transfer ledger or similar register of the applicable MACH Gen Entity as of the Effective Date; and (c) an amount of a Claim or Interest, the amount at which such Claim or Interest is Allowed.

3.      "*Angelo Gordon*" means, collectively, Angelo Gordon & Co., L.P. and its affiliated and managed funds.

4.      "*Angelo Gordon Manager*" means a manager appointed to the New Holdco Board by Angelo Gordon pursuant to Article V.I.

5.      "*Article*" refers to an article of the Plan.

6.      "*Avoidance Actions*" means any and all actual or potential claims and Causes of Action to avoid a transfer of property or an obligation incurred by MACH Gen, arising under chapter 5 of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code.

7.      "*Bankruptcy Code*" has the meaning specified in the Introduction hereto.

8.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware or any other court having jurisdiction over the Chapter 11 Cases.

9.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as amended from time to time and as applicable to the Chapter 11 Cases, promulgated pursuant to 28 U.S.C. § 2075 and the general, local, and chamber rules of the Bankruptcy Court.

10.      "*Business Day*" means any day other than a Saturday, Sunday, "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or day on which commercial banks in New York are required or authorized by law to remain closed.

11.      "*Cash*" means cash and cash equivalents in U.S. dollars.

12.      "*Cause of Action*" means any action, claim, cause of action, controversy, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  For the avoidance of doubt, "Cause of Action" includes: (a) any right of setoff or counterclaim and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any counterclaim or defense, including fraud, mistake, duress, usury, recoupment, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer or similar claim.

13.    "*CEO Manager*" means the chief executive officer of Reorganized MACH Gen, as a manager on the New Holdco Board as set forth in Article V.I.

14.    "*Chapter 11 Case*" means, with respect to a particular MACH Gen Entity, the case under chapter 11 of the Bankruptcy Code pending for such MACH Gen Entity in the Bankruptcy Court, jointly administered with each other MACH Gen Entity's Chapter 11 Case, and the "*Chapter 11 Cases*" means every MACH Gen Entity's Chapter 11 Case, collectively.

15.    "*claim*" means any "claim," as such term is defined in section 101(5) of the Bankruptcy Code, and "*Claim*" means a claim as such term is defined in section 101(5) of the Bankruptcy Code against a MACH Gen Entity.

16.    "*Class*" means a class of Claims or Interests designated in Article III of the Plan, pursuant to section 1123(a)(1) of the Bankruptcy Code.

17.    "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021, subject to all conditions to Confirmation specified in Article X.A having been satisfied or waived in accordance with Article X.C.

18.    "*Confirmation Date*" means the date upon which Confirmation occurs.

19.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation, as such hearing may be continued from time to time.

20.    "*Confirmation Order*" means the Bankruptcy Court order confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

21.    "*Consummation*" means the occurrence of the Effective Date.

22.    "*CPV Agreement*" means that certain Amended and Restated Asset Management Agreement, dated as of September 30, 2010, by and among MACH Gen, LLC, Millennium Power, New Athens, New Harquahala, and Competitive Power Ventures. Inc., as amended, supplemented, restated, or modified from time to time.

23.    "*DB*" means Deutsche Bank AG, London Branch.

24.    "*Designated Managers*" means, collectively, the Angelo Gordon Managers, Solus Manager, ECP Manager and, during such time as Solus, Angelo Gordon, and/or DB (or following a TRS Termination, ECP), are entitled to designate the manager holding the Equity-Holder Seat pursuant to Article V.I, the manager holding the Equity-Holder Seat.

25.    "*DIP Agent*" means CLMG Corp., in its capacities as collateral agent and administrative agent under the DIP Credit Agreement.

26.    "*DIP Claims*" means all Claims against any MACH Gen Entity arising on account of the DIP Facility.

27.     "*DIP Credit Agreement*" means that certain Senior Secured Superpriority Debtor-in-Possession Credit and Guaranty Agreement, by and among MACH Gen, LLC, as borrower, MACH Gen GP, Millennium Power, New Athens, and New Harquahala, as guarantors, the DIP Agent, and the DIP Lenders, approved by the DIP Orders.

28.     "*DIP Facility*" means the revolving credit facility made available to MACH Gen to provide financing and otherwise extend credit during the pendency of the Chapter 11 Cases, including to refinance the First Lien Revolver Claims, pursuant to and subject to the terms and conditions of the DIP Credit Agreement and the DIP Orders.

29.     "*DIP Final Order*" means the Bankruptcy Court order authorizing use of cash collateral and the DIP Facility on a final basis.

30.     "*DIP Interim Order*" means the Bankruptcy Court order authorizing use of cash collateral and the DIP Facility on an interim basis.

31.     "*DIP Lenders*" means the financial institutions party from time to time to the DIP Credit Agreement as revolving credit lender or revolving issuing bank, in their respective capacities as such.

32.     "*DIP Orders*" means the DIP Interim Order and DIP Final Order.

33.     "*Disallowed*" means, with respect to a Claim or Interest or portion thereof, that such Claim or Interest or portion thereof has been disallowed by Final Order.

34.     "*Disbursing Agent*" means one or more of the Reorganized MACH Gen Entities or the Entity or Entities selected by MACH Gen or Reorganized MACH Gen, with the consent of the Majority Second Lien Holders, to make or facilitate distributions contemplated under the Plan.

35.     "*Discharge*" has the meaning specified in Article IX.F.

36.     "*Disclosure Statement*" means that certain *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of MACH Gen, LLC and Its Affiliated Debtors and Debtors in Possession*, dated January 21, 2014, as it may be amended, supplemented, restated, or modified from time to time, including all exhibits and schedules thereto and references therein, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and as approved by the Bankruptcy Court.

37.     "*Disputed*" means, with respect to a Claim or Interest, that an objection to such Claim or Interest or portion thereof has been filed on or before (a) the Effective Date or, (b) to the extent proof of such Claim or Interest is filed on or after the Effective Date, any applicable objection deadline.

38.     "*ECP*" means, collectively, ECP Polaris, Ltd. and its affiliated and managed funds.

39.    "*ECP Manager*" means a manager appointed to the New Holdco Board by (a) DB pursuant to Article V.I, taking into account any request made by ECP in accordance with the TRS in respect of such appointment or (b) following a TRS Termination, ECP.

40.    "*Effective Date*" means the date selected by MACH Gen, in consultation with the Required First Lien Holders and Majority Second Lien Holders, that is a Business Day after the Confirmation Date, on which date all conditions to the Effective Date specified in Article X.B have been satisfied or waived in accordance with Article X.C.

41.    "*Entity*" means any "entity," as such term is defined in section 101(15) of the Bankruptcy Code.

42.    "*Equity-Holder Manager Transition Date*" has the meaning specified in Article V.I.

43.    "*Equity-Holder Seat*" has the meaning specified in Article V.I.

44.    "*Estate*" means, with respect to a particular MACH Gen Entity, the estate created for such MACH Gen Entity upon commencement of its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code, and the "*Estates*" means every MACH Gen Entity's Estate, collectively.

45.    "*Excluded Actions*" means any Causes of Action that are released by MACH Gen or Reorganized MACH Gen pursuant to the Plan, including as set forth in Article IX.

46.    "*Exculpated Parties*" means the Released Parties.

47.    "*Exculpation*" has the meaning specified in Article IX.F.

48.    "*Executory Contract*" means a contract to which one or more of the MACH Gen Entities is party, other than an Unexpired Lease, which contract is subject to assumption or rejection in accordance with section 365 of the Bankruptcy Code.

49.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, seek certiorari, or move for a new trial, re-argument, or rehearing has expired and no appeal, petition for certiorari, or motion for a new trial, re-argument, or rehearing has been timely filed, or (b) any appeal, petition for certiorari, or motion for a new trial, re-argument, or rehearing that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed, petitioned, or moved.

50.    "*First Lien Agent*" means CLMG Corp., in its capacities as first lien collateral agent and administrative agent under the First Lien Credit Agreement.

51.    "*First Lien Claims*" means all First Lien Revolver Claims and First Lien Term Loan Claims.

52.     "*First Lien Credit Agreement*" means that certain Amended and Restated First Lien Credit and Guaranty Agreement, dated as of June 26, 2012, by and among MACH Gen, LLC, as borrower, MACH Gen GP, Millennium Power, New Athens, and New Harquahala, as guarantors, the First Lien Agent, and the First Lien Lenders, and as amended, supplemented, restated, or modified from time to time.

53.     "*First Lien Lenders*" means the financial institutions party from time to time to the First Lien Credit Agreement as lender or revolving issuing bank, in their respective capacities as such.

54.     "*First Lien Revolver Claims*" means all Claims against any MACH Gen Entity arising on account of the revolving credit facility made available to MACH Gen pursuant to the First Lien Credit Agreement, and which constitute "First Lien Obligations," as such term is defined in the Intercreditor Agreement.

55.     "*First Lien Term Loan Claims*" means all Claims against any MACH Gen Entity arising on account of the term loan facility made available to MACH Gen pursuant to the First Lien Credit Agreement, and which constitute "First Lien Obligations," as such term is defined in the Intercreditor Agreement.

56.     "*General Administrative Expense*" means any Administrative Expense other than Professional Fees.

57.     "*General Unsecured Claim*" means any Unsecured Claim, other than a Lease Rejection Claim or an Intercompany Claim.

58.     "*Governmental Unit*" means any "governmental unit," as such term is defined in section 101(27) of the Bankruptcy Code.

59.     "*Impaired*" means, with respect to (a) a Class, Claim, or Interest, that such Class, Claim, or Interest is "impaired" within the meaning of section 1124 of the Bankruptcy Code and (b) the holder of a Claim or Interest, that such Claim or Interest is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

60.     "*Intercompany Claim*" means any Unsecured Claim held by a MACH Gen Entity against another MACH Gen Entity.

61.     "*Intercreditor Agreement*" means that certain Collateral Agent and Intercreditor Agreement, dated as of December 5, 2006 and as amended, supplemented, restated, or modified from time to time.

62.     "*Interest*" means any "equity security" (as such term is defined in section 101(16) of the Bankruptcy Code) or other equity interest in a MACH Gen Entity, including any share of common or preferred stock, membership interest, partnership unit, or other evidence of ownership of, or a similar interest in, a MACH Gen Entity, and any option, warrant, or right, contractual or otherwise, to purchase, sell, subscribe, or acquire any such equity security or other equity interest in a MACH Gen Entity, whether or not transferable, issued or unissued, authorized, or outstanding.

6

63.    "*Lease Rejection Claim*" means any Unsecured Claim arising from the rejection of a lease of real property in accordance with section 365 of the Bankruptcy Code.

64.    "*Lien*" means a "lien" as such term is defined in section 101(37) of the Bankruptcy Code.

65.    "*MACH Gen GP*" means MACH Gen GP, LLC.

66.    "*MACH Gen*" has the meaning specified in the Introduction hereto.

67.    "*MACH Gen Entity*" and "*MACH Gen Entities*" have the meanings specified in the Introduction hereto.

68.    "*Majority Equity Holders*" means holders of a majority of the Interests in MACH Gen, LLC.

69.    "*Majority Second Lien Holders*" means two or more Support Parties who hold, in the aggregate, at least two-thirds (66-2/3%) in principal amount outstanding of all Second Lien Claims held, in the aggregate, by the Support Parties.

70.    "*Management Incentive Compensation*" means the performance-based incentive compensation specified pursuant to either section 4.7 of the CPV Agreement or section 4.2(a) of the Willow Bend Agreement.

71.    "*Millennium Power*" means Millennium Power Partners, L.P.

72.    "*New Athens*" means New Athens Generating Company, LLC.

73.    "*New Boards*" means the New Holdco Board and New Subsidiary Boards.

74.    "*New Common Units*" means the common units in New Holdco to be authorized, issued, or outstanding on and after the Effective Date.

75.    "*New First Lien Agent*" means CLMG Corp. or another affiliate of a New First Lien Lender, in its capacities as collateral agent and administrative agent under the New First Lien Facilities Documents.

76.    "*New First Lien Facilities*" means the New First Lien Revolver and New First Lien Term Loan.

77.    "*New First Lien Facilities Documents*" means the following documents that will govern the New First Lien Facilities, each dated as of the Effective Date:  (a) the credit and guaranty agreement, in the form attached to the Restructuring Support Agreement or in such other form filed with the Plan Supplement in form and substance reasonably acceptable to Reorganized MACH Gen, the DIP Lenders, the Required First Lien Holders, the Majority Second Lien Holders, and the New First Lien Agent, and (b) such other financing documents, including, to the extent necessary and applicable, intercreditor agreements, each in form and

substance reasonably acceptable to Reorganized MACH Gen, the DIP Lenders, the Required First Lien Holders, the Majority Second Lien Holders, and the New First Lien Agent.

78.    "*New First Lien Lenders*" means the financial institutions party from time to time to the New First Lien Facilities Documents as lender or revolving issuing bank, in their respective capacities as such.

79.    "*New First Lien Revolver*" means the new $200 million revolving credit facility made available to Reorganized MACH Gen pursuant to the New First Lien Facilities Documents.

80.    "*New First Lien Term Loan*" means the new term loan credit facility in the approximate amount of $483 million made available to Reorganized MACH Gen pursuant to the New First Lien Facilities Documents.

81.    "*New Harquahala*" means New Harquahala Generating Company, LLC.

82.    "*New Holdco*" means MACH Gen, LLC, any successors thereto, by merger, consolidation, or otherwise, or any newly-formed parent company of MACH Gen, LLC, in each case on or after the Effective Date; provided that New Holdco shall elect to be treated as a corporation for U.S. federal income tax purposes.

83.    "*New Holdco Board*" means the initial board of managers of New Holdco, as appointed pursuant to Article V.I.

84.    "*New Holdco LLC Agreement*" means the amended and restated limited liability company agreement for New Holdco to be included in the Plan Supplement, on terms materially consistent with those terms set forth in the Restructuring Support Agreement.

85.    "*New Organizational Documents*" means the new bylaws, certificates of incorporation, certificates of formation, limited liability company agreements, operating agreements, certificates of limited partnership, agreements of limited partnership, or such other organizational documents of each Reorganized MACH Gen Entity, including the New Holdco LLC Agreement.

86.    "*New Subsidiary Boards*" means the initial board of directors or managers (as applicable) for each Reorganized MACH Gen Entity other than New Holdco, as appointed pursuant to Article V.I.

87.    "*Other Secured Claim*" means any Secured Claim other than an Administrative Expense, DIP Claim, Priority Claim, First Lien Claim, or Second Lien Claim.

88.    "*Petition Date*" means the date on which voluntary petitions commencing the Chapter 11 Cases are filed.

89.    "*Plan*" has the meaning specified in the Introduction hereto.

90.    "*Plan Supplement*" means the compilation of documents (or forms thereof), schedules, and exhibits to the Plan, as each may be amended, supplemented, or modified from

time to time in accordance with the Plan, Restructuring Support Agreement, Bankruptcy Code, and Bankruptcy Rules, to be filed with the Bankruptcy Court in accordance with Article X.A.3, including, as applicable: (a) the New Organizational Documents; (b) a list of Preserved Causes of Action; (c) a list of assumed Executory Contracts and Unexpired Leases; (d) a list of rejected Executory Contracts and Unexpired Leases, if any; (e) a list of the members of the New Holdco Board; (f) the Registration Rights Agreement; and (g) such other documents as are necessary or advisable to implement the Restructuring Support Agreement and the Restructuring Transactions (including, if necessary, a description of such Restructuring Transactions). For the avoidance of doubt, MACH Gen shall have the right to amend, supplement, or modify the Plan Supplement through the Effective Date in accordance with the Plan, Restructuring Support Agreement, Bankruptcy Code, and Bankruptcy Rules.

91.     "*Preserved Causes of Action*" means any and all Causes of Action, including the Avoidance Actions and those Causes of Action identified in the Plan Supplement; provided, however, that "Preserved Causes of Action" shall not include any Excluded Actions.

92.     "*Priority Claim*" means any Priority Non-Tax Claim or Priority Tax Claim.

93.     "*Priority Non-Tax Claim*" means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than an Administrative Expense, DIP Claim, or Priority Tax Claim.

94.     "*Priority Tax Claim*" means any Claim of a Governmental Unit entitled to priority pursuant to section 502(i) or 507(a)(8) of the Bankruptcy Code.

95.     "*Pro Forma Equity*" means the New Common Units to be issued under the Plan on the Effective Date.

96.     "*Pro Rata*" means, for the holder of a Claim or Interest in a particular Class, proportional to the ratio of the amount of such Claim or Interest to the amount of all Claims or Interests (as applicable) in the same Class.

97.     "*Professional*" means any Entity that is, by Bankruptcy Court order: (a) employed for legal, financial advisory, accounting, or other professional services during the Chapter 11 Cases pursuant to section 327 or 1103 of the Bankruptcy Code and to be compensated and reimbursed therefor in accordance with sections 327, 328, 329, 330, 331, and/or 1103 of the Bankruptcy Code; or (b) allowed compensation and reimbursement pursuant to section 503(b)(4) of the Bankruptcy Code; provided, however, that "Professional" shall not include any professional-service Entity that MACH Gen is authorized to employ, compensate, and reimburse in the ordinary course of its businesses.

98.     "*Professional Fees*" means the accrued, contingent, and/or unpaid compensation for services rendered (including hourly, transaction, and success fees), and reimbursement for expenses incurred, by Professionals, that: (a) are awardable and allowable pursuant to sections 327, 328, 329, 330, 331, 503(b)(4), and/or 1103 of the Bankruptcy Code or otherwise rendered allowable prior to the Confirmation Date; (b) have not been denied by the Bankruptcy Court by Final Order; (c) have not been previously paid (regardless of whether a fee application has been

filed for any such amount); and (d) remain outstanding after applying any retainer that has been provided to such Professional.  To the extent that any amount of the foregoing compensation or reimbursement is denied or reduced by Final Order of the Bankruptcy Court or any other court of competent jurisdiction, such amount shall no longer constitute Professional Fees.

99.    "*Registration Rights Agreement*" means the registration rights agreement with respect to the New Common Units to be included in the Plan Supplement.

100.    "*Released Claims*" has the meaning specified in Article IX.F.

101.    "*Released Parties*" means all of the following:  (a) MACH Gen; (b) Reorganized MACH Gen; (c) the Support Parties (including, for the avoidance of doubt, in their capacities as First Lien Lenders, Second Lien Lenders, and holders of Interests in MACH Gen, LLC, as applicable); (d) the DIP Agent and DIP Lenders, (e) the First Lien Agent; (f) the Second Lien Agent; and (g) each of the foregoing Entities' respective predecessors, successors and assigns, and current and former shareholders, subsidiaries, directors, officers, funds, affiliates, members, employees, partners, managers, agents, representatives, principals, consultants, attorneys, and professional advisors (each in their capacity as such); provided, however, that "Released Parties" shall not include any Entity that "opts out" of being a Releasing Party (as described in the definition therefor), provided further that the foregoing clause (g) shall not apply with respect to any Entity that "opts out" of being a Releasing Party (as described in the definition therefor).

102.    "*Releasing Parties*" means all of the following:  (a) the Released Parties; (b) each present and former holder of a Claim or Interest who either votes to accept the Plan or is conclusively presumed to have accepted the Plan; (c) each present and former holder of a Claim or Interest who is entitled to vote on the Plan and (i) either votes to reject the Plan or abstains from voting to accept or reject the Plan and (ii) does not check the appropriate box on such holder's ballot to indicate such holder opts not to grant the releases provided under the Plan; and (d) each of the foregoing Entities' respective predecessors, successors and assigns, and current and former shareholders, subsidiaries, directors, officers, funds, affiliates, members, employees, partners, managers, agents, representatives, principals, consultants, attorneys, and professional advisors (each in their capacity as such).

103.    "*Reorganized MACH Gen*" means the Reorganized MACH Gen Entities.

104.    "*Reorganized MACH Gen Entities*" means the MACH Gen Entities or any successors thereto, by merger, consolidation, or otherwise, in each case on or after the Effective Date, including New Holdco.

105.    "*Required First Lien Holders*" means Support Parties who hold, in the aggregate, at least two-thirds (66-2/3%) in principal amount outstanding of all First Lien Claims.

106.    "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement, dated as of January 15, 2014, by and among MACH Gen and the Support Parties, together with all exhibits and schedules thereto, as may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms.

107.    "*Restructuring Transactions*" has the meaning set forth in Article V.B.

10

108.    "*Schedules*" means the schedules of assets and liabilities and the statement of financial affairs, if any, filed by MACH Gen with the Bankruptcy Court in accordance with section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules.

109.    "*Second Lien Agent*" means The Bank of New York Mellon (f/k/a The Bank of New York), in its capacities as second lien collateral agent and administrative agent under the Second Lien Credit Agreement.

110.    "*Second Lien Claims*" means all Claims against any MACH Gen Entity arising on account of the second lien loan made available to MACH Gen pursuant to the Second Lien Credit Agreement, and which constitute "Second Lien Obligations," as such term is defined in the Intercreditor Agreement.

111.    "*Second Lien Credit Agreement*" means that certain Second Lien Credit and Guaranty Agreement, dated as of February 22, 2007, by and among MACH Gen, LLC, as borrower, MACH Gen GP, Millennium Power, New Athens, and New Harquahala, as guarantors, the Second Lien Agent, and the Second Lien Lenders, as amended, supplemented, restated, or modified from time to time.

112.    "*Second Lien Lenders*" means the financial institutions party from time to time to the Second Lien Credit Agreement as lenders, in their respective capacities as such.

113.    "*Secured Claim*" means any Claim that is secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

114.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder.

115.    "*Solus*" means, collectively, Solus Alternative Asset Management LP and its affiliated and managed funds.

116.    "*Solus Manager*" means a manager appointed to the New Holdco Board by Solus pursuant to Article V.I.

117.    "*Support Parties*" means the Entities party from time to time to the Restructuring Support Agreement, other than the MACH Gen Entities.

118.    "*SVP*" means, collectively, Strategic Value Partners LLC and its affiliated and managed funds.

119.    "*TRS*" means the Loan Total Return Swap Confirmation by and between ECP and DB, dated as of October 31, 2011, as it may have been and may be amended, modified, or restated from time to time.

120.    "*TRS Termination*" means a termination of the TRS that results in ECP owning all of the claims and/or interests referenced by the TRS.

121.    "*Unexpired Lease*" means a lease to which one or more of the MACH Gen Entities is party, which lease is subject to assumption or rejection in accordance with section 365 of the Bankruptcy Code.

122.    "*Unimpaired*" means, with respect to a Class, Claim, Interest, or a holder of a Claim or Interest, that such Class, Claim, Interest, or holder is not Impaired.

123.    "*Unsecured Claim*" means any Claim, other than an Administrative Expense, DIP Claim, Priority Claim, First Lien Claim, Second Lien Claim, or Other Secured Claim.

124.    "*Willow Bend Agreement*" means that certain Amended and Restated Consulting Agreement, dated as of January 14, 2014, between MACH Gen, LLC and Willow Bend Capital Management, LLC.

B.    *Rules of Interpretation*

For purposes of the Plan and unless otherwise specified herein: (1) each term, whether stated in the singular or the plural, shall include, in the appropriate context, both the singular and the plural; (2) each pronoun stated in the masculine, feminine, or neuter gender shall include, in the appropriate context, the masculine, feminine, and the neuter gender; (3) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (4) all references to articles or Articles are references to the Articles hereof; (5) all captions and headings are inserted for convenience of reference only and are not intended to be a part of, or to affect the interpretation of, the Plan; (6) any reference to MACH Gen or Reorganized MACH Gen shall mean, in the appropriate context, both MACH Gen and Reorganized MACH Gen; (7) any reference to MACH Gen, LLC or New Holdco shall mean, in the appropriate context, both MACH Gen, LLC and New Holdco; (8) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (9) any reference to an existing document, schedule, or exhibit, whether or not filed, having been filed, or to be filed, shall mean that document, schedule or exhibit, as it may thereafter be amended, modified, or supplemented; (10) any reference to an event occurring on a specified date, including on the Effective Date, shall mean that the event will occur on that date or as soon thereafter as reasonably practicable; (11) any reference to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (12) all references to statutes, regulations, orders, rules of courts and the like shall mean as amended from time to time and as applicable to the Chapter 11 Cases; (13) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (14) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (15) any term used in capitalized form herein that is not otherwise defined but that is used in the

Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.      *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may or shall occur pursuant to the Plan is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.      *Governing Law*

Unless federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, and unless specifically stated otherwise , the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided, however, that corporate or entity governance matters relating to MACH Gen or Reorganized MACH Gen shall be governed by the laws of the state of incorporation or organization of the relevant MACH Gen Entity or Reorganized MACH Gen Entity, as applicable.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## ARTICLE II
## ADMINISTRATIVE EXPENSES AND
## OTHER UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expenses, DIP Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.      *General Administrative Expenses*

Each holder of an Allowed General Administrative Expense, to the extent such Allowed General Administrative Expense has not already been paid during the Chapter 11 Cases and without any further action by such holder, shall receive, in full satisfaction of its General Administrative Expense, Cash equal to the Allowed amount of such General Administrative Expense on the Effective Date (or, if payment is not then due, then in MACH Gen's ordinary course of business), unless otherwise agreed by the holder of such General Administrative Expense and MACH Gen, with the consent of the Majority Second Lien Holders.

B.    *Professional Fees*

    1.    Final Fee Applications

All final requests for payment of Professional Fees incurred prior to the Effective Date must be filed with the Bankruptcy Court and served on Reorganized MACH Gen no later than forty-five (45) days after the Effective Date, unless Reorganized MACH Gen, with the consent of the Majority Second Lien Holders, agrees otherwise in writing.  Objections to Professional Fees must be filed with the Bankruptcy Court and served on Reorganized MACH Gen and the applicable Professional no later than seventy-five (75) days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and any prior orders of the Bankruptcy Court in the Chapter 11 Cases, the Allowed amounts of such Professional Fees shall be determined by the Bankruptcy Court.

For the avoidance of doubt, the immediately preceding paragraph shall not affect any professional-service Entity that is permitted to receive, and MACH Gen is permitted to pay without seeking further authority from the Bankruptcy Court, compensation for services and reimbursement of expenses in the ordinary course of MACH Gen's businesses (and in accordance with any relevant prior order of the Bankruptcy Court), which payments may continue notwithstanding the occurrence of Confirmation.

    2.    Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, Reorganized MACH Gen shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, promptly pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by Reorganized MACH Gen on and after the Effective Date.  On the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and Reorganized MACH Gen may employ and pay any Professional in the ordinary course of business without any further notice to or action, order or approval of the Bankruptcy Court.

C.    *DIP Claims*

Pursuant to the terms of the DIP Facility, each holder of an Allowed DIP Claim shall, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, its Allowed DIP Claim, either (1) receive payment in full from the proceeds of the New First Lien Revolver or (2) be replaced with obligations under the New First Lien Revolver, as contemplated by the terms of the DIP Facility.  Pursuant to the Restructuring Support Agreement, each holder of an Allowed DIP Claim shall be deemed to have consented to receive treatment for such DIP Claim that is different from the treatment set forth in the Bankruptcy Code, on the terms set forth in the Restructuring Support Agreement.

D.    *Priority Tax Claims*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.  In the event an Allowed Priority Tax Claim also is secured, such Claim shall, to the extent it is Allowed, be treated as an Other Secured Claim if such Claim is not otherwise paid or satisfied in full.

**ARTICLE III**
**CLASSIFICATION AND TREATMENT OF**
**CLAIMS AND INTERESTS**

A.    *Classification of Claims and Interests*

Claims and Interests, except for Administrative Expenses, DIP Claims, and Priority Tax Claims, are classified in the Classes set forth in this Article III.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim or Allowed Interest, as applicable, in that Class.  To the extent a specified Class does not include any Allowed Claims or Allowed Interests, as applicable, then such Class shall be deemed not to exist.

The Plan constitutes a separate chapter 11 plan of reorganization for each MACH Gen Entity.  Pursuant to section 1122, the classification of Claims and Interests is as follows:

| **Class** | **Claims or Interests** | **Status** | **Voting Rights** |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | Deemed to accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to accept |
| 3A | First Lien Revolver Claims | Impaired | Entitled to vote[4] |
| 3B | First Lien Term Loan Claims | Impaired | Entitled to vote |
| 4 | Second Lien Claims | Impaired | Entitled to vote |
| 5A | General Unsecured Claims | Unimpaired | Deemed to accept |

---

[4]    First Lien Revolver Claims are expected to be repaid in full from the proceeds of, or replaced with obligations under, the DIP Facility, subject to Bankruptcy Court approval (including, in the DIP Final Order, approval of the roll-up in full).  First Lien Revolver Claims are nonetheless classified for purposes of, and will receive the treatment specified in, the Plan, to the extent such Claims remain outstanding as of the Effective Date.  Accordingly, holders of First Lien Revolver Claims are being provisionally solicited in connection with the Plan.

| Class | Claims or Interests | Status | Voting Rights |
|---|---|---|---|
| 5B | Lease Rejection Claims | Unimpaired | Deemed to accept |
| 6 | Intercompany Claims | Unimpaired | Deemed to accept |
| 7(a) | Interests in MACH Gen, LLC | Impaired | Entitled to vote |
| 7(b)-(e) | Intercompany Interests | Unimpaired | Deemed to accept |

B.    *Treatment of Claims and Interests*

    1.    Class 1 – Priority Non-Tax Claims

        a.    *Classification*: Class 1 consists of all Priority Non-Tax Claims against MACH Gen, separately classified by MACH Gen Entity, namely MACH Gen, LLC (Class 1(a)), MACH Gen GP (Class 1(b)), Millennium Power (Class 1(c)), New Athens (Class 1(d)), and New Harquahala (Class 1(e)).

        b.    *Treatment*: Except to the extent previously paid during the Chapter 11 Cases or such holder agrees to less favorable treatment, each holder of an Allowed Class 1 Claim shall (i) receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each such Claim, payment equal to the Allowed amount of such Claim, in Cash, on the later of the Effective Date and the date such Claim becomes due and payable in the ordinary course of business or (ii) be otherwise rendered Unimpaired.

        c.    *Voting*: Class 1 is Unimpaired under the Plan. Holders of Class 1 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

    2.    Class 2 – Other Secured Claims

        a.    *Classification*: Class 2 consists of all Other Secured Claims against MACH Gen, separately classified by MACH Gen Entity, namely MACH Gen, LLC (Class 2(a)), MACH Gen GP (Class 2(b)), Millennium Power (Class 2(c)), New Athens (Class 2(d)), and New Harquahala (Class 2(e)).

        b.    *Treatment*: Except to the extent such holder agrees to less favorable treatment, each holder of an Allowed Class 2 Claim shall (i) have its Claim be reinstated or receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each such Claim, payment equal to the Allowed amount of such Claim, in Cash, on the Effective Date or (ii) be otherwise rendered Unimpaired.

        c.    *Voting*: Class 2 is Unimpaired under the Plan. Holders of Class 2 Claims are conclusively presumed to have accepted the Plan pursuant to section

1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

3.    Class 3A – First Lien Revolver Claims

    a.    *Classification*:  Class 3A consists of all First Lien Revolver Claims against MACH Gen, separately classified by MACH Gen Entity, namely MACH Gen, LLC (Class 3A(i)), MACH Gen GP (Class 3A(ii)), Millennium Power (Class 3A(iii)), New Athens (Class 3A(iv)), and New Harquahala (Class 3A(v)).

    b.    *Allowance*:  Class 3A Claims are expected to be repaid in full from the proceeds of, or replaced with obligations under, the DIP Facility, subject to Bankruptcy Court approval; in such case, Class 3A shall be deemed not to include any Allowed Claims and deemed not to exist.  To the extent Class 3A Claims remain outstanding on the Effective Date, such Claims shall be deemed Allowed in the aggregate amount of $119,395,609.52 (subject to adjustment for any additional borrowings or repayments occurring after January 15, 2014 and up to the Petition Date) out of a total loan commitment of $200 million, plus any interest and reasonable fees and expenses due and owing pursuant to the First Lien Credit Agreement as of the Effective Date.

    c.    *Treatment*:  Except to the extent previously paid in full from the proceeds of, or replaced with obligations under, the DIP Facility, each holder of an Allowed Class 3A Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each such Claim, (i) payment equal to the Allowed amount of such Claim, in Cash, from proceeds of the New First Lien Revolver or (ii) its Pro Rata share, relative to all Allowed Class 3A Claims and Allowed DIP Claims, of the New First Lien Revolver.

    d.    *Voting*:  Except to the extent previously paid in full from the proceeds of, or replaced with obligations under, the DIP Facility, Class 3A is Impaired under the Plan.  Therefore, holders of Class 3A Claims are provisionally entitled to vote to accept or reject the Plan.

4.    Class 3B – First Lien Term Loan Claims

    a.    *Classification*:  Class 3B consists of all First Lien Term Loan Claims against MACH Gen, separately classified by MACH Gen Entity, namely MACH Gen, LLC (Class 3B(i)), MACH Gen GP (Class 3B(ii)), Millennium Power (Class 3B(iii)), New Athens (Class 3B(iv)), and New Harquahala (Class 3B(v)).

    b.    *Allowance*:  Class 3B Claims are deemed Allowed in the aggregate amount of $483,209,285.14, plus any interest and reasonable fees and

17

expenses due and owing pursuant to the First Lien Credit Agreement as of the Effective Date.

    c.    *Treatment*:  Each holder of an Allowed Class 3B Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each such Claim, its Pro Rata share, relative to all Allowed Class 3B Claims, of the New First Lien Term Loan.

    d.    *Voting*:  Class 3B is Impaired under the Plan.  Therefore, holders of Class 3B Claims are entitled to vote to accept or reject the Plan.

5.    Class 4 – Second Lien Claims

    a.    *Classification*:  Class 4 consists of all Second Lien Claims against MACH Gen, separately classified by MACH Gen Entity, namely MACH Gen, LLC (Class 4(a)), MACH Gen GP (Class 4(b)), Millennium Power (Class 4(c)), New Athens (Class 4(d)), and New Harquahala (Class 4(e)).

    b.    *Allowance*:  Class 4 Claims are deemed Allowed in the aggregate amount of $1,010,317,757.49, plus any interest and reasonable fees and expenses due and owing pursuant to the Second Lien Credit Agreement as of the Effective Date.

    c.    *Treatment*:  Except to the extent such holder agrees to less favorable treatment, each holder of an Allowed Class 4 Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each such Claim, its Pro Rata share, relative to all Allowed Class 4 Claims, of 93.5% of the New Common Units.

    d.    *Voting*:  Class 4 is Impaired under the Plan.  Therefore, holders of Class 4 Claims are entitled to vote to accept or reject the Plan.

6.    Class 5A – General Unsecured Claims

    a.    *Classification*:  Class 5A consists of all General Unsecured Claims against MACH Gen, separately classified by MACH Gen Entity, namely MACH Gen, LLC (Class 5A(i)), MACH Gen GP (Class 5A(ii)), Millennium Power (Class 5A(iii)), New Athens (Class 5A(iv)), and New Harquahala (Class 5A(v)).

    b.    *Treatment*:  Except to the extent previously paid during the Chapter 11 Cases or such holder agrees to less favorable treatment, each holder of an Allowed Class 5A Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each such Claim, (i) payment equal to the Allowed amount of such Claim, in Cash, as an when such Claim becomes due and payable in the ordinary course of MACH Gen's business (plus any interest accrued after the Petition Date with respect to such Claim as may be required by law to render such

Claim Unimpaired, as determined by MACH Gen with the consent of the Majority Second Lien Holders or ordered by the Bankruptcy Court) or (ii) such other treatment, acceptable to the Majority Second Lien Holders, that renders such holder Unimpaired.

c.    *Voting*: Class 5A is Unimpaired under the Plan.  Holders of Class 5A Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

7.    Class 5B – Lease Rejection Claims

a.    *Classification*:  Class 5B consists of all Lease Rejection Claims against MACH Gen (if any), separately classified by MACH Gen Entity, namely MACH Gen, LLC (Class 5B(i)), MACH Gen GP (Class 5B(ii)), Millennium Power (Class 5B(iii)), New Athens (Class 5B(iv)), and New Harquahala (Class 5B(v)).

b.    *Allowance*:  The Allowed amount of each Class 5B Claim shall be subject to section 502(b)(6) of the Bankruptcy Code.

c.    *Treatment*:  Except to the extent such holder agrees to less favorable treatment, each holder of an Allowed Class 5B Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each such Claim, (i) payment equal to  the Allowed amount of such Claim, in Cash, on the Effective Date (plus any interest accrued after the Petition Date with respect to such Claim as may be required by law to render such Claim Unimpaired, as determined by MACH Gen with the consent of the Majority Second Lien Holders or ordered by the Bankruptcy Court) (ii) such other treatment, acceptable to the Majority Second Lien Holders, that renders such holder Unimpaired.

d.    *Voting*:  Class 5B is Unimpaired under the Plan.  Holders of Class 5B Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

8.    Class 6 – Intercompany Claims

a.    *Classification*:  Class 6 consists of all Intercompany Claims against MACH Gen, separately classified by MACH Gen Entity, namely MACH Gen, LLC (Class 6(a)), MACH Gen GP (Class 6(b)), Millennium Power (Class 6(c)), New Athens (Class 6(d)), and New Harquahala (Class 6(e)).

b.    *Treatment*:  Each holder of an Allowed Class 6 Claim shall (i) have its Claim be paid, reinstated, or cancelled, to the extent determined appropriate by MACH Gen with the consent of the Majority Second Lien

Holders, or (ii) receive such other treatment, acceptable to the Majority Second Lien Holders, that renders such holder Unimpaired.

    c.    *Voting*:  Class 6 is Unimpaired under the Plan.  Holders of Class 6 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

9.    Class 7(a) – Interests in MACH Gen, LLC

    a.    *Classification*:  Class 7(a) consists of all Interests in MACH Gen, LLC.

    b.    *Treatment*:  Except to the extent such holder agrees to less favorable treatment, each holder of an Allowed Class 7(a) Interest shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each such Interest, its Pro Rata share, relative to all Allowed Class 7(a) Interests, of 6.5% of the New Common Units.

    c.    *Voting*:  Class 7(a) is Impaired under the Plan.  Therefore, holders of Class 7(a) Interests are entitled to vote to accept or reject the Plan.

10.    Class 7(b)-(e) – Intercompany Interests

    a.    *Classification*:  Classes 7(b)-(e) consist of all Interests in MACH Gen other than in MACH Gen, LLC, separately classified by MACH Gen Entity, namely MACH Gen GP (Class 7(b)), Millennium Power (Class 7(c)), New Athens (Class 7(d)), and New Harquahala (Class 7(e)).

    b.    *Treatment*:  Each holder of an Allowed Interest in Classes 7(b)-(e) shall (i) have its Interest be reinstated or (ii) receive such other treatment, acceptable to the Majority Second Lien Holders, that renders such holder Unimpaired.

    c.    *Voting*:  Classes 7(b)-(e) are Unimpaired under the Plan.  Holders of Interests in Classes 7(b)-(e) are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect MACH Gen's rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupment against, any such Unimpaired Claims.

## ARTICLE IV
## ACCEPTANCE OR REJECTION OF PLAN

A.    *Voting Classes*

Classes 3A, 3B, 4, and 7(a) are Impaired under the Plan; therefore, holders of Claims or Interests in such Classes are entitled to vote to accept or reject the Plan.

An Impaired Class of Claims shall be deemed to have accepted the Plan if, not counting any holder designated pursuant to section 1126(e) of the Bankruptcy Code, (i) holders of at least two-thirds in amount of the Allowed Claims held by holders who actually voted in such Class have voted to accept the Plan, and (ii) holders of more than one-half in number of the Allowed Claims held by holders who actually voted in such Class have voted to accept the Plan.

An Impaired Class of Interests shall be deemed to have accepted the Plan if, not counting any holder designated pursuant to section 1126(e) of the Bankruptcy Code, holders of at least two-thirds in amount of the Allowed Interests held by holders who actually voted in such Class have voted to accept the Plan.

B.    *Presumed Acceptance of the Plan*

Classes 1, 2, 5A, 5B, 6, and 7(b)-(e) are Unimpaired under the Plan.  Holders of Claims or Interests in such Classes are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

C.    *Non-Consensual Confirmation*

To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, MACH Gen may request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code.  MACH Gen reserves the right to alter, amend, modify, revoke, or withdraw this Plan or any document in the Plan Supplement, including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code, subject in each instance to the Restructuring Support Agreement.

D.    *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, Reorganized MACH Gen reserves the right to re-classify, with the consent of the Majority Second Lien Holders, any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE V
## MEANS FOR IMPLEMENTATION OF PLAN

A.    *General Settlement of Claims and Interests*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.  All distributions made to holders of Allowed Claims in any Class and Interests in accordance with the Plan are intended to be, and shall be, final.

B.    *Restructuring Transactions*

On the Confirmation Date, subject to and consistent with the terms of its obligations under the Plan and the Restructuring Support Agreement, and subject to the rights of the Support Parties under the Restructuring Support Agreement, MACH Gen shall be authorized to enter into such transactions and take such other actions as may be necessary or appropriate to effect a corporate and other Entity restructuring of their businesses, to otherwise simplify the overall corporate and other Entity structure of MACH Gen, or to reincorporate or reorganize certain of the MACH Gen Entities under the laws of jurisdictions other than the laws of which such MACH Gen Entities currently are incorporated or formed, which restructuring may include one or more mergers, consolidations, dispositions, liquidations or dissolutions, as may be determined by MACH Gen to be necessary or appropriate to result in substantially all of the respective assets, properties, rights, liabilities, duties and obligations of certain of the MACH Gen Entities vesting in one or more surviving, resulting or acquiring entities (collectively, the "Restructuring Transactions").  In each case in which the surviving, resulting or acquiring Entity in any such transaction is a successor to a MACH Gen Entity, such surviving, resulting or acquiring Entity will perform the obligations of such MACH Gen Entity pursuant to the Plan to pay or otherwise satisfy the Allowed Claims against such MACH Gen Entity, except as provided in any contract, instrument or other agreement or document effecting a disposition to such surviving, resulting or acquiring Entity, which may provide that another MACH Gen Entity will perform such obligations.

In effecting the Restructuring Transactions, MACH Gen shall be permitted to: (1) execute and deliver appropriate agreements or other documents of merger, consolidation, restructuring, disposition, liquidation, or dissolution containing terms that are consistent with the terms of the Plan and the Restructuring Support Agreement and that satisfy the requirements of applicable state law and such other terms to which the applicable Entities may agree; (2)  execute and deliver appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms of the Plan and having such other terms to which the applicable Entities may agree; (3) file appropriate certificates or articles of merger, consolidation or dissolution pursuant to applicable state law; and (4) take all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with such transactions.

The terms of the Restructuring Transactions shall be structured to preserve favorable tax attributes, if any, of the MACH Gen Entities. The Plan may be effected by, or include, a taxable sale of some or all of the MACH Gen Entities' assets to one or more new holding companies that are (1) owned in whole or in part by or for the holders of the Second Lien Claims and (2) either taxable as corporations or are owned directly or indirectly by one or more Entities that are taxable as corporations for U.S. federal income tax purposes.

C.    *Sources of Consideration for Plan Distributions*

    1.    Issuance of New Common Units

On the Effective Date, New Holdco shall issue 10,000,000 units of New Common Units. All of the securities issued pursuant to the Plan shall be duly authorized, validly issued, and fully paid, and non-assessable.  Each distribution and issuance referred to in Article VII shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance, and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

    2.    Cash

Reorganized MACH Gen shall fund distributions under the Plan required to be paid in Cash with Cash on hand, including Cash from operations and any Cash received on the Effective Date.

    3.    New First Lien Facilities

Pursuant to Article III.B, distributions to holders of Allowed Class 3A and Class 3B Claims shall be made in form of new debt issued pursuant to the New First Lien Facilities.  On the Effective Date, Reorganized MACH Gen shall enter into the New First Lien Facilities. Confirmation shall be deemed approval of the New First Lien Facilities, to the extent not approved by the Bankruptcy Court previously (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by MACH Gen or Reorganized MACH Gen in connection therewith) and Reorganized MACH Gen is authorized to execute and deliver those documents necessary or appropriate to obtain the New First Lien Facilities, including the New First Lien Facilities Documents, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval, subject to such modifications as Reorganized MACH Gen, the DIP Lenders, the Required First Lien Lenders, the Majority Second Lien Holders, and the New First Lien Agent may mutually agree to be necessary to consummate the New First Lien Facilities.

D.    *Corporate Existence*

Except as otherwise provided in the Plan (including with respect to the New Holdco LLC Agreement), each MACH Gen Entity shall continue to exist after the Effective Date as a separate limited liability company, limited partnership, or other form, as the case may be, with all the powers of a limited liability company, limited partnership, or other form, as the case may be,

pursuant to the applicable law in the jurisdiction in which each applicable MACH Gen Entity is incorporated or formed and pursuant to the respective limited liability company agreement, operating agreement, limited partnership agreement (or other formation documents) in effect prior to the Effective Date, except to the extent such formation documents are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable law).

E.      *Vesting of Assets in Reorganized MACH Gen*

Except as otherwise provided in the Plan, on the Effective Date, all property in each Estate, all Causes of Action (other than Excluded Actions) and any property acquired by MACH Gen pursuant to the Plan shall vest in each respective Reorganized MACH Gen Entity, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, Reorganized MACH Gen may operate its businesses and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

F.      *Cancellation of Loans, Securities, and Agreements*

Except as otherwise provided in the Plan, on the Effective Date:  (1) the obligations of MACH Gen under the DIP Credit Agreement, the First Lien Credit Agreement (subject to the effectiveness of the New First Lien Facilities Documents and the New First Lien Facilities and satisfaction of all conditions precedent, including all conditions precedent regarding the perfection of liens and security interests, to the obligations of the New First Lien Lenders to make extensions of credit thereunder), the Second Lien Credit Agreement, the Interests in MACH Gen, LLC, its intercompany notes, and any other certificate, equity security, share, note, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of, or ownership interest in, MACH Gen giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of, or ownership interest in, MACH Gen that are reinstated pursuant to the Plan), shall be cancelled as to MACH Gen, and Reorganized MACH Gen shall not have any continuing obligations thereunder; and (2) the obligations of MACH Gen pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation, or similar documents governing the shares, certificates, notes, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of, or ownership interest in, MACH Gen (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligation of or ownership interest in MACH Gen that are specifically reinstated pursuant to the Plan, including indemnification obligations assumed pursuant to the Plan) shall be released and discharged; provided, however, that notwithstanding Confirmation or Consummation, any such agreement that governs the rights of the holder of a Claim shall continue in effect solely for purposes of allowing holders to receive distributions under the Plan; provided further, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to Reorganized MACH Gen.

G.    *Corporate and Other Entity Action*

On the Effective Date, all actions contemplated under the Plan (including, for the avoidance of doubt, the Plan Supplement) shall be deemed authorized and approved in all respects, including:  (1) appointment of the New Boards pursuant to Article V.I and any other managers, directors, or officers for Reorganized MACH Gen identified in the Plan Supplement; (2) the issuance and distribution of the New Common Units; (3) entry into the New Organizational Documents; (4) entry into the New First Lien Documents; (5) implementation of the Restructuring Transactions; and (6) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan involving the corporate or other Entity structure of MACH Gen or Reorganized MACH Gen, and any corporate or other Entity action required by MACH Gen or Reorganized MACH Gen in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, managers, or officers of MACH Gen or Reorganized MACH Gen.  On or before the Effective Date, the appropriate officers of MACH Gen or Reorganized MACH Gen, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effectuate the transactions contemplated under the Plan) in the name, and on behalf, of Reorganized MACH Gen, including any and all agreements, documents, securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Article V.G shall be effective notwithstanding any requirements under applicable non-bankruptcy law.

H.    *New Organizational Documents*

On or immediately prior to the Effective Date or as soon thereafter as is practicable, each of the Reorganized MACH Gen Entities will, to the extent such New Organizational Documents were included in the Plan Supplement, file its New Organizational Documents (if so required under applicable state law) with the applicable Secretaries of State and/or other applicable authorities in its respective state, province, or country of incorporation in accordance with the corporate laws of the respective state, province, or country of incorporation or formation.  Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents will prohibit the issuance of non-voting equity securities.  After the Effective Date, the Reorganized MACH Gen Entities may amend and restate their respective New Organizational Documents and other constituent documents as permitted by the Plan, the laws of their respective state, province, or country of incorporation or formation, and their respective New Organizational Documents, without further order of the Bankruptcy Court.

I.    *Managers and Officers of Reorganized MACH Gen*

As of the Effective Date, the terms of the current members of the boards of directors or managers (as applicable) of MACH Gen shall expire, such directors shall be deemed to have resigned, and the initial boards of directors or managers (as applicable), including the New Boards, and the officers of each of the Reorganized MACH Gen Entities shall be appointed in accordance with the respective New Organizational Documents.  The members of the New Boards will be identified in the Plan Supplement, together with biographical information.  If any such director, manager, or officer of Reorganized MACH Gen is an "insider" under the

Bankruptcy Code, MACH Gen also will disclose the nature of any compensation to be paid to such director or officer.  Each such director, manager, and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of Reorganized MACH Gen.

1.      New Holdco Board

The New Holdco Board shall consist of seven (7) initial members appointed as follows on the Effective Date: (i) three Angelo Gordon Managers appointed by Angelo Gordon; (ii) one Solus Manager appointed by Solus, which director will initially be Christopher Pucillo; (iii) one ECP Manager appointed by DB or ECP, as the case may be; (iv) one Equity-Holder Seat manager appointed by the Majority Equity Holders; and (v) the CEO Manager.

After the initial appointment of directors to the New Holdco Board on the Effective Date, the New Holdco Board will be appointed according to the following:

a.      Angelo Gordon.

For so long as Angelo Gordon owns (directly or indirectly) at least 24% of the Pro Forma Equity, Angelo Gordon will be entitled to designate three individuals to serve on the New Holdco Board.

For so long as Angelo Gordon owns (directly or indirectly) less than 24% of the Pro Forma Equity but at least 16% of the Pro Forma Equity, Angelo Gordon shall be entitled to nominate two individuals to serve on the New Holdco Board.

For so long as Angelo Gordon owns (directly or indirectly) less than 16% of the Pro Forma Equity but at least 8% of the Pro Forma Equity, Angelo Gordon shall be entitled to nominate one individual to serve on the New Holdco Board.

b.      Solus.

For so long as Solus owns (directly or indirectly) at least 8% of the Pro Forma Equity, Solus shall be entitled to designate one individual to serve on the New Holdco Board.

c.      DB/ECP.

For so long as DB, or following a TRS Termination, ECP, owns (directly or indirectly) at least 8% of the Pro Forma Equity, it shall be entitled to designate one individual to serve on the New Holdco Board.

d.      Equity-Holder Seat.

SVP shall designate the director holding the "Equity-Holder Seat" until the first to occur of (i) the date that is eighteen months after the Effective Date and (ii) the date on which SVP owns (directly or indirectly) less than 50% of the Pro Forma Equity that it received on the Effective Date (such date, the "Equity-Holder Manager Transition Date").

After the Equity-Holder Manager Transition Date:

(w) for so long as each of Solus and DB, or following a TRS Termination, ECP, holds at least 8% of the Pro Forma Equity, Solus and DB shall jointly designate the Equity-Holder Seat;

(x) if (1) one of Solus and DB, or following a TRS Termination, ECP, continues to hold at least 8% of the Pro Forma Equity, (2) the other's ownership of the Pro Forma Equity falls below 8% of the Pro Forma Equity, and (3) Angelo Gordon holds less than 16% but at least 8% of the Pro Forma Equity, then for so long as Angelo Gordon holds such amount of Pro Forma Equity and either Solus or DB, or following a TRS Termination, ECP, as applicable, holds at least 8% of the Pro Forma Equity, Angelo Gordon and Solus or DB, or following a TRS Termination, ECP, as applicable, shall jointly designate the Equity-Holder Seat;

(y) if (1) one of Solus and DB, or following a TRS Termination, ECP, continues to hold at least 8% of the Pro Forma Equity, (2) the other's ownership of the Pro Forma Equity falls below 8% of the Pro Forma Equity, and (3) Angelo Gordon holds (A) at least 16% of the Pro Forma Equity or (B) less than 8% of the Pro Forma Equity, then for so long as Solus or DB, or following a TRS Termination, ECP, as applicable, holds at least 8% of the Pro Forma Equity, such holder of at least 8% of the Pro Forma Equity shall designate the Equity-Holder Seat; and

(z) at such time as neither Solus nor DB, or following a TRS Termination, ECP, holds at least 8% of the Pro Forma Equity, the Equity-Holder Seat shall be an independent manager appointed in accordance with the New Holdco LLC Agreement; provided, however, that for so long as Angelo Gordon holds at least 8% of the Pro Forma Equity but no more than 23.9% of the Pro Forma Equity, then Angelo Gordon shall designate the Equity Holder Seat.

e.    Vacancies.

Except as provided below and the preceding Article V.I.1.d, in the event that any Designated Manager for any reason ceases to serve as a member of the New Holdco Board, the resulting vacancy on the New Holdco Board shall be filled by a person designated by the party who designated such Designated Manager.  In the event that the CEO Manager for any reason ceases to serve as a member of the New Holdco Board (including as a result of ceasing to be Reorganized MACH Gen's chief executive officer), the CEO Manager board seat shall remain vacant until Reorganized MACH Gen's chief executive officer is next appointed by the New Board.  Following the loss of any party's right to appoint a Designated Manager, such party will cause its Designated Manager to promptly resign, and the board seat formerly occupied by such Designated Manager will thereafter be subject to a one-year term, with the vacancy resulting from such loss of designation rights initially filled by a vote of the holders of the New Common Units (determined by plurality) at a special meeting called for such purposes and, thereafter, shall be elected annually by the holders of the New Common Units.

2.      New Subsidiary Boards

On the Effective Date, the New Subsidiary Boards shall be appointed in accordance with the applicable New Organizational Documents.

J.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, Reorganized MACH Gen and the officers and members of the boards of directors thereof are authorized to, and may issue, execute, deliver, file, or record, such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, and the securities issued pursuant to the Plan in the name, and on behalf, of Reorganized MACH Gen, without the need for any approvals, authorization, or consents, except for those expressly required pursuant to the Plan or the New Organizational Documents.

K.      *Section 1146 Exemption*

Pursuant to section 1146 of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents and any third party shall forgo the collection of any such tax, recordation fee, or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or assessment.

L.      *Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article IX, Reorganized MACH Gen shall retain, and may enforce, all rights to commence and pursue, as appropriate, any and all Preserved Causes of Action, whether arising before or after the Petition Date, including any actions specifically identified in the Plan Supplement, and Reorganized MACH Gen's rights to commence, prosecute, settle, or assert as a defense such Preserved Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  Reorganized MACH Gen may pursue such Preserved Causes of Action, as appropriate, in accordance with the best interests of Reorganized MACH Gen.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Preserved Cause of Action against it as any indication that MACH Gen or Reorganized MACH Gen, as applicable, will not, or may not, pursue any and all available Preserved Causes of Action against it.  MACH Gen or Reorganized MACH Gen, as applicable, expressly reserves all rights to prosecute any and all Preserved Causes of Action against any Entity.  Unless any Preserved Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, Reorganized MACH Gen expressly reserves all Preserved Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches shall apply to such

Preserved Causes of Action upon, after, or as a consequence of, the Confirmation or Consummation.

In accordance with section 1123(b)(3) of the Bankruptcy Code, any Preserved Causes of Action that a MACH Gen Entity may hold against any Entity shall vest in Reorganized MACH Gen. The applicable Reorganized MACH Gen Entity or Entities, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Preserved Causes of Action. Reorganized MACH Gen shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Preserved Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise ordered by the Bankruptcy Court, provided herein, or identified in the Plan Supplement as being rejected, all Executory Contracts and Unexpired Leases of MACH Gen, including the CPV Agreement and Willow Bend Agreement, shall be deemed assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume or reject Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order. The pendency of any motion to assume or reject Executory Contracts or Unexpired Leases shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date. Each Executory Contract and Unexpired Lease assumed pursuant to this Article VI.A or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, shall revest in, and be fully enforceable by, Reorganized MACH Gen in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

At least fourteen (14) days prior to the Confirmation Hearing, to the extent not previously filed with the Bankruptcy Court and served on affected counterparties, MACH Gen shall provide notices of any Executory Contracts or Unexpired Leases to be rejected to the applicable contract and lease counterparties, together with procedures for asserting any rejection damages claim. Any rejection damages claim that is not timely asserted in accordance with the noticed procedures shall be deemed waived and release with respect to the relevant MACH Gen Entity.

B.      *Cure of Defaults for Executory Contracts and Unexpired Leases Assumed*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy

Code, by payment of the default amount in Cash on the Effective Date or in the ordinary course of business, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of Reorganized MACH Gen or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption and shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

At least fourteen (14) days prior to the Confirmation Hearing, to the extent not previously filed with the Bankruptcy Court and served on affected counterparties, MACH Gen shall provide for notices of assumption and proposed cure amounts to be sent to applicable contract and lease counterparties, together with procedures for objecting thereto and resolution of disputes by the Bankruptcy Court.  Any objection by a contract or lease counterparty to a proposed assumption or related cure amount must be filed, served, and actually received by MACH Gen prior to the Confirmation Hearing (or such other date as may be provided in the applicable assumption notice).  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and payment of the applicable cure amount, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  Any proof of claim filed with respect to an Executory Contract or Unexpired Lease that is assumed shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Bankruptcy Court.

C.      *Indemnification Obligations*

On the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, MACH Gen shall assume (and be deemed to have assumed), (1) all indemnification obligations in place on the Petition Date (whether in operating agreements, limited liability company agreements, limited partnership agreements, board resolutions, indemnification agreements, or employment contracts) for the former and current directors and officers of MACH Gen (other than any indemnification obligation that arises under or relates to gross negligence, fraud, willful misconduct, or illegal acts of, or by, any indemnified party) and (2) all director and officer insurance policies in place as of the Petition Date.  The foregoing indemnification obligations that are assumed, deemed assumed, honored, or reaffirmed by MACH Gen shall remain in full force and effect, shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose.

30

D.    *Insurance Policies*

Each of the insurance policies of MACH Gen and any agreements, documents, or instruments relating thereto, are deemed to be and treated as Executory Contracts under the Plan. On the Effective Date, MACH Gen shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims.

E.    *Payment of Management Incentive Compensation*

All Management Incentive Compensation earned as of, but not paid prior to, the Effective Date shall be paid upon (1) the Effective Date, if such Management Incentive Compensation has already come due, or (2) if such Management Incentive Compensation was not yet due, then when such Management Incentive Compensation comes due in accordance with the terms thereof, as such terms were in effect immediately prior to the Effective Date, and in the ordinary course of MACH Gen's business.  Any modification to the terms of Management Incentive Compensation earned after the Effective Date shall be determined by the compensation committee of the New Holdco Board within ninety (90) days of the Effective Date.

F.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract and Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously terminated or is otherwise not in effect.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts or Unexpired Leases that have been executed by MACH Gen during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G.    *Reservation of Rights*

Nothing contained in the Plan shall constitute an admission by MACH Gen that any Executory Contract or Unexpired Lease is, in fact, an Executory Contract or Unexpired Lease or that MACH Gen or Reorganized MACH Gen has any liability thereunder.

H.    *Non-occurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

I.    *Contracts and Leases Entered into after Petition Date*

Contracts and leases entered into after the Petition Date by any MACH Gen Entity, including any Executory Contracts and Unexpired Leases assumed by a MACH Gen Entity, will

31

be performed by the applicable MACH Gen Entity or Reorganized MACH Gen Entity, as the case may be, liable thereunder in the ordinary course of its business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

# ARTICLE VII
## PROVISIONS GOVERNING DISTRIBUTIONS

A.    *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan (including payments made in the ordinary course of MACH Gen's business to holders of Claims in Class 5A) or paid pursuant to a prior Bankruptcy Court order, on the Effective Date (or if a Claim or Interest is not Allowed on the Effective Date, on the date that such Claim or Interest becomes Allowed), each holder of an Allowed Claim or Allowed Interest shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests in the applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VIII.

B.    *Application of Distributions*

Any distribution made under the Plan on account of an Allowed Claim shall be allocated first to the principal amount of such Claim (as determined for U.S. federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to any portion of such Claim for accrued but unpaid interest.

C.    *Disbursing Agent*

All distributions under the Plan shall be made by the Disbursing Agent on the Effective Date.  If the Disbursing Agent is one or more of the Reorganized MACH Gen Entities, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by Reorganized MACH Gen.

D.    *Rights and Powers of Disbursing Agent*

1.    Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals and incur reasonable fees and expenses to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to

the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.    Incurred Expenses

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and documented expenses incurred by the Disbursing Agent on and after, or in contemplation of, the Effective Date (including taxes) and any reasonable compensation and documented expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by Reorganized MACH Gen.

E.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.    Delivery of Distributions to Holders of First Lien Claims and DIP Claims

Upon the execution of the New First Lien Facilities Documents on the Effective Date, all distributions to holders of First Lien Claims and DIP Claims shall be deemed complete in accordance with the Plan and all obligations thereafter shall be governed by the New First Lien Facilities Documents.

2.    Delivery of Distributions to Second Lien Agent

No later than two (2) Business Days after the Confirmation Order is entered, the Second Lien Agent shall provide to counsel to MACH Gen a list of all holders of Second Lien Claims as of such date and such additional information as reasonably requested by counsel to MACH Gen or the Disbursing Agent required to make distributions under the Plan.  All distributions to holders of Allowed Second Lien Claims shall be governed by the Second Lien Credit Agreement and shall be made to each holder of an Allowed Second Lien Claim or such holder's authorized designee for purposes of distributions to be made hereunder.  All reasonable and documented fees and expenses of the Second Lien Agent incurred after the Effective Date as part of this Article VII.E.2 shall be paid by Reorganized MACH Gen.

3.    Delivery of Distributions in General

Except as otherwise provided herein or prior Bankruptcy Court order, the Disbursing Agent shall make distributions to holders of Allowed Claims and Allowed Interests as of the voting record date, January 15, 2014, at the address for each such holder as indicated on MACH Gen's records as of the date of any such distribution; provided, however, that the manner of such distributions shall be determined at the discretion of Reorganized MACH Gen.

4.    Minimum Distributions of New Common Units

No fractional New Common Units shall be distributed, and no Cash shall be distributed with respect to such fractional amounts.  When any distribution pursuant to the Plan would otherwise result in the issuance of a number of New Common Units that is not a whole number, the actual distribution of New Common Units shall be rounded as follows:  (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number, and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment

therefor. The total number of authorized New Common Units to be distributed to holders of Allowed Claims and Allowed Interests shall be adjusted as necessary to account for the foregoing rounding.

5.       Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; provided, however, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date; provided further, that MACH Gen or Reorganized MACH Gen, as applicable, shall use reasonable efforts to locate a holder if any distribution is returned as undeliverable. After such date, all unclaimed property or interests in property shall revert to Reorganized MACH Gen automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandonment, or unclaimed property laws to the contrary), and the claim of any holder to such property or interest in property shall be discharged and forever barred.

F.       *Section 1145 Exemption*

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New Common Units as contemplated by the Plan shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of securities.  In addition, under section 1145 of the Bankruptcy Code, the New Common Units will be freely tradable in the U.S. by the recipients thereof, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with applicable securities laws and any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments and subject to any restrictions in the New Organizational Documents.

G.       *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, Reorganized MACH Gen shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, Reorganized MACH Gen and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. Reorganized MACH Gen reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens, and encumbrances.

34

H.    *No Postpetition Interest on Claims and Interests*

Unless otherwise specifically provided for in the Restructuring Support Agreement, Plan, Confirmation Order, or other Bankruptcy Court order or otherwise required by applicable law, postpetition interest shall not accrue or be paid on any Claims or Interests, and no holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any such Claim or Interest.

I.    *Setoffs and Recoupment*

MACH Gen and Reorganized MACH Gen are authorized to set off against or recoup from any Claims (to the extent not released pursuant to the Plan) of any nature whatsoever that MACH Gen or Reorganized MACH Gen may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by MACH Gen or Reorganized MACH Gen of any such claim they may have against the holder of such Claim.

J.    *Claims Paid or Payable by Third Parties*

1.    Claims Paid by Third Parties

MACH Gen or Reorganized MACH Gen, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without an objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment (before or after the Effective Date) on account of such Claim from a party that is not a MACH Gen or Reorganized MACH Gen Entity.  To the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a MACH Gen or Reorganized MACH Gen Entity on account of such Claim, such holder shall, within ten (10) days of receipt thereof, repay or return the distribution to the applicable MACH Gen or Reorganized MACH Gen Entity, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such holder to timely repay or return such distribution shall result in the holder owing the applicable Reorganized MACH Gen Entity annualized interest at the federal judgment rate, as in effect as of the Petition Date, on such amount owed for each Business Day after the 10-day grace period specified above until the amount is repaid.

2.    Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of MACH Gen's insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of MACH Gen's insurers agree to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without an objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.

3.       Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that MACH Gen or any Entity may hold against any other Entity under any insurance policies, including against insurers, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VIII
## PROCEDURES FOR TREATING DISPUTED
## CLAIMS AND INTERESTS UNDER PLAN

A.       *Disputed Claims and Interests Process*

Except as otherwise specified in the Plan or required by an order of the Bankruptcy Court, holders of Claims or Interests need not file proofs of claim or interest with the Bankruptcy Court and shall be subject to the Bankruptcy Court process only to the extent provided in the Plan.  If a proof of claim or interest is filed, and if MACH Gen or Reorganized MACH Gen dispute any such Claim or Interest, such dispute shall be determined, resolved, or adjudicated, as the case may be, in the manner as if the Chapter 11 Cases had not been commenced and shall survive the Effective Date as if the Chapter 11 Cases had not been commenced; provided, however, that MACH Gen or Reorganized MACH Gen may elect to object to any proof of claim or interest, and to have the validity or amount of any Claim or Interest adjudicated by, the Bankruptcy Court; provided further, that holders of Claims or Interests may elect to resolve the validity or amount of any Claim or Interest in the Bankruptcy Court.  If a holder makes such an election, the Bankruptcy Court shall apply applicable bankruptcy law and the law that would have governed the dispute if the Chapter 11 Cases had not been filed.  Notwithstanding anything to the contrary herein, (1) Reorganized MACH Gen shall retain all defenses to Claims and Interests under applicable law and (2) notwithstanding anything to the contrary herein, on the Effective Date, any proof of claim or interest filed by an Entity whose Allowed Claim or Allowed Interest is otherwise addressed, resolved, paid, or satisfied by the Plan shall be automatically expunged without further notice to or action, order, or approval of the Bankruptcy Court.

B.       *No Distributions Pending Allowance*

Notwithstanding anything to the contrary herein, if any portion of a Claim or Interest is Disputed, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Disputed Interest becomes Allowed.

C.       *Distributions after Allowance*

To the extent that a Disputed Claim or Disputed Interest ultimately becomes Allowed, distributions (if any) shall be made to the holder of such Allowed Claim or Allowed Interest in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment finding or deeming any Disputed Claim or Disputed Interest to be Allowed has become a Final Order, the Disbursing Agent shall provide to the holder of such Claim or Interest the

36

distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest.

# ARTICLE IX
# SETTLEMENT, RELEASE, INJUNCTION,
# AND RELATED PROVISIONS

A.     *Compromise and Settlement*

The Confirmation Order will constitute the Bankruptcy Court's finding and determination that the settlements reflected in the Plan are (1) in the best interests of MACH Gen, its Estates, and all holders of Claims or Interests, (2) fair, equitable, and reasonable, (3) made in good faith, and (4) approved by the Bankruptcy Court pursuant to Bankruptcy Rule 9019.  In addition, the allowance, classification, and treatment of any Allowed Claims and Allowed Interests of a Released Party take into account any Causes of Action, whether under the Bankruptcy Code or otherwise under applicable non-bankruptcy law, that may exist between MACH Gen and any Released Party and, as of the Effective Date, any and all such Causes of Action are settled, compromised, and released as set forth in the Plan.  The Confirmation Order shall authorize and approve the releases by all Entities of all such contractual, legal, and equitable subordination rights and Causes of Action that are satisfied, compromised, and settled pursuant hereto. Nothing in this Article IX.A shall compromise or settle, in any way whatsoever, any Causes of Action that MACH Gen or Reorganized MACH Gen, as applicable, may have against any Entity that is not a Released Party.

In accordance with the provisions of the Plan, and pursuant to Bankruptcy Rule 9019, without any further notice to, or action, order, or approval of, the Bankruptcy Court, after the Effective Date, Reorganized MACH Gen may, in its sole and absolute discretion, compromise and settle (1) Claims (including Causes of Action) against and Interests in MACH Gen (if any), and (2) claims (including Causes of Action) against other Entities.

B.     *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan (including, for the avoidance of doubt, the Plan Supplement), the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by Reorganized MACH Gen), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in MACH Gen or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose prior to the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in section 502(g), (h), or (i) of the Bankruptcy Code.  The Confirmation Order shall be

37

a judicial determination of the discharge of all Claims and Interests as set forth above subject to the occurrence of the Effective Date.

C.    *Release of Liens*

**Except as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the New First Lien Facilities Documents, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and the effectiveness of the New First Lien Facilities Documents, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized MACH Gen Entities and each of their successors and assigns.**

D.    *Releases of Released Parties*

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article IX.D and shall constitute the Bankruptcy Court's finding that such releases are:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by this Article IX.D; (3) in the best interests of MACH Gen and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Entity (including MACH Gen) asserting any claim or Cause of Action released pursuant to this Article IX.D.**

1.    Releases by MACH Gen

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, including without limitation the efforts of the Released Parties to facilitate the reorganization of MACH Gen and the implementation of the restructuring contemplated by the Restructuring Support Agreement, on and after the Effective Date, MACH Gen, Reorganized Mach Gen, and the Estates are deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party from, and covenanted not to sue on account of, any and all claims, interests, obligations (contractual or otherwise), rights, suits, damages, Causes of Action (including Avoidance Actions), remedies, and liabilities whatsoever, including any derivative claims assertable by or on behalf of a MACH Gen Entity, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that MACH Gen, Reorganized Mach Gen, or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity (including any MACH Gen Entity), based on or relating to, or in any manner arising from, in whole or in part, MACH Gen, the Chapter 11 Cases, the DIP Claims, the First Lien Claims, the Second Lien Claims, the purchase, sale, or rescission of the purchase or sale of any security of MACH Gen or Reorganized MACH Gen, the subject matter of, or the transactions or**

events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any MACH Gen Entity and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or dissemination of the Plan (including, for the avoidance of doubt, the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined by a Final Order of a court of competent jurisdiction to have constituted willful misconduct, fraud, or gross negligence.

      2.      Third-Party Releases by Holders of Claims or Interests

On and after the Effective Date, to the maximum extent permitted by applicable law, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Released Parties from, and covenanted not to sue on account of, any and all claims, interests, obligations (contractual or otherwise), rights, suits, damages, Causes of Action (including Avoidance Actions), remedies, and liabilities whatsoever, including any derivative claims assertable by or on behalf of a MACH Gen Entity, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Releasing Party would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity (including any MACH Gen Entity), based on or relating to, or in any manner arising from, in whole or in part, MACH Gen, the Chapter 11 Cases, the DIP Claims, the First Lien Claims, the Second Lien Claims, the purchase, sale, or rescission of the purchase or sale of any security of MACH Gen or Reorganized MACH Gen, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any MACH Gen Entity and any Released Party, the restructuring of Claims and Interests before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or dissemination of the Plan (including, for the avoidance of doubt, the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that is determined by a Final Order of a court of competent jurisdiction to have constituted willful misconduct, fraud, or gross negligence.

E.      *Exculpation*

No Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any claim (including any Cause of Action) related to any act taken or omitted to be taken in connection with, relating to, or arising out of the out-of-court restructuring efforts of MACH Gen, negotiation of and entry into the Restructuring Support Agreement, the DIP Credit Agreement, the New First Lien Facilities Documents, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, or any contract, instrument, release, or other

agreement or document created or entered into in connection with the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the preparation or filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the Restructuring Transactions, and the administration and implementation of the Plan, including the issuance of any securities or the distribution of property under the Plan or any other agreement or any obligation, cause of action, or liability for any such Claim; <u>provided</u>, <u>however</u>, that the foregoing "Exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined by a Final Order of a court of competent jurisdiction to have constituted willful misconduct, fraud, or gross negligence; <u>provided</u> <u>further</u>, that in all respects such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to, or in connection with, the Plan.  The Exculpated Parties have participated in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of the securities pursuant to the Plan, and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

F.      *Injunction*

        Except as otherwise expressly provided in the Plan and except for obligations issued pursuant to the Plan, including with respect to the New First Lien Facilities, all Entities who have held, hold, or may hold claims, Causes of Action, or interests that have been released pursuant to Article IX.D (the "<u>Released Claims</u>") or discharged pursuant to Article IX.B (the "<u>Discharge</u>"), or that are subject to exculpation pursuant to Article IX.E (the "<u>Exculpation</u>"), are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Released Parties or the Exculpated Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with, or with respect to, any Released Claims or any Claim, Cause of Action, or Interest that is the subject of the Discharge or Exculpation; (2) enforcing, attaching, collecting, or recovering, by any manner or means any judgment, award, decree or order against the Released Parties or the Exculpated Parties, as applicable, on account of, in connection with, or with respect to, any Released Claims or any Claim, Cause of Action, or Interest that is the subject of the Discharge or Exculpation; (3) creating, perfecting, or enforcing any encumbrance of any kind against the Released Parties or the Exculpated Parties, as applicable, or their property or assets on account of, in connection with, or with respect to, any Released Claims or any Claim, Cause of Action, or Interest that is the subject of the Discharge or Exculpation; and (4) asserting any right of subrogation or recoupment of any kind against any obligation due from the Released Parties or the Exculpated Parties, as applicable, or against their property or assets on account of, in connection with, or with respect to, any Released Claims or any Claim, Cause of Action, or Interest that is the subject of the Discharge or Exculpation.

**ARTICLE X**
**CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE**

A.    *Conditions to Confirmation*

The following are conditions to Confirmation that shall have been satisfied or waived in accordance with Article X.C:

1.    no valid termination of the Restructuring Support Agreement with respect to the obligations of all parties thereto shall have occurred, and no Termination Event (as defined in the Restructuring Support Agreement) shall have occurred and not been waived that, in either instance, has the effect of (a) removing any MACH Gen Entity as a party to the Restructuring Support Agreement or (b) having Support Parties remaining as parties to the Restructuring Support Agreement that do not meet the thresholds specified in section 1 of the Restructuring Support Agreement;

2.    the Confirmation Order shall approve all provisions, terms, and conditions hereof and be in form and substance reasonably acceptable to MACH Gen, the DIP Lenders, the Required First Lien Holders, and the Majority Second Lien Holders; and

3.    the Plan Supplement shall have been filed at least fourteen (14) days prior to the Confirmation Hearing, in form and substance reasonably acceptable to MACH Gen, the DIP Lenders, the Required First Lien Holders, and the Majority Second Lien Holders, and any additional documents or amendments to previously-filed documents shall have been filed as amendments to the Plan Supplement prior to Confirmation.

B.    *Conditions to Effective Date*

The following are conditions to the Effective Date that shall have been satisfied or waived in accordance with Article X.C:

1.    no valid termination of the Restructuring Support Agreement with respect to the obligations of all parties thereto shall have occurred, and no Termination Event (as defined in the Restructuring Support Agreement) shall have occurred and not been waived that, in either instance, has the effect of (a) removing any MACH Gen Entity as a party to the Restructuring Support Agreement or (b) having Support Parties remaining as parties to the Restructuring Support Agreement that do not meet the thresholds specified in section 1 of the Restructuring Support Agreement;

2.    the Bankruptcy Court shall have entered the DIP Orders, which shall have become Final Orders, (a) in the forms attached to the Restructuring Support Agreement or (b) in such other forms as are consented to by each of MACH Gen, the DIP Lenders, the Required First Lien Holders, and the Majority Second Lien Holders;

3.      Confirmation shall have occurred, and the Bankruptcy Court shall have entered the Confirmation Order, which shall have become a Final Order, in form and substance reasonably acceptable to MACH Gen, the DIP Lenders, the Required First Lien Holders, and the Majority Second Lien Holders;

4.      all authorizations, consents, regulatory approvals, rulings, or documents required by applicable law to implement and effectuate the Plan, including any approvals required in connection with the transfer, change of control, or assignment of MACH Gen's permits and licenses, shall have been obtained from any appropriate regulatory agencies, including the Federal Energy Regulatory Commission, the Federal Communications Commission, and the New York State Public Services Commission, and not subject to any appeal;

5.      the members of the New Boards shall have been identified in the Plan Supplement and appointed;

6.      all documents to be executed, delivered, assumed, or performed upon or in connection with Consummation shall have been executed, delivered, assumed, or performed, as the case may be, and any conditions contained therein (other than Consummation or notice of Consummation) shall have been satisfied or waived in accordance therewith, including all documents included in the Plan Supplement, which are in form and substance reasonably acceptable to MACH Gen, the DIP Lenders, the Required First Lien Holders, and the Majority Second Lien Holders and otherwise consistent with the Restructuring Support Agreement;

7.      all other actions, documents, certificates, and agreements necessary to implement the Plan shall have been effected or executed and delivered, as the case may be, to the appropriate parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable law; and

8.      there shall not be in effect any (a) order, opinion, ruling, or other decision entered by any court or other Governmental Unit or (b) U.S. or other applicable law staying, restraining, enjoining, prohibiting, or otherwise making illegal the implementation of any of the transactions contemplated by the Plan.

C.      *Waiver of Conditions*

The conditions to Confirmation and the Effective Date set forth in this Article X may be waived only by MACH Gen, with the consent of the DIP Lenders, the Required First Lien Holders, and the Majority Second Lien Holders, in whole or in part, without notice, leave, or order of the Bankruptcy Court.

D.      *Effect of Non-Occurrence of Effective Date*

If the Effective Date does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by MACH Gen, any holders of Claims or Interests (including the Support Parties), or any other Entity; (2) prejudice in any manner the rights of MACH Gen, any holders

42

of Claims or Interests (including the Support Parties), or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by MACH Gen, any holders of Claims or Interests (including the Support Parties), or any other Entity, in any respect.  For the avoidance of doubt, except as provided in the Restructuring Support Agreement, nothing in the Plan shall be construed as requiring termination or avoidance of the Restructuring Support Agreement upon non-occurrence of the Effective Date (subject, in all respects, to any consent, termination, or other rights of the Support Parties under the Restructuring Support Agreement) or as otherwise preventing the Restructuring Support Agreement from being effective in accordance with its terms.

**ARTICLE XI**
**MODIFICATION, REVOCATION OR**
**WITHDRAWAL OF PLAN**

A.    *Modification and Amendments*

Except as otherwise specifically provided in the Plan, and subject to the terms of the Restructuring Support Agreement, MACH Gen reserves the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan and the terms of the Restructuring Support Agreement, each MACH Gen Entity expressly reserves its respective rights to revoke, withdraw, alter, amend, or modify the Plan with respect to such MACH Gen Entity, one or more times, after Confirmation, and to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan and the Restructuring Support Agreement.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article XI.

B.    *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.    *Revocation or Withdrawal of Plan*

MACH Gen reserves the right to revoke or withdraw the Plan with respect to any or all of the MACH Gen Entities prior to the Confirmation Date and to file subsequent plans of reorganization, subject in each instance to the Restructuring Support Agreement.  If MACH Gen revokes or withdraws the Plan, or if Confirmation or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and

(3) nothing contained in the Plan shall:  (a)  constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such MACH Gen Entity or any other Entity (including the Support Parties); or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such MACH Gen Entity or any other Entity (including the Support Parties).

## ARTICLE XII
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.  allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or Unsecured status, or amount of any Claim or Interest, including (a) the resolution of any request for payment of any Administrative Expense and (b) the resolution of any objections to the Secured or Unsecured status, priority, amount, or allowance of Claims or Interests;

2.  decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals pursuant to the Bankruptcy Code or the Plan;

3.  resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which MACH Gen is party or with respect to which MACH Gen may be liable, and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims for rejection damages or cure amounts pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.  ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5.  adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving MACH Gen that may be pending on the Effective Date;

6.  adjudicate, decide, or resolve any and all matters related to sections 1141 and 1146 of the Bankruptcy Code;

7.  enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8.      enter and enforce any order for the sale or transfer of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.     issue injunctions, enter, and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan and ensure compliance with the Plan;

11.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article IX, and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely repaid pursuant to Article VII.J.1;

13.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

14.     determine any other matters that may arise in connection with, or relate to, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.     enter an order or final decree concluding or closing the Chapter 11 Cases;

16.     adjudicate any and all disputes arising from or relating to distributions under the Plan;

17.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20.    hear and determine matters concerning state, local, federal taxes and fees in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21.    hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in the Plan, including under Article IX, regardless of whether such termination occurred before or after the Effective Date;

22.    enforce all orders previously entered by the Bankruptcy Court; and

23.    hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect*

Subject to Article X.B and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon Consummation, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon MACH Gen, Reorganized MACH Gen, and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are party, or subject, to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all of MACH Gen's counterparties to Executory Contracts, Unexpired Leases, and any other prepetition agreements.

B.    *Additional Documents*

On or before the Effective Date, MACH Gen may enter into any such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  MACH Gen or Reorganized MACH Gen, as applicable, and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each Reorganized MACH Gen Entity (or the Disbursing Agent on behalf of each Reorganized MACH Gen Entity) for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

D.    *Statutory Committee and Cessation of Fee and Expense Payment*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases shall be deemed to have been dissolved, and members thereof shall be released and discharged from

46

all rights and duties from or related to the Chapter 11 Cases.  After the Effective Date, Reorganized MACH Gen shall no longer be responsible for paying any fees or expenses incurred by the advisors to any statutory committees.

E.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any MACH Gen Entity with respect to the holders of Claims or Interests before Consummation.

F.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.      *Notices*

All notices, requests, and demands to or upon MACH Gen shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to MACH Gen, to:

> MACH Gen, LLC
> c/o Willow Bend Capital Management, LLC
> 2701 Dallas Pkwy, Suite 560
> Plano, TX 75093
> Attn:  Garry Hubbard, Chief Executive Officer
> Facsimile:  (972) 943-3808

> with copies to:

>> MACH Gen, LLC
>> c/o Competitive Power Ventures, Inc.
>> 8403 Colesville Road, Suite 915
>> Silver Spring, MD 20910
>> Attn:  Eric Cada
>> Facsimile:  (240) 491-9593

>> Milbank, Tweed, Hadley & McCloy LLP
>> 1 Chase Manhattan Plaza

47

New York, NY 10005
Facsimile:  (212) 530-5219
Attn:  Tyson M. Lomazow (tlomazow@milbank.com)
Attn:  Michael E. Comerford (mcomerford@milbank.com)

If to the Majority Second Lien Holders, to:

Angelo, Gordon & Co., L.P.
245 Park Avenue, 26th Floor
New York, NY 10167
Attn:  Gavin Baiera (gbaiera@angelogordon.com)
Telephone:  (212) 692-2000
Facsimile:  (212) 867-9328

Solus Alternative Asset Management LP
410 Park Avenue, 11th Floor
New York, NY 10022
Attn:  Stephen J. Blauner (sblauner@soluslp.com)
Attn:  Michael Colodner (mcolodner@soluslp.com)
Telephone:  (212) 284-4300
Facsimile:  (212) 284-4320

Energy Capital Partners, LLC
51 John F. Kennedy Parkway, Suite 200
Short Hills, New Jersey 07078
Attn:  Rahman D'Argenio (rdargenio@ecpartners.com)
Telephone:  (973) 671-6100
Facsimile:  (973) 671-6101

Deutsche Bank AG, London Branch
c/o Deutsche Bank AG New York Branch
60 Wall Street
New York, NY 10005
Attn:  Alexander Gorokhovskiy (alexander.gorokhovskiy@db.com)
Telephone:  (212) 250-2626
Facsimile:  (646) 736-5751

with copies to:

Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
Attn:  Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com)
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200

Kirkland & Ellis LLP
601 Lexington Avenue

New York, NY 10022
Attn:  Brian E. Schartz (brian.schartz@kirkland.com)
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

If to the Required First Lien Holders:

c/o CLMG Corp., as administrative agent and collateral agent
7195 Dallas Parkway
Plano, TX 75024
Attn: Mr. James Erwin (jerwin@clmgcorp.com)
Telephone:  (469) 467-5414
Facsimile:  (469) 467-5550

With copies to:

Beal Bank USA
Beal Bank, SSB
c/o CSG Investments Inc.
6000 Legacy Drive
Plano, TX 75024
Attn:  Mr. Jacob Cherner (jcherner@csginvestments.com)
Telephone:  (469) 467-5563
Facsimile:  (469) 241-9567

CSG Investments Inc.
6000 Legacy Drive
Plano, TX 75024
Attn:  Mr. Steve Harvey (sharvey@csginvestments.com)
Telephone:  (469) 467-5651
Facsimile:  (469) 241-9567

Hunton & Williams LLP
2200 Pennsylvania Ave. NW
Washington, DC 20037
Attn:  Ellis M. Butler, Esq. (ebutler@hunton.com)
Telephone:  (202) 955-1500
Facsimile:  (202) 778-2201

White & Case LLP
Southeast Financial Center, Suite 4900
200 South Biscayne Boulevard
Miami, FL 33131
Attn:  Thomas E Lauria (tlauria@whitecase.com)
Telephone:  (305) 371-2700
Facsimile:  (305) 358-5744

> White & Case LLP
> 1155 Avenue of the Americas
> New York, NY 10036
> Attn: Scott Greissman (sgreissman@whitecase.com)
> Telephone: (212) 819-8200
> Facsimile: (212) 354-8113

After the Effective Date, MACH Gen shall be authorized to send a notice to Entities specifying that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, MACH Gen shall be authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

H.      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.      *Entire Agreement*

Except as otherwise indicated, the Plan (including the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.      *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into, and are a part of, the Plan as if set forth in full in the Plan. After the exhibits and documents are filed, copies of such exhibits and documents shall be available upon written request to MACH Gen's counsel at the address above or by downloading such exhibits and documents from the Bankruptcy Court's website at http://www.ecf.deb.uscourts.gov/ or the website of MACH Gen's notice and voting agent at http://cases.primeclerk.com/machgen. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

K.      *Nonseverability of Plan Provisions*

Before Confirmation, if any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.

Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without consent of MACH Gen, the Required First Lien Holders, and the Majority Second Lien Holders; and (3) nonseverable and mutually dependent.

L.    *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, MACH Gen shall be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and, pursuant to section 1125(e) of the Bankruptcy Code, MACH Gen and its respective affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys shall be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any previous plan, and, therefore, none of any such parties or individuals or Reorganized MACH Gen will have any liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan and any previous plan.

M.    *Closing of Chapter 11 Cases*

Reorganized MACH Gen shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

N.    *Document Retention*

On and after the Effective Date, Reorganized MACH Gen may maintain documents in accordance with its current document retention policy, as may be altered, amended, modified, or supplemented by Reorganized MACH Gen.

O.    *Conflicts*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, Plan Supplement, Restructuring Support Agreement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan (without reference to the Plan Supplement), the Plan (without reference to the Plan Supplement) shall govern and control.

*[Remainder of page intentionally left blank]*

Dated:  January 2\ , 2014

Respectfully submitted,

MACH GEN, LLC

By: _____

    Name: Garry N. Hubbard
    Title: CEO

MACH GEN GP, LLC

By: _____

    Name: Garry N. Hubbard
    Title: CEO

MILLENNIUM POWER PARTNERS, L.P.

By: _____

    Name: Garry N. Hubbard
    Title: CEO

NEW ATHENS GENERATING
COMPANY, LLC

By: _____

    Name: Garry N. Hubbard
    Title: CEO

NEW HARQUAHALA GENERATING
COMPANY, LLC

By: _____

    Name: Garry N. Hubbard
    Title: CEO