

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- X
                                                        :
In re:                                                  :    Chapter 11
                                                        :
MACH GEN, LLC, et al.,¹                                 :    Case No. 14-10461 (MFW)
                                                        :
                              Debtors.                  :    (Jointly Administered)
                                                        :
------------------------------------------------------- X    Re: Docket Nos. 13 & 14
```

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING MACH GEN TO OBTAIN POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS, (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF

Upon the motion (the "Motion")² of MACH Gen, LLC and certain of its affiliates, as

debtors and debtors in possession in the above-captioned cases (each, a "MACH Gen Entity" and

collectively, the "MACH Gen Entities" or "MACH Gen" ) for entry of an interim order (this

"Interim Order") and a final order (the "Final Order") under sections 105, 361, 362, 363(c),

363(e), 364(c), 364(d)(1), 364(e), and 507 of title 11 of the United States Code, 11 U.S.C.

§§101-1532 (as amended, the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the

Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rule 4001-2

of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of

Delaware (the "Local Rules"), *inter alia* (a) authorizing MACH Gen, LLC (the "Borrower") to

---

¹  The debtors in these chapter 11 cases and the last four digits of each debtor's taxpayer identification number are as follows: (a) MACH Gen, LLC (6738); (b) MACH Gen GP, LLC (6738); (c) Millennium Power Partners, L.P. (6688); (d) New Athens Generating Company, LLC (0156); and (e) New Harquahala Generating Company, LLC (0092). The debtors' principal offices are located at 9300 US Highway 9W, Athens, New York 12015.

²  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the DIP Credit Agreement (as defined below).

obtain, and each of the Subsidiaries to guarantee, post-petition financing in the form of a

revolving credit facility from Beal Bank USA, Beal Bank and/or one or more affiliates, as

lenders (the "DIP Lenders"), with CLMG Corp. ("CLMG"), as administrative agent and

collateral agent (in such capacities, the "DIP Agent"), of up to $200 million (the "DIP Facility"),

of which $55.7 million, plus the amount of deemed DIP Extensions of Credit (as defined below)

as described in Paragraph 9 below and in Section 2.01(a) of the DIP Credit Agreement (as

defined below), shall be available on an interim basis, under the terms of this Interim Order and

the other DIP Loan Documents (as defined below), (b) authorizing the Borrower to use any

proceeds from Prepetition Collateral (as defined below) to repay and permanently reduce the

Prepetition Revolving Credit Balance (as defined below) and, upon entry of the Final Order, to

use the proceeds of DIP Extensions of Credit to repay in full the remaining Prepetition

Revolving Credit Balance, (c) authorizing the use of Cash Collateral (as defined below) by the

MACH Gen Entities effective as of the Petition Date, (d) allowing superpriority administrative

expense status of the DIP Obligations (as defined below) in the MACH Gen Entities' Chapter 11

cases (the "Chapter 11 Cases") and authorizing the MACH Gen Entities to grant to the DIP

Agent on behalf of the DIP Lenders automatically perfected security interests in and liens on all

of the Collateral (as defined below), (e) vacating and modifying the automatic stay imposed by

section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the

terms and provisions of this Interim Order and the Final Order, (f) granting adequate protection

to the Prepetition Agents (as defined below) and the Prepetition Secured Lenders (as defined

below), (g) scheduling a final hearing (the "Final Hearing") to consider entry of the Final Order,

and (h) granting related relief; and the Court having found that the relief requested in the Motion

is in the best interests of MACH Gen, its estates, its creditors and other parties in interest; and the

Court having found that MACH Gen's notice of the Motion and the opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court on March 5, 2014 (the "Interim Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion, the *Declaration of Garry N. Hubbard in Support of MACH Gen's Chapter 11 Petitions and First Day Pleadings*, dated as of March 3, 2014 (the "First Day Declaration"), and the *Declaration of Mark S. Hootnick in Support of MACH Gen's Motion for Entry of Interim and Final Orders (I) Authorizing MACH Gen to Obtain Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Super-Priority Claims, and (IV) Granting Adequate Protection to Prepetition Secured Lenders*, dated as of March 3, 2014 (the "Moelis Declaration"), and at the Interim Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND CONCLUDED THAT:

A.      Disposition. The Motion is granted on an interim basis in accordance with the terms of this Interim Order. Any objections to the Motion with respect to the entry of the Interim Order that have not been withdrawn, waived or settled are hereby denied and overruled.

B.      Commencement of Cases. On March 3, 2014 (the "Petition Date"), each MACH Gen Entity filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The MACH Gen Entities are in possession of their properties and are continuing to operate their businesses as debtors and debtors in possession under sections 1107 and 1108 of the Bankruptcy Code. No official committee of unsecured creditors (a "Committee") has been appointed in the Chapter 11 Cases.

3

C.    <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over the Chapter 11 Cases

and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334, and the *Amended Standing Order of*

*Reference from the United States District Court for the District of Delaware* dated as of February

29, 2012.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2).  The Court may enter a final order consistent with Article III of the United States

Constitution.  Venue of the Chapter 11 Cases in this District is proper pursuant to 28 U.S.C.

§§ 1408 and 1409.  The predicates for the relief sought herein are sections 105, 361, 362, 363(c),

363(e), 364(c), 364(d)(1), 364(e), and 507 of the Bankruptcy Code, Bankruptcy Rules 2002,

4001 and 9014 Local Rule 4001-2.

D.    <u>Adequate Notice</u>.  On the Petition Date, MACH Gen filed the Motion with this

Court pursuant to Bankruptcy Rules 2002, 4001 and 9014, and provided notice of the Motion

and the Interim Hearing by electronic mail, facsimile, hand delivery or overnight delivery to the

following parties and/or their respective counsel as indicated below:  (a) the Office of the U.S.

Trustee; (b) counsel to the First Lien Lenders (as defined below); (c) CLMG, in its capacity as

administrative agent and collateral agent for the First Lien Lenders (the "<u>First Lien Agent</u>"); (d)

counsel to certain Second Lien Lenders (as defined below) owning at least two-thirds in dollar

amount of the outstanding Second Lien Prepetition Obligations (defined below); (e) The Bank of

New York Mellon, in its capacity as administrative agent and collateral agent for the Second

Lien Lenders (the "<u>Second Lien Agent</u>," and together with the First Lien Agent, the "<u>Prepetition</u>

<u>Agents</u>"); (f) Citibank N.A., as Depositary under the Security Deposit Agreement (as defined

below); (g) creditors holding the thirty (30) largest unsecured claims as set forth in the

consolidated list filed with the MACH Gen Entities' Chapter 11 petitions; and (h) all parties

requesting service in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002 (collectively, the

4

"Notice Parties"). Given the nature of the relief sought in the Motion, this Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable law, and no further notice relating to this proceeding and the hearing on this Motion is necessary or required.

      E.    The Prepetition Obligations.

      (i)    *Prepetition First Lien Credit Facility.* Prior to the Petition Date, pursuant to the terms and conditions set forth in (a) the Amended and Restated First Lien Credit and Guaranty Agreement, dated as of June 26, 2012, as amended by the First Amendment to First Lien Credit and Guaranty Agreement, dated as of January 15, 2014 (the "Prepetition First Lien Amendment"), by and among the Borrower, the Subsidiaries, as guarantors, the lenders party thereto (the "First Lien Lenders"), and the First Lien Agent (as the same has been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, the "First Lien Credit Agreement"); and (b) all other agreements, documents and instruments executed and/or delivered with, to or in favor of the First Lien Lenders, including, without limitation, the Intercreditor Agreement (as defined below), all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto (all the foregoing, together with the First Lien Credit Agreement, as all of the same have been supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "First Lien Financing Documents"), the First Lien Lenders:

      (x)    agreed to make revolving loans to, and issue letters of credit for the account of, the Borrower, and to otherwise extend credit to the MACH Gen

5

Entities, in an aggregate principal committed amount of up to $200 million (of which not more than $160 million may be used to issue letters of credit) (the "Prepetition Revolving Credit Facility"); and

(y)    extended to the Borrower a term loan facility, in an aggregate outstanding principal amount of $483,209,285.14 (the "Prepetition Term Loan Facility"; together with the Prepetition Revolving Credit Facility, the "Prepetition First Lien Facilities").

All obligations of the MACH Gen Entities arising under the First Lien Credit Agreement or any other First Lien Financing Document, including under the Prepetition Revolving Credit Facility and the Prepetition Term Loan Facility, and all loans, advances, debts, liabilities, principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including any and all reasonable attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the First Lien Financing Documents) and obligations for the performance of covenants, tasks or duties, or for the payment of any other monetary amounts (including any Yield Maintenance Fees (as defined in the First Lien Credit Agreement)) owing to the First Lien Agent or First Lien Lenders by the MACH Gen Entities, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, shall hereinafter be referred to collectively as the "First Lien Prepetition Obligations."

(ii)    *Prepetition Second Lien Credit Agreement.* Prior to the Petition Date, the lenders party to the Second Lien Credit Agreement (the "Second Lien Lenders", and together with the First Lien Lenders, the "Prepetition Secured Lenders") made loans, advances and provided other financial accommodations to the Borrower pursuant to the terms and conditions set forth in

6

(a) the Second Lien Credit and Guaranty Agreement, dated as of February 22, 2007, as amended by that certain Amendment No. 1 to the Second Lien Credit and Guaranty Agreement dated as of June 26, 2012 (as the same has been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, the "Second Lien Credit Agreement"); and (b) all other agreements, documents and instruments executed and/or delivered with, to or in favor of the Second Lien Lenders, including, without limitation, the Intercreditor Agreement, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments, including any fee letters, executed and/or delivered in connection therewith or related thereto (all the foregoing, together with the Second Lien Credit Agreement, as all of the same have been supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "Second Lien Financing Documents"; together with the First Lien Financing Documents, the "Financing Documents"). All obligations of the MACH Gen Entities arising under the Second Lien Credit Agreement or any other Second Lien Financing Document, including all loans, advances, debts, liabilities, principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including any and all reasonable attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Second Lien Financing Documents) and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Second Lien Agent or Second Lien Lenders by MACH Gen, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, shall hereinafter be referred to collectively as the "Second Lien Prepetition Obligations" (and together with the First Lien Prepetition Obligations, the "Prepetition Obligations").

7

(iii)    *Subsidiary Guarantors*.  The First Lien Prepetition Obligations and the Second Lien Prepetition Obligations are guaranteed by the Subsidiaries under the terms of the First Lien Credit Agreement and the Second Lien Credit Agreement, respectively.

(iv)    *Prepetition First Liens*.  Pursuant to those certain First Lien Collateral Documents (as such term is defined in the First Lien Credit Agreement), each MACH Gen Entity granted to the First Lien Agent for the benefit of the First Lien Lenders to secure the First Lien Prepetition Obligations, a first-priority security interest in and continuing lien (the "Prepetition First Liens") on all of its Property (as defined in the First Lien Credit Agreement), other than Excluded Property (as defined in the First Lien Credit Agreement), including without limitation the Equity Interests (as defined in the First Lien Credit Agreement) in the Subsidiaries (collectively, the "Prepetition Collateral").

(v)    *Prepetition Second Liens*.  Pursuant to those certain Second Lien Collateral Documents (as such term is defined in the First Lien Credit Agreement), each MACH Gen Entity granted to the Second Lien Agent for the benefit of the Second Lien Lenders, to secure the Second Lien Prepetition Obligations, a second-priority security interest in and continuing lien on the Prepetition Collateral (the "Prepetition Second Liens"; and together with the Prepetition First Liens, the "Prepetition Liens").

(vi)    *No Other Liens*.  As of the Petition Date, other than as expressly permitted under the Financing Documents (including any "Permitted Liens" as such term is defined in the First Lien Credit Agreement and the Second Lien Credit Agreement, respectively), there were no liens on or security interests in the Prepetition Collateral other than the Prepetition Liens.

(vii)    *Restructuring Support Agreement and Prepetition First Lien Amendment*. After good faith, arm's length negotiations, MACH Gen, certain holders of Equity Interests in

8

the Borrower, the First Lien Lenders, and certain Second Lien Lenders (owning at least two-thirds in dollar amount of the Second Lien Prepetition Obligations) entered into that certain Restructuring Support Agreement, dated as of January 15, 2014 (as may be amended, supplemented, restated, or modified from time to time in accordance with the terms thereof, the "RSA"), in which the parties thereto agreed, *inter alia*, to engage in various transactions to restructure MACH Gen's obligations under the Financing Documents and its capital structure pursuant to the Prepackaged Plan (as defined in the DIP Credit Agreement). In connection with the RSA and as a necessary condition thereto, the First Lien Lenders and the First Lien Agent entered into the Prepetition First Lien Amendment and, pursuant to the terms thereof, *inter alia*, provided additional funding, which was necessary for the MACH Gen Entities to preserve their business operations and to consummate the transactions contemplated by the RSA.

F.       MACH Gen Entities' Stipulations.  Subject to the rights of any Committee or other parties-in-interest as and to the extent set forth in paragraph 37 below, the MACH Gen Entities acknowledge, admit, represent, stipulate and agree that:

(i)       *First Lien Prepetition Obligations.*  As of the Petition Date, the First Lien Prepetition Obligations for which the MACH Gen Entities are truly and justly indebted to the First Lien Lenders, without defense, counterclaim, recoupment or offset of any kind, aggregated not less than approximately $627,548,670, including (x) not less than approximately (1) $144,339,385 on account of First Lien Prepetition Obligations incurred under and in connection with the Prepetition Revolving Credit Facility, including accrued but unpaid interest (but excluding fees and expenses) (the "Prepetition Revolving Credit Balance"), and (2) $483,209,285.14 on account of First Lien Prepetition Obligations incurred under and in connection with the Prepetition Term Loan Facility, including accrued but unpaid interest (but

9

excluding fees and expenses) (the "<u>Prepetition Term Loan Balance</u>"), and (y) all other First Lien Prepetition Obligations.

      (ii)    *Prepetition First Liens Not Subject to Avoidance.* The Prepetition First Liens (a) constitute valid, binding, enforceable, nonavoidable, and properly perfected liens on the Prepetition Collateral that, prior to entry of this Interim Order, were senior in priority (except for Permitted Liens as defined in and to the extent expressly permitted under the First Lien Credit Agreement) over any and all other liens on the Prepetition Collateral; and (b) are not subject to avoidance, reductions, recharacterization, set-off, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any other applicable law or regulation (except insofar as such liens are subordinated to the DIP Liens, the Adequate Protection Liens in respect of the First Lien Lenders and the Carve-Out (each term as defined below) in accordance with the provisions of this Interim Order and the other DIP Loan Documents).

      (iii)    *Second Lien Prepetition Obligations.* As of the Petition Date, the Second Lien Prepetition Obligations for which the MACH Gen Entities are truly and justly indebted to the Second Lien Lenders, without defense, counterclaim, recoupment or offset of any kind, aggregated not less than approximately $1,030,084,624.42, including (x) not less than approximately $1,030,084,624.42 with respect to Second Lien Prepetition Obligations incurred under and in connection with the Second Lien Credit Agreement, including accrued but unpaid interest (but excluding fees and expenses) (the "<u>Prepetition Second Lien Balance</u>") and (y) all other Second Lien Prepetition Obligations.

      (iv)    *Prepetition Second Liens Not Subject to Avoidance.* The Prepetition Second Liens (a) constitute valid, binding, enforceable, nonavoidable, and properly perfected

10

liens on the Prepetition Collateral that, prior to entry of this Interim Order, were senior in priority over any and all liens on the Prepetition Collateral (except as expressly provided in the Financing Documents) other than the Prepetition First Liens; and (b) are not subject to avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any other applicable law or regulation (except insofar as such liens are subordinated to the Prepetition First Liens, the Adequate Protection Liens in respect of the First Lien Lenders, the DIP Liens, and the Carve-Out) in accordance with this Interim Order, the other DIP Loan Documents and the Intercreditor Agreement.

(v) *No Claims.* The MACH Gen Entities have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the First Lien Agent, the Second Lien Agent, or any Prepetition Secured Lender with respect to the Financing Documents, the Prepetition Obligations, the Prepetition Liens, or otherwise, whether arising at law or at equity, including, without limitation, any challenge, recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510, 541 or 542 through 553, inclusive, of the Bankruptcy Code.

(vi) *Value of Prepetition Collateral.* The aggregate value of the Prepetition Collateral granted or pledged to the First Lien Agent, for the benefit of the First Lien Lenders, pursuant to the Financing Documents, is equal to or greater than the aggregate amount of the First Lien Prepetition Obligations.

(vii) *Indemnity.* The First Lien Agent, the First Lien Lenders, the DIP Agent and the DIP Lenders have acted in good faith, and without negligence or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to

11

negotiating, implementing, documenting or obtaining requisite approvals of the RSA, the Prepetition First Lien Amendment, the DIP Facility, and the use of Cash Collateral, including in respect of the granting of the DIP Liens and the Adequate Protection Liens, any challenges or objections to the DIP Facility or the use of Cash Collateral, and all documents related to any and all transactions contemplated by the foregoing. Accordingly, the First Lien Agent, the First Lien Lenders, the DIP Agent and the DIP Lenders shall be and hereby are indemnified and held harmless by the MACH Gen Entities in respect of any claim or liability incurred in respect thereof or in any way related thereto, provided that no such parties will be indemnified for any cost, expense or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence or willful misconduct. No exception or defense in contract, law or equity exists as to any obligation set forth, as the case may be, in this paragraph F(vii), in the First Lien Financing Documents or in the DIP Loan Documents, to indemnify and/or hold harmless the First Lien Agent, the First Lien Lenders, the DIP Agent or the DIP Lenders, as the case may be.

(viii)    *Release.* The MACH Gen Entities hereby stipulate and agree that they forever and irrevocably release, discharge and acquit the DIP Agent, the First Lien Agent, all former, current and future First Lien Lenders and DIP Lenders, and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys and agents, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "Releasees") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, reasonable attorneys' fees), debts, liens, actions and causes of action of any and every nature whatsoever relating to, as applicable, the DIP Facility, the DIP Loan Documents, the Prepetition

First Lien Facilities, the First Lien Financing Documents and/or the transactions contemplated hereunder or thereunder including, without limitation, (x) any so-called "lender liability" or equitable subordination claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the First Lien Agent, the First Lien Lenders, the DIP Agent and the DIP Lenders. The MACH Gen Entities further waive and release any defense, right of counterclaim, right of set-off or deduction to the payment of the First Lien Prepetition Obligations and the DIP Obligations which the MACH Gen Entities now have or may claim to have against the Releasees, arising out of, connected with or relating to any and all acts, omissions or events occurring prior to the Bankruptcy Court entering this Interim Order.

G.    Cash Collateral. For purposes of this Interim Order the term "Cash Collateral" shall mean and include all "cash collateral" as defined in section 363 of the Bankruptcy Code, in which the First Lien Agent on behalf of the First Lien Lenders or the Second Lien Agent on behalf of the Second Lien Lenders has a lien or security interest, in each case whether existing on the Petition Date, arising pursuant to this Interim Order or any Final Order, or otherwise. The MACH Gen Entities represent and stipulate that all of MACH Gen's cash, cash equivalents, negotiable instruments, investment property, and securities constitute Cash Collateral of the First Lien Agent on behalf of the First Lien Lenders and the Second Lien Agent on behalf of the Second Lien Lenders.

H.    Use of DIP Facility and Cash Collateral. The MACH Gen Entities have an immediate and critical need to use the DIP Facility and Cash Collateral to preserve and operate their businesses and effectuate a reorganization of their businesses, which will be used in

13

accordance with the terms of this Interim Order and subject to the Approved Budget (as defined

below). Without the use of the DIP Facility and Cash Collateral, the MACH Gen Entities will

not have sufficient liquidity to be able to continue to operate their businesses. The adequate

protection provided herein and other benefits and privileges contained herein are consistent with

and authorized by the Bankruptcy Code and are necessary in order to obtain such consent or

nonobjection of certain parties, and to adequately protect the parties' interests in the Prepetition

Collateral. Absent authorization to immediately use the DIP Facility and Cash Collateral, the

MACH Gen Entities' estates and their creditors would suffer immediate and irreparable harm.

     I.     <u>Other Financing Unavailable</u>. As discussed in the First Day Declaration and the

Moelis Declaration, MACH Gen is unable to obtain (i) adequate unsecured credit allowable

either (a) under sections 364(b) and 503(b)(l) of the Bankruptcy Code or (b) under section

364(c)(l) of the Bankruptcy Code, (ii) adequate credit secured by (x) a senior lien on

unencumbered  assets of their estates under section 364(c)(2) of the Bankruptcy Code and (y) a

junior lien on encumbered assets of their estates under section 364(c)(3) of the Bankruptcy Code,

or (iii) secured credit under section 364(d)(l) of the Bankruptcy Code from sources other than the

First Lien Lenders on terms more favorable than the terms of the DIP Facility. The only

available source of secured credit available to MACH Gen, other than the use of Cash Collateral,

is the DIP Facility. MACH Gen requires both additional financing under the DIP Facility and

the continued use of Cash Collateral under the terms of this Interim Order in order to satisfy its

post-petition liquidity needs.

     J.     <u>Best Financing Presently Available</u>. The DIP Agent and the DIP Lenders have

indicated a willingness to provide MACH Gen with financing solely on the terms and conditions

set forth in this Interim Order (and, subject to entry by the Court, the Final Order) and the other

14

DIP Loan Documents. After considering all of their alternatives, the MACH Gen Entities have concluded, in an exercise of their sound business judgment, that the financing to be provided by the DIP Lenders pursuant to the terms of this Interim Order (and, subject to entry by the Court, the Final Order) and the other DIP Loan Documents, represents the best financing presently available to MACH Gen. The DIP Lenders are good faith financiers. The DIP Lenders' and DIP Agent's claims, superpriority claims, security interests, liens and other protections granted pursuant to this Interim Order (and, subject to entry by the Court, the Final Order) and the DIP Credit Agreement will not be affected by any subsequent reversal, modification, vacatur or amendment of this Interim Order, the Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

K.    <u>Good Cause for Immediate Entry</u>. Good cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Rule 4001-2. In particular, the authorization granted herein for the MACH Gen Entities to enter into the DIP Facility, to continue using Cash Collateral and to obtain interim financing, including on a priming lien basis, is necessary to avoid immediate and irreparable harm to the MACH Gen Entities and their estates. Entry of this Interim Order is in the best interest of the MACH Gen Entities, their estates and creditors. The terms of the DIP Facility (including MACH Gen's continued use of Cash Collateral) are fair and reasonable under the circumstances, reflect MACH Gen's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

L.    <u>Arm's Length Negotiation</u>. MACH Gen, the DIP Agent, the DIP Lenders, the First Lien Agent, the First Lien Lenders and certain of the Second Lien Lenders (owning at least two-thirds in dollar amount of the Second Lien Prepetition Obligations) have negotiated the

15

terms and conditions of the DIP Facility (including the MACH Gen Entities' continued use of Cash Collateral) and this Interim Order in good faith and at arm's length, and any credit extended and loans made to MACH Gen pursuant to this Interim Order shall be, and hereby are, deemed to have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

M.    Application of Proceeds of the Collateral. All proceeds of the sale or other disposition of the Collateral shall be applied in accordance with the terms of the DIP Loan Documents and this Interim Order.

N.    Adequate Protection for the Prepetition Secured Lenders. The Prepetition Secured Lenders, the First Lien Agent and the Second Lien Agent have negotiated and acted in good faith regarding the RSA, the Prepetition First Lien Amendment, the DIP Facility and MACH Gen's use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of MACH Gen's estates and continued operation of their businesses, in accordance with the terms hereof. The Prepetition Secured Lenders, the First Lien Agent and the Second Lien Agent have agreed to permit MACH Gen to use the Prepetition Collateral, including the Cash Collateral, in accordance with the terms hereof and the Approved Budget (subject to Permitted Variances (as defined below)). The Yield Maintenance Fee is an essential element of the adequate protection provided hereunder. Without the Yield Maintenance Fee being payable in accordance with the terms of the First Lien Credit Agreement and the DIP Credit Agreement (and irrespective of the filing or continuation of these Chapter 11 Cases or any Successor Cases (as defined below)), the First Lien Agent and the First Lien Lenders would not have entered into the Prepetition First Lien Amendment or extended credit in connection therewith, entered into the RSA or consented to the use of Cash Collateral or the DIP Facility.

16

The rights of the Prepetition Secured Lenders under the RSA are also an essential element of their adequate protection. Without their rights under the RSA, the First Lien Agent and the First Lien Lenders would not have entered into the Prepetition First Lien Amendment, and the Prepetition Agents and the Prepetition Secured Lenders would not have consented to the use of Cash Collateral or the DIP Facility. Accordingly, the Prepetition Secured Lenders may exercise all of their termination and other rights under the RSA, in accordance with the terms thereof, irrespective of the commencement or the continuation of the Chapter 11 Cases or any Successor Case, or the automatic stay to the extent it might apply to such termination or other rights. The Prepetition Secured Lenders and the Prepetition Agents are entitled to the adequate protection provided in this Interim Order as and to the extent set forth herein pursuant to §§ 361, 362 and 363 of the Bankruptcy Code. Based on the Motion and on the record presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash Collateral) are fair and reasonable, reflect MACH Gen's prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the consent thereto of the Prepetition Secured Lenders and the Prepetition Agents; provided, that nothing in this Interim Order or the other DIP Loan Documents shall (x) be construed as a consent by the First Lien Agent or any First Lien Lender that it would be adequately protected in the event debtor in possession financing is provided by a third party (i.e., other than the DIP Lenders) or a consent to the terms of any other such financing or any lien encumbering the Collateral (whether senior or junior) or to the use of Cash Collateral except as provided in this Interim Order, or (y) prejudice, limit or otherwise impair the rights of the First Lien Agent (for the benefit of the First Lien Lenders) to

17

seek new, different or additional adequate protection in the event circumstances change after the date hereof.

O.    <u>Prepetition Intercreditor Agreement</u>.    The MACH Gen Entities and the Prepetition Agents are parties to that certain Collateral Agency and Intercreditor Agreement dated as of December 5, 2006 (as amended, supplemented or otherwise modified from time to time, the "<u>Intercreditor Agreement</u>"), which governs the relative rights against the MACH Gen Entities of the Prepetition Secured Lenders in respect of the respective Prepetition Obligations and the Collateral. The Intercreditor Agreement remains in full force and effect in accordance with the terms thereof. By executing the RSA (and subject to the terms and conditions contained therein), each Second Lien Lender party thereto agreed, and all other Second Lien Lenders are deemed to have agreed and consented, that the First Lien Credit Agreement (as amended by the Prepetition First Lien Amendment), any use of Cash Collateral hereunder and under the Final Order, and the DIP Loan Documents shall constitute a "Refinancing First Lien Credit Agreement" "as Amended and Refinanced" pursuant to the Intercreditor Agreement, and that the First Lien Prepetition Obligations, any use of Cash Collateral and the DIP Obligations authorized by this Interim Order (and the Final Order), and under the DIP Loan Documents, are and shall continue to be treated as First Lien Obligations (as defined in the Intercreditor Agreement) for all purposes of the Intercreditor Agreement and the Financing Documents, including for purposes of the lien priorities and rights in respect of Collateral set forth therein, subject to the terms of this Interim Order. By executing the RSA, each Second Lien Lender party thereto has agreed, and all Second Lien Lenders are deemed to have agreed, for all purposes of the Intercreditor Agreement and the Financing Documents, to the MACH Gen Entities' use of Cash Collateral and the incurrence of DIP Obligations authorized by this Interim Order (and the Final Order), and under

18

the DIP Credit Agreement, and the MACH Gen Entities' and First Lien Lenders' entry into the Prepetition First Lien Amendment and the DIP Credit Agreement, and, in each case, the entry into the other documents related thereto and the transactions contemplated thereby.

P. <u>Sections 506(c) and 552(b)</u>. In light of the Prepetition Secured Lenders' agreement to subordinate their liens and claims to the Carve-Out, the DIP Liens and the Adequate Protection Liens in respect of the First Lien Lenders, to permit the use of the DIP Facility and Cash Collateral for payments made in accordance with the Approved Budget and the terms of this Interim Order, subject to entry of a Final Order, (a) the Prepetition Secured Lenders and the Prepetition Agents are entitled to a waiver of the provisions of Bankruptcy Code section 506(c), and (b) the First Lien Lenders and the First Lien Agent are entitled to a waiver of any "equities of the case" claims under Bankruptcy Code section 552(b).

Q. <u>Order of the Court</u>. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND, DETERMINED, ORDERED, ADJUDGED AND DECREED THAT:**

1. <u>Motion Granted</u>. The Motion is granted on an interim basis, subject to the terms set forth herein. Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled on their merits. This Interim Order shall be valid, binding on all parties in interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rule 6004(h), 7062 and 9014.

2. <u>Authority to Enter Into DIP Facility</u>. The MACH Gen Entities are hereby authorized to incur and perform the obligations arising from and after the date of this Interim

Order under the DIP Facility, on the terms set forth in this Interim Order, the debtor-in-possession credit and guaranty agreement attached hereto as Exhibit A (as amended, supplemented or otherwise modified from time to time, the "DIP Credit Agreement"), and such additional documents, instruments and agreements as may be reasonably required by the DIP Agent to implement the terms or effectuate the purposes of and transactions contemplated by this Interim Order, the Final Order (when entered by the Court) and the DIP Credit Agreement (collectively, this Interim Order, the Final Order, the DIP Credit Agreement and such additional documents, instruments and agreements, including any fee letters, the "DIP Loan Documents"). The MACH Gen Entities are hereby authorized to execute and deliver the DIP Loan Documents and borrow money and obtain letters of credit under the DIP Facility, on an interim basis, up to an aggregate principal amount not to exceed $55.7 million, plus the amount of deemed DIP Extensions of Credit as described in Paragraph 9 below and in Section 2.01(a) of the DIP Credit Agreement, and the Subsidiaries are hereby authorized to guaranty such borrowings and the Borrower's obligations under the DIP Facilities and the DIP Loan Documents, all in accordance with the terms of this Interim Order and the other DIP Loan Documents.

3.      Use of Cash Collateral and DIP Extensions of Credit.  The MACH Gen Entities are hereby authorized to use Cash Collateral and the proceeds of any DIP Extensions of Credit (as defined below) solely in accordance with the Approved Budget and the financial covenants, availability formulae and other terms and conditions set forth in this Interim Order and the other DIP Loan Documents.

4.      Validity of DIP Loan Documents.  The DIP Loan Documents shall constitute valid and binding obligations of the MACH Gen Entities, enforceable against each MACH Gen Entity party thereto in accordance with the terms thereof.  No obligation, payment, transfer or

20

grant of security under the DIP Loan Documents as approved under this Interim Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

5.      DIP Extensions of Credit.  All loans and letters of credit made to or for the benefit of any of the MACH Gen Entities on or after the Petition Date in accordance with the DIP Loan Documents (collectively, the "DIP Extensions of Credit"), all interest thereon and all fees, costs, expenses, indemnification obligations and other liabilities, including any Yield Maintenance Fee (which shall be payable in accordance with the DIP Loan Documents irrespective of the commencement or the continuation of the Chapter 11 Cases or any Successor Case), owing by the MACH Gen Entities to the DIP Lenders or the DIP Agent in accordance with and relating to this Interim Order and the other DIP Loan Documents shall hereinafter be referred to as the "DIP Obligations."  The DIP Extensions of Credit: (a) shall be evidenced by the books and records of the DIP Agent or the DIP Lenders and, upon the request of any DIP Lender, a note executed and delivered to such DIP Lender by the Borrower in accordance with the terms of the DIP Loan Documents, which note shall evidence such DIP Lender's DIP Extensions of Credit in addition to such accounts and records; (b) shall bear interest payable and incur fees at the rates set forth in Section 2.07 of the DIP Credit Agreement; (c) shall be secured in the manner specified below; (d) shall be payable in accordance with the DIP Loan Documents; and (e) shall otherwise be governed by the terms set forth in this Interim Order and the other DIP Loan Documents.

6.      Structure of DIP Facility.  The DIP Facility shall be comprised of a $200 million revolving credit facility.  An amount up to $55.7 million, plus the amount of deemed DIP Extensions of Credit as described in Paragraph 9 below and in Section 2.01(a) of the DIP Credit

Agreement, of the DIP Facility shall be available upon entry of this Interim Order. All letters of credit issued and outstanding as of the date hereof under the Prepetition Revolving Credit Facility shall, immediately upon entry of this Interim Order, be deemed to be issued under the DIP Facility.

7.    Conditions Precedent. The DIP Lenders and the DIP Agent shall have no obligation to make any DIP Extensions of Credit or any other financial accommodation under the DIP Loan Documents unless the conditions precedent to make such extensions of credit under the DIP Loan Documents have been satisfied in full or waived in accordance with such DIP Loan Documents.

8.    Repayment of Prepetition Revolving Credit Balance. The MACH Gen Entities are authorized and directed to pay to the First Lien Agent on behalf of the First Lien Lenders all principal, interest and fees in respect of the Prepetition Revolving Credit Balance, in accordance with the First Lien Financing Documents and paragraphs 9 and 10 of this Interim Order.

9.    Repayment of Prepetition Revolving Credit Loans. The MACH Gen Entities are authorized and directed to make all payments and transfers of estate property constituting proceeds of Prepetition Collateral to the First Lien Agent on behalf of the First Lien Lenders in respect of the Prepetition Revolving Credit Balance as provided in this paragraph 9, which payments and transfers shall not be avoidable or recoverable from the First Lien Lenders under sections 547, 548, 550, 553 or any other section of the Bankruptcy Code or subject to any other claim, charge, assessment or other liability, whether by applicable provisions of the Bankruptcy Code, other law or otherwise. All proceeds of the Prepetition Collateral, including all amounts received in the Revenue Account, the Proceeds Account and other Accounts (each as defined in the Security Deposit Agreement (as defined below)), and any other amounts received by the First

22

Lien Agent or the First Lien Lenders in respect of the Prepetition Obligations, shall be applied or deemed to be applied in accordance with this Interim Order, <u>first</u> to permanently reduce the Prepetition Revolving Credit Balance until the Prepetition Revolving Credit Balance is indefeasibly paid in full in cash and completely satisfied (and upon each such reduction, the DIP Lenders shall be deemed to have made a DIP Extension of Credit in an equivalent amount, up to but not exceeding, together with all outstanding DIP Extensions of Credit, the maximum amount of the DIP Facility), and <u>then</u> as otherwise provided, permitted and/or required under the DIP Loan Documents and the First Lien Financing Documents (including the Security Deposit Agreement).  Amounts so applied in repayment of the Prepetition Revolving Credit Balance may not be reborrowed.  The Borrower shall not request and the DIP Lenders are not required to make any DIP Extensions of Credit (other than any deemed DIP Extensions of Credit pursuant to this paragraph 9) if cash on hand in the Accounts (as defined in the Security Deposit Agreement) exceeds $25 million. Without limiting the generality of the foregoing, the MACH Gen Entities are authorized and directed, without further order of this Court, to pay or reimburse the First Lien Lenders and the DIP Lenders for all past, present and future costs and expenses, including, without limitation, all reasonable professional fees, consultant fees and legal fees and expenses (without the necessity of filing a fee application) paid or incurred by the First Lien Lenders, the First Lien Agent, the DIP Lenders or the DIP Agent in connection with the financing transactions provided in this Interim Order, the other DIP Loan Documents and the First Lien Financing Documents, all of which shall be and are included as part of the principal amount of the DIP Obligations and secured by the Collateral.

10.    <u>Continuation of Prepetition Cash Management Procedures</u>. Except to the extent inconsistent with the express terms of this Interim Order, all prepetition practices and procedures

23

(including bank account cash management practices) provided in the Financing Documents

(including in that certain Security Deposit Agreement, dated as of December 5, 2006 (the

"Security Deposit Agreement"), by and among the MACH Gen Entities, the Prepetition Agents

and Citibank, N.A., as Depositary) for the payment, collection and application of proceeds of the

Prepetition Collateral, the turnover and transfer of cash and other financial assets, the delivery of

property to the First Lien Lenders or the First Lien Agent, and the funding of extensions of credit

pursuant thereto are hereby approved and shall continue without interruption in respect of the

Prepetition Collateral and the First Lien Prepetition Obligations and in respect of the Collateral,

the DIP Obligations and the DIP Extensions of Credit (including the issuance of letters of credit

under the DIP Facility) pursuant to the DIP Loan Documents, which shall constitute a Revolving

Credit Facility under and as defined in the Security Deposit Agreement.

   11. Rights and Benefits Under Intercreditor Agreement. Except to the extent (if any)

that such terms and conditions are inconsistent with the express terms of this Interim Order or the

RSA, the terms and conditions of the Intercreditor Agreement (including with respect to the

relative rights of the Prepetition Secured Lenders) shall not be mitigated or modified as a result

of entry of this Interim Order, entry into the DIP Loan Documents or the incurrence of the DIP

Obligations. The Second Lien Lenders have consented or are deemed to have consented to the

terms of the DIP Facility under the RSA and the Intercreditor Agreement.

   12. Other Use of DIP Extensions of Credit and Cash Collateral. Subject to the terms

and conditions set forth in this Interim Order and the other DIP Loan Documents, MACH Gen

may use the DIP Extensions of Credit and the Cash Collateral, in accordance with the Approved

Budget, to pay the amounts associated with the items set forth in Section 2.14 of the DIP Credit

Agreement.

24

13.    <u>Approved Budget</u>.

(a)    The budget annexed hereto as <u>Exhibit B</u> (as updated periodically in accordance with the DIP Credit Agreement, the "<u>Approved Budget</u>") hereby is approved. Proceeds of the DIP Extensions of Credit and Cash Collateral under this Interim Order shall be used by MACH Gen only in accordance with the Approved Budget and this Interim Order, subject to any Permitted Variance. Subject to the Carve-Out, the DIP Lenders' consent to the Approved Budget shall not be construed as consent to the use of DIP Extensions of Credit or Cash Collateral beyond the Termination Date (as defined below), regardless of whether the aggregate funds shown on the Approved Budget have been expended.

(b)    Subject to paragraph 36 of this Interim Order, upon the written consent of the First Lien Lenders, MACH Gen, and the Majority Second Lien Holders (as defined in the RSA), and without further order of the Court, the Approved Budget may be amended from time to time. MACH Gen shall provide a copy of any so amended revised budget to the U.S. Trustee and counsel to the Committee, if any.

14.    <u>Permitted Variance</u>. Notwithstanding the Approved Budget, so long as the Termination Date has not occurred, the MACH Gen Entities shall be authorized to use proceeds of the DIP Extensions of Credit and Cash Collateral in accordance with the Approved Budget, in an amount that would not cause MACH Gen to use Cash Collateral or DIP Extensions of Credit in an aggregate amount greater than one-hundred and twenty percent (120%) of the Approved Budget for any two-week period (a "<u>Permitted Variance</u>"); <u>provided</u>, however, that the purchase of gas required for the operation of the MACH Gen Entities' facilities and the payment of variable operations and maintenance expenses of such facilities as required in the ordinary course of business to operate and maintain such facilities, shall be excluded from the calculation

25

of Permitted Variance. If the aggregate amount of proceeds from DIP Extensions of Credit or

Cash Collateral actually used by MACH Gen, measured once every two weeks, is less than the

aggregate amount of DIP Extensions of Credit and Cash Collateral available for use by MACH

Gen in the Approved Budget during such period, then MACH Gen may carry over any such

unused amount to the future periods in the Approved Budget.

      15.    <u>Continuation of Prepetition Liens</u>. Until (a) the Borrower and the Subsidiaries

have indefeasibly paid in full all DIP Obligations (including the satisfactory cash

collateralization of all issued and outstanding letters of credit under the DIP Credit Agreement in

accordance with the DIP Loan Documents), all First Lien Prepetition Obligations and all Second

Lien Prepetition Obligations, (b) the DIP Lenders' obligations under the DIP Facility have

terminated, (c) all objections and challenges to (i) the liens and security interests of the

Prepetition Secured Lenders (including, without limitation, liens granted for adequate protection

purposes) and (ii) the First Lien Prepetition Obligations and the Second Lien Prepetition

Obligations, have been waived, denied or barred, and (d) all of MACH Gen's stipulations in

paragraph F above have become binding upon their estates and parties in interest in accordance

with paragraph 37 below, all liens and security interests of the DIP Lenders and the Prepetition

Secured Lenders (including, without limitation, liens granted for adequate protection purposes)

shall remain valid and enforceable with the same continuing priority as described herein.

Without limiting the foregoing, notwithstanding any payment of all or any portion of the First

Lien Prepetition Obligations, the Prepetition Liens shall continue in full force and effect and

shall be deemed to secure the full and timely payment of the DIP Obligations (separate from and

in addition to the DIP Liens granted to the DIP Agent on behalf of the DIP Lenders in paragraph

16 below) until the payment in full of all of the DIP Obligations and the termination of the DIP Lenders' obligations under the DIP Facility.

16.    <u>DIP Liens and Collateral</u>.  As security for the full and timely payment of the DIP Obligations, the DIP Agent on behalf of the DIP Lenders is hereby granted, pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, valid, enforceable, nonavoidable and fully perfected security interests in and liens and mortgages (collectively, the "<u>DIP Liens</u>") upon all existing and after-acquired tangible and intangible personal and real property and assets of each of the MACH Gen Entities, including, without limitation, Prepetition Collateral, accounts receivable, inventory, equipment, fee and leasehold interests in real property, general intangibles, contract rights, intercompany notes, cash, deposit accounts, securities accounts, investment property, rights, claims and causes of action, commercial tort claims, and one hundred percent (100%) of the outstanding equity interests in the Subsidiaries (collectively, the "<u>Collateral</u>"); provided that this Interim Order does not grant, and shall not be deemed to grant, any security interests in or liens on claims and causes of action under Chapter 5 of the Bankruptcy Code and similar laws, and any proceeds thereof and property received thereby whether by judgment, settlement or otherwise (collectively, the "<u>Avoidance Actions</u>").  The DIP Liens shall not, without the consent of the DIP Agent, be made subject to, or *pari passu* with, any other lien or security interest, other than to the extent expressly provided herein and subject to the Carve-Out, by any court order heretofore or hereafter entered in the Chapter 11 Cases, and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases, upon the conversion of any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (such cases or proceedings, "<u>Successor Cases</u>"), and/or upon the dismissal of any of the Chapter 11 Cases.  The DIP Liens and the

27

Adequate Protection Liens shall not be subject to sections 510, 549, 550 or 551 of the

Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code

or, upon entry of the Final Order, section 506(c) of the Bankruptcy Code. The MACH Gen

Entities shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the

Collateral, except as permitted by the DIP Loan Documents or as approved by the Court.

17.    Priority of DIP Liens. The DIP Liens (a) shall constitute first-priority security

interests in and liens upon all Collateral that is not otherwise subject to any valid, perfected,

enforceable and nonavoidable lien in existence as of the Petition Date, pursuant to section

364(c)(2) of the Bankruptcy Code; (b) shall be senior to and prime the Prepetition Liens,

pursuant to section 364(d)(1) of the Bankruptcy Code, and (c) shall be senior to and prime all

Adequate Protection Liens.

18.    Automatic Effectiveness of Liens.  The automatic stay imposed under

section 362(a) of the Bankruptcy Code is hereby vacated and modified to permit the MACH Gen

Entities to grant the liens and security interests to the Prepetition Agents, the Prepetition Secured

Lenders, the DIP Agent and the DIP Lenders contemplated by this Interim Order and the other

DIP Loan Documents.

19.    Automatic Perfection of DIP Liens. The DIP Liens granted pursuant to this

Interim Order shall constitute valid, enforceable, nonavoidable and duly perfected first priority

security interests and liens, and the DIP Agent and DIP Lenders shall not be required to file or

serve financing statements, notices of lien, mortgage deeds, deeds of trust or similar instruments

which otherwise may be required under federal, state or local law in any jurisdiction, or take any

action, including taking possession, to validate and perfect such security interests and liens; and

the failure by the MACH Gen Entities  to execute any documentation relating to the DIP Liens

28

shall in no way affect the validity, enforceability, perfection or priority of such liens. The DIP Agent and the DIP Lenders are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, deeds of trust, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Agent or the DIP Lenders shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, deeds of trust, notices of lien or similar instruments or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, nonavoidable and not subject to challenge, dispute or subordination, at the time and as of the date of entry of this Interim Order. Upon the request of the DIP Lenders, the MACH Gen Entities, without any further consent of any party, are authorized to take, execute and deliver such instruments (in each case without representation or warranty of any kind except as set forth in the DIP Loan Documents) to enable the DIP Agent or the DIP Lenders to further validate, perfect, preserve and enforce the DIP Liens. A certified copy of this Interim Order may be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, deeds of trust, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording.

20.     Other Automatic Perfection Matters. To the extent that any Prepetition Agent is the secured party under any account control agreements, listed as loss payee under any of MACH Gen's insurance policies or is the secured party under any Financing Document, the DIP Agent, on behalf of the DIP Lenders, is also deemed to be the secured party under such account control agreements, loss payee under MACH Gen's insurance policies and the secured party under each

29

such Financing Document, and shall have all rights and powers in each case attendant to that

position (including, without limitation, rights of enforcement), and shall act in that capacity and

distribute any proceeds recovered or received in accordance with the terms of this Interim Order

and/or the Final Order, as applicable, and the other DIP Loan Documents. The First Lien Agent

or the Second Lien Agent, as applicable, shall serve as agent for the DIP Agent for purposes of

perfecting the DIP Agent's security interests in and liens on all Collateral that is of a type such

that perfection of a security interest therein may be accomplished only by possession or control

by a secured party.

21.     <u>Automatic Perfection of Adequate Protection Liens</u>. The Adequate Protection

Liens granted pursuant to this Interim Order shall constitute valid, enforceable, nonavoidable and

duly perfected security interests and liens, and the First Lien Agent, First Lien Lenders, Second

Lien Agent and Second Lien Lenders (collectively, the "<u>Adequate Protection Parties</u>") shall <u>not</u>

be required to file or serve financing statements, mortgage deeds, deeds of trust, notices of lien

or similar instruments which otherwise may be required under federal, state or local law in any

jurisdiction, or take any action, including taking possession, to validate and perfect such security

interests and liens; and the failure by the MACH Gen Entities to execute any documentation

relating to the Adequate Protection Liens shall in no way affect the validity, enforceability,

perfection or priority of such liens. The Adequate Protection Parties are hereby authorized, but

not required, to file or record financing statements, trademark filings, copyright filings,

mortgages, deeds of trust, notices of lien or similar instruments in any jurisdiction or take any

other action in order to validate and perfect the liens and security interests granted to them

hereunder. Whether or not the Adequate Protection Parties shall, in their sole discretion, choose

to file such financing statements, trademark filings, copyright filings, mortgages, deeds of trust,

RLF1 9987507v.1

notices of lien or similar instruments or otherwise confirm perfection of the liens and security

interests granted to them hereunder, such liens and security interests shall be deemed valid,

perfected, allowed, enforceable, nonavoidable and not subject to challenge, dispute or

subordination, at the time and as of the date of entry of this Interim Order.  Upon the request of

the First Lien Lenders and/or Second Lien Lenders, subject in each case to the Intercreditor

Agreement, the MACH Gen Entities, without any further consent of any party, are authorized to

take, execute and deliver such instruments (in each case without representation or warranty of

any kind except as set forth in the DIP Loan Documents) to enable the applicable Adequate

Protection Party to further validate, perfect, preserve and enforce the Adequate Protection Liens.

A certified copy of this Interim Order may be filed with or recorded in filing or recording offices

in addition to or in lieu of such financing statements, mortgages, deeds of trust, notices of lien or

similar instruments, and all filing offices are hereby authorized to accept such certified copy of

this Interim Order for filing and recording.

22.    <u>DIP Superpriority Claims</u>.  In addition to the liens and security interests granted to

the DIP Agent on behalf of the DIP Lenders pursuant to this Interim Order, subject to the Carve-

Out and in accordance with sections 364(c)(1), 503 and 507 of the Bankruptcy Code, all of the

DIP Obligations (including, without limitation, all DIP Extensions of Credit) shall constitute

allowed superpriority administrative expense claims (the "<u>DIP Superpriority Claims</u>") with

priority over any and all administrative expenses of MACH Gen, whether heretofore or hereafter

incurred, of the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 364,

365, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 726, 1113, 1114 or any

other provisions of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable

from and have recourse to all prepetition and postpetition property of MACH Gen, including, but

31

not limited to, the Avoidance Actions (subject to entry of the Final Order), and all proceeds thereof. For the avoidance of doubt, the DIP Superpriority Claims may be treated as set forth in an Acceptable Plan (as defined in the Prepetition First Lien Amendment) (but only if such Acceptable Plan is confirmed).

23.    <u>Adequate Protection Liens and Adequate Protection Superpriority Claims</u>. Subject only to the Carve-Out, the Adequate Protection Parties are hereby granted the following Adequate Protection Obligations, in each case to secure an amount equal to the aggregate post-petition diminution in value (which shall be calculated in accordance with Bankruptcy Code section 506(a)) of the interests of the Adequate Protection Parties in the Prepetition Collateral (including the Cash Collateral), including without limitation any such diminution in value resulting from depreciation, physical deterioration, use, sale, loss or decline in market value of the Prepetition Collateral, the priming of the First Lien Agent's and Second Lien Agent's security interests and liens in the Prepetition Collateral, and/or the imposition of the automatic stay under section 362 of the Bankruptcy Code, or otherwise:

(a)    The First Lien Agent, on behalf of the First Lien Lenders, shall receive:

(i)    valid, enforceable, nonavoidable and fully perfected, postpetition security interests in and liens (effective and perfected upon the date of entry of this Interim Order and without the necessity of execution by the MACH Gen Entities (except to the extent so requested by the First Lien Agent) of mortgages, deeds of trust, security agreements, pledge agreements, financing statements, and other agreements or instruments) on the Collateral, including for the avoidance of doubt Cash Collateral (the "<u>Adequate Protection Liens</u>"), which liens shall be junior and subject only to the DIP Liens and, solely upon the occurrence of a Termination Date,

32

payment of the Carve-Out in accordance with the terms and conditions set forth in this Interim Order;

(ii)    superpriority administrative expense claims under Bankruptcy Code section 507(b) (the "Adequate Protection Superpriority Claims"; and together with the DIP Superpriority Claims, the "Superpriority Claims") which claims shall be junior and subject only to the DIP Superpriority Claims and, solely upon the occurrence of a Termination Date, payment of the Carve-Out in accordance with the terms and conditions set forth in this Interim Order, and which shall have priority in payment, subject to entry of a Final Order, over any and all other administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to the entry of a Final Order), 507(a), 507(b), 546(c), 546(d), 552, 1113 and 1114, whether or not such expenses or claims arise in the Chapter 11 Cases or in any subsequent cases or proceedings under the Bankruptcy Code that may result therefrom; and

(iii)    reimbursement from MACH Gen, without further order of this Court, of all reasonable past, present and future costs and expenses of the First Lien Lenders and the DIP Lenders when due  (including, without limitation, the reasonable fees and expenses of the First Lien Lenders' and the DIP Lenders' professionals (without the necessity of filing a fee application)).

(b)    The Second Lien Agent, on behalf of the Second Lien Lenders, shall receive Adequate Protection Liens on the Collateral, including for the avoidance of doubt Cash Collateral, which liens shall be subordinate and junior to (x) the Prepetition Liens, (y) the DIP Liens, and (z) the Adequate Protection Liens granted to the First Lien Agent on behalf of the

First Lien Lenders and otherwise subject as Second Liens (as defined in the Intercreditor Agreement) to the terms of the Intercreditor Agreement in all respects.

(c)    Additionally, the Second Lien Lenders shall receive reimbursement from MACH Gen, without further order of this Court, of all reasonable past, present and future costs and expenses of the Second Lien Lenders when due (including, without limitation, the reasonable fees and expenses of the Second Lien Lenders' professionals (without the necessity of filing a fee application)).

(d)    For the avoidance of doubt, the use of Cash Collateral, for any purpose, shall constitute post-petition diminution in value of the Prepetition Secured Lenders' interest in the Collateral and shall entitle the First Lien Lenders (or the First Lien Agent on behalf of the First Lien Lenders) to dollar-for-dollar Adequate Protection Liens and Adequate Protection Superpriority Claims and the Second Lien Lenders (or the Second Lien Agent on behalf of the Second Lien Lenders) to dollar-for-dollar Adequate Protection Liens, in accordance with the terms of this Interim Order. Nothing herein shall impair or modify the application of Bankruptcy Code section 507(b) in the event that the adequate protection provided to the Adequate Protection Parties hereunder is insufficient to compensate for any post-petition diminution in value of the interests of the Adequate Protection Parties in the Prepetition Collateral during the Chapter 11 Cases or any successor cases; provided that any claim granted to the Second Lien Lenders (or the Second Lien Agent on behalf of the Second Lien Lenders) under Bankruptcy Code section 507(b) shall be subordinate and junior to (i) any claims granted to the First Lien Lenders (or the First Lien Agent on behalf of the First Lien Lenders) and (ii) all Superpriority Claims.

34

24.    <u>Additional First Lien Adequate Protection</u>.  In addition to the Adequate Protection

Liens and the Adequate Protection Superpriority Claims, the First Lien Agent on behalf of the

First Lien Lenders shall receive from MACH Gen, as additional adequate protection, (a) upon

the entry of this Interim Order, immediate cash payment of all accrued and unpaid interest then

due under the First Lien Credit Agreement at the non-default rate provided for in the First

Lien Financing Documents, and all other accrued and unpaid fees (including any letter of

credit fees and fronting fees) and disbursements (including reasonable legal and advisory

fees and expenses (without the necessity of filing a fee application)) owing to the First Lien

Agent and the First Lien Lenders under the First Lien Financing Documents and incurred

prior to the Petition Date, and (b) periodic adequate protection payments in accordance with, and

in the amounts set forth in, the Approved Budget, which shall include the cash payment of (i) all

interest (at the non-default rate), fees, disbursements (including reasonable legal and advisory

fees and expenses (without the necessity of filing a fee application)) and principal, in each

case, when due under the First Lien Credit Agreement with respect to the Prepetition Term Loan

Facility and in accordance with the First Lien Credit Agreement; and (ii) all interest (at the non-

default rate) and fees (including letter of credit fees, fronting fees and unused line fees) and

disbursements (including reasonable legal and advisory fees and expenses (without the

necessity of filing a fee application)), when due under the First Lien Credit Agreement with

respect to the Prepetition Revolving Credit Facility, in each case in accordance with the First

Lien Credit Agreement; <u>provided</u> that adequate protection payments of interest under the First

Lien Credit Agreement under clauses (b)(i) and (b)(ii) shall be at the default rate after the

occurrence and during the continuance of an Event of Default (other than the Events of Default

specified in Section 18(e) of the RSA) (the "<u>Additional First Lien Adequate Protection</u>

35

Payments"; and together with the Adequate Protection Liens, the Adequate Protection

Superpriority Claims, and other amounts required to be made under paragraphs 22, 23, and 24 of

this Interim Order, the "Adequate Protection Obligations"). In addition, the payment of the

Yield Maintenance Fee in accordance with the terms of the DIP Loan Documents, the Financing

Documents and this Interim Order constitutes an integral element of the adequate protection

provided to the DIP Lenders and the First Lien Lenders. Each Prepetition Secured Lender is also

authorized to terminate the RSA, as to itself, and to exercise all of its rights thereunder, in

accordance with the terms of the RSA irrespective of the automatic stay which, to the extent it

might apply, is hereby modified to permit such termination and the exercise by each Prepetition

Secured Lender of its rights under the RSA.

     25.    Carve-Out. Upon the DIP Agent's issuance of a Default Notice (as defined

below), all liens, claims and other security interests held by any party, including the

Superpriority Claims, the Adequate Protection Liens, the DIP Liens, and the Prepetition Liens,

shall be subject to the payment of the Carve-Out. For purposes of this Order, the "Carve-Out"

shall mean, collectively: (a) fees pursuant to 28 U.S.C. § 1930(a)(6) and 28 U.S.C. § 156(c); and

(b) unpaid fees and expenses of professionals retained by the MACH Gen Entities pursuant to

section 327 or 328 of the Bankruptcy Code (the "Professionals") incurred and accruing after the

date the DIP Agent issues a Default Notice, to the extent such fees and expenses are allowed by

the Court, in an aggregate amount (excluding any incurred and unpaid professional fees and

expenses of any of the agents or lenders payable pursuant to this Interim Order) not in excess of

(i) $2,300,000, with respect to MACH Gen's Professionals (the "MACH Gen Professional

Carve-Out Cap") and (ii) $50,000, with respect to the Professionals of any Committee (the

"Committee Professionals' Carve-Out Cap" and together with the MACH Gen Professionals'

Carve-Out Cap, the "Professionals' Carve-Out Cap") and (iii) unpaid Professionals' fees and expenses incurred and accruing prior to or on the date upon which the DIP Agent issues a Default Notice, but only to the extent such unpaid fees and expenses are, with respect to each Professional, set forth in the Approved Budget and are allowed by the Court (clauses (i), (ii) and (iii), collectively, the "Professionals' Carve-Out"); provided, however, that the Professionals' Carve-Out Cap shall be reduced, dollar-for-dollar, by the amount of any fees and expenses incurred and accruing by MACH Gen and paid to the applicable Professionals following delivery of a Default Notice to MACH Gen. Notwithstanding the foregoing, so long as a Default Notice has not been issued, MACH Gen shall be permitted to pay fees to estate professionals and reimburse expenses incurred by estate professionals to the extent set forth in the Approved Budget and that are allowed by the Court and payable under sections 328, 330 and 331 of the Bankruptcy Code and compensation procedures approved by the Court and in form and substance reasonably acceptable to the MACH Gen Entities and the Prepetition Secured Lenders, as the same may be due and payable, and the same shall not reduce the Professionals' Carve-Out Cap. In any event, the DIP Lenders and the Prepetition Secured Lenders reserve the right to review and object to any fee statement, interim application or monthly application issued or filed by estate professionals. Notwithstanding any provision (including, without limitation, any "variance" or similar provision) of this Interim Order, any Final Order or the DIP Loan Documents to the contrary, aggregate cumulative expenditures for restructuring professional fees of MACH Gen or any Committee shall not exceed one hundred percent (100%) of the amount with respect thereto set forth in the Approved Budget.

26.    Investigation Budget. The MACH Gen Entities shall not assert or prosecute, and no portion of the DIP Facility, the Collateral (including the Prepetition Collateral and the Cash

37

Collateral), or the Carve-Out, and no disbursements set forth in the Approved Budget, shall be used for the payment of professional fees, disbursements, costs or expenses incurred by any party in interest in connection with (a) asserting or prosecuting any claims, causes of action, or Challenge (as defined in paragraph 37) against the Prepetition Secured Lenders, or (b) asserting any Challenge or raising any defenses to the Prepetition Obligations, the DIP Obligations, the Second Lien Prepetition Obligations or the liens of the Prepetition Secured Lenders; provided, however, that not more than $25,000 in the aggregate of proceeds of the Carve-Out, any Cash Collateral or any proceeds of the DIP Facility or the Collateral may be used to pay any allowed fees of the Committee or professionals retained by the Committee and incurred in connection with investigating the matters covered by the stipulations contained in paragraph F of this Interim Order (the "Investigation Budget").

27.    506(c) Waiver.  Upon the entry of the Final Order, the MACH Gen Entities (on behalf of themselves and their estates) shall irrevocably waive, and shall be prohibited from asserting, any surcharge claim under section 506(c) of the Bankruptcy Code or otherwise for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by the Prepetition Secured Lenders upon, the Collateral.  In no event shall the DIP Agent, the DIP Lenders, the First Lien Agent or the First Lien Lenders be subject to the equitable doctrine of marshaling or any similar doctrine with respect to the Collateral.

28.    Restrictions on Granting Post-Petition Liens; Collateral Rights; Limitations in Respect of Subsequent Court Orders and Subordination of Liens.  Except for the Carve-Out or as otherwise expressly set forth in this Interim Order, it shall constitute an Event of Default if any of the MACH Gen Entities incurs or requests authority to incur a claim or grants a lien (or a claim or lien is allowed) having a priority superior to or *pari passu* with those granted pursuant

38

to this Interim Order to the First Lien Agent on behalf of the First Lien Lenders at any time during which any portion of the DIP Facility, the DIP Obligations, the Prepetition Revolving Credit Facility, the Prepetition Term Loan Facility, the First Lien Prepetition Obligations, or the Adequate Protection Obligations owing to the First Lien Lenders remains outstanding. Without limiting any other provisions and protections of this Interim Order, unless the DIP Agent and the First Lien Agent have provided their prior written consent, there shall not be entered in these proceedings, or in any Successor Case, any order which authorizes (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the Collateral and/or entitled to priority administrative status which is superior to or *pari passu* with those granted pursuant to this Interim Order for any purpose other than as set forth in the Approved Budget. Without limiting the provisions and protections of this paragraph 28, if at any time prior to the indefeasible repayment and satisfaction in full in cash of all DIP Obligations and all First Lien Prepetition Obligations, including the satisfactory cash collateralization of all issued and outstanding letters of credit in accordance with the DIP Loan Documents, and the termination of the DIP Lenders' obligations to make DIP Extensions of Credit, including subsequent to the confirmation of any plan of reorganization (including an Acceptable Plan), with respect to the MACH Gen Entities or their estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt in violation of this Interim Order or the other DIP Loan Documents, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall be immediately be turned over to the DIP Agent or the First Lien Agent, as the case may be, for application in accordance with this Interim Order, the DIP Loan Documents and the First Lien Financing Documents, as applicable, and under applicable law.

39

29.    <u>Binding Nature of Order</u>.  The provisions of this Interim Order shall be binding upon the MACH Gen Entities and their respective successors and assigns (including, without limitation, any trustee or other fiduciary hereafter elected or appointed for or on behalf of any MACH Gen Entity's estate or with respect to its property).

30.    <u>Survival of Order</u>.  With respect to the DIP Lenders and the First Lien Lenders only, the provisions of this Interim Order and any actions taken pursuant thereto (a) shall survive the entry of any order:  (i) confirming any plan of reorganization in any of the Chapter 11 Cases; (ii) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code; or (iii) dismissing any of the Chapter 11 Cases; and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens, and security interests granted pursuant to this Interim Order shall maintain their priority as provided by this Interim Order until all of the DIP Obligations are indefeasibly paid in full and discharged in accordance with the DIP Loan Documents (including the satisfactory cash collateralization of all issued and outstanding letters of credit in accordance with the DIP Loan Documents).  The DIP Obligations shall not be discharged by the entry of any order confirming any plan of reorganization in any of the Chapter 11 Cases that does not provide for payment in full of the DIP Obligations (including the satisfactory cash collateralization of all issued and outstanding letters of credit in accordance with the DIP Loan Documents, and payment of any Yield Maintenance Fee, if applicable), and, only upon the entry of any such order, the MACH Gen Entities shall, and shall be deemed to, waive any such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code; <u>provided</u>, that notwithstanding the foregoing sentence, upon the consummation of an Acceptable Plan, (i) the DIP Obligations shall be (A) deemed paid in full and finally satisfied (whether by payment from the proceeds of the New First Lien Revolver (as defined in the Prepackaged Plan) or through

40

replacement of the DIP Obligations with obligations under the New First Lien Revolver, in each case, as provided in Article II.C.2 of the Prepackaged Plan) or (B) otherwise satisfied in accordance with the terms of an Acceptable Plan and (ii) in either case, the discharges provided under such Acceptable Plan shall be effective.

31.    <u>Protection under Section 364(e) of the Bankruptcy Code</u>.  If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity of any DIP Obligations or Adequate Protection Obligations owing to the DIP Agent, the DIP Lenders, the First Lien Agent or the First Lien Lenders incurred prior to the actual receipt by the DIP Lenders and the First Lien Lenders of written notice of the effective date of such reversal, modification, vacation or stay, (ii) the validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to the DIP Loan Documents with respect to any DIP Obligations or Adequate Protection Obligations owing to the DIP Agent, the DIP Lenders, the First Lien Agent or the First Lien Lenders, (iii) the validity of any Adequate Protection Obligations owing to the Second Lien Agent or the Second Lien Lenders incurred prior to the actual receipt by the Second Lien Lenders of written notice of the effective date of such reversal, modification, vacation or stay, subject in any event to the terms of the Intercreditor Agreement and the RSA, or  (iv) the validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to the DIP Loan Documents with respect to any Adequate Protection Obligations owing to the Second Lien Agent or the Second Lien Lenders, subject in any event to the terms of the Intercreditor Agreement and the RSA.  Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral or the incurrence of DIP Obligations or Adequate Protection Obligations owing to the Adequate Protection Parties by MACH Gen prior

41

to the actual receipt by the Prepetition Secured Lenders of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Interim Order, and the Adequate Protection Parties shall be entitled to all of the rights, remedies, protections and benefits granted under section 364(e) of the Bankruptcy Code, this Interim Order and the other DIP Loan Documents with respect to all uses of Cash Collateral and the incurrence of DIP Obligations and Adequate Protection Obligations owing to the Adequate Protection Parties.

32.     Termination of DIP Facility.  MACH Gen's  right to use the DIP Facility and Cash Collateral shall terminate immediately upon the earliest of (i) thirty (30) days after the Petition Date (unless a Final Order approved by the DIP Lenders and the First Lien Lenders has been entered as of such date extending MACH Gen's right to use Cash Collateral and the DIP Facility), (ii) seven (7) days following delivery of written notice (the "Default Notice," and such period of time, the "Default Notice Period") via electronic mail and facsimile by the DIP Lenders or the DIP Agent to counsel to MACH Gen, counsel to the First Lien Agent, counsel to the Second Lien Lenders, the U.S. Trustee, counsel to the Committee (if any) and any other official committee appointed in the Chapter 11 Cases, of the occurrence of an Event of Default (as defined below) and (iii) the Revolving Credit Maturity Date (as defined in the DIP Credit Agreement) (the date of such termination pursuant to clause (i), (ii) or (iii) above, the "Termination Date"), and the Yield Maintenance Fee (as such term is defined in the First Lien Credit Agreement or the DIP Credit Agreement, as applicable) shall apply to such termination and be included in the First Lien Prepetition Obligations and the DIP Obligations as provided in the First Lien Credit Agreement or the DIP Credit Agreement, as applicable, and irrespective of the commencement or continuation of the Chapter 11 Cases or any Successor Case.

42

33.    <u>Events of Default</u>.  Except as otherwise provided in this Interim Order or to the extent the First Lien Lenders may otherwise agree in writing, any violation of any of the terms of this Interim Order or any occurrence of an "Event of Default" under and as defined in Section 6.01 of the DIP Credit Agreement shall constitute an event of default (each, an "<u>Event of Default</u>"); it being understood that termination of the RSA (an "<u>RSA Non-Default Termination</u>") shall not be an Event of Default unless resulting from (i) the failure of MACH Gen to meet the milestones set forth in subparagraph (f), (g) or (h) of Section 4 (including the last sentence of Section 4, as applicable) of the RSA, or (ii) the occurrence of the Outside Date (as defined in the RSA) prior to the occurrence of the Consummation Date (as defined in the RSA.  Interest, including, where applicable, default interest, shall accrue and be paid as set forth in the DIP Credit Agreement.  Nothing in this paragraph 33 shall be construed to preclude or affect in any way the DIP Lenders' rights or remedies in respect of any Event of Default occurring after an RSA Non-Default Termination.

34.    <u>Modification of Stay; Rights and Remedies Upon Termination</u>.  Subject to paragraph 32 of this Interim Order, upon the occurrence of a Termination Date, the automatic stay provisions of section 362 of the Bankruptcy Code shall be automatically vacated and modified to the extent necessary to permit the DIP Agent, the DIP Lenders, the First Lien Agent and/or the First Lien Lenders, as applicable, to exercise all rights and remedies provided in this Interim Order, the DIP Loan Documents or the First Lien Financing Documents, as applicable, and to take any or all of the following actions without further order of or application to this Court:  (a) immediately terminate MACH Gen's use of Cash Collateral and cease making any DIP Extensions of Credit to MACH Gen; (b) immediately declare all DIP Obligations to be immediately due and payable; (c) immediately terminate the DIP Facility and the availability of

43

any DIP Extensions of Credit thereunder; (d) immediately set off any and all amounts in

accounts maintained by the MACH Gen Entities with (or subject to a security interest in favor

of) the DIP Agent, the DIP Lenders, the First Lien Agent, or the First Lien Lenders, as

applicable, against the DIP Obligations or the Prepetition Obligations, or otherwise enforce

rights against the Collateral in the possession of, or subject to a lien in favor of the DIP Agent,

the DIP Lenders, the First Lien Agent, or the First Lien Lenders, as applicable, in each case for

application towards the DIP Obligations or the Prepetition Obligations, as applicable; and (e)

take any other actions or exercise any other rights or remedies permitted under this Interim

Order, the DIP Loan Documents, the First Lien Financing Documents or applicable law to effect

the repayment of the DIP Obligations and the First Lien Prepetition Obligations.  The automatic

stay under section 362(a) of the Bankruptcy Code shall be automatically vacated and modified as

provided above, unless and until, during the Default Notice Period, the Court has determined that

an Event of Default has not occurred and/or is not continuing.  Unless otherwise ordered by the

Court, any party in interest's sole recourse with respect to opposing such modification of the

automatic stay under section 362(a) of the Bankruptcy Code shall be to contest the occurrence

and/or continuance of an Event of Default.  During the Default Notice Period, the MACH Gen

Entities shall (x) have no right to use any proceeds of the DIP Facility or the Cash Collateral, or

any right to request advances or issuances of letters of credit under the DIP Facility, other than

(i) with the consent of the DIP Lenders and the First Lien Lenders, (ii) to fund the Carve-Out to

the extent claims giving rise to the Carve-Out are incurred during the Default Notice Period, or

(iii) to contest the occurrence and/or continuance of the an Event of Default and (y) be entitled

to an emergency hearing before the Court, with proper notice to the DIP Lenders and the First

Lien Lenders, solely for the purpose of contesting whether an Event of Default has occurred

44

and/or is continuing. The rights and remedies of the DIP Agent, the DIP Lenders, the First Lien Agent and the First Lien Lenders specified herein are cumulative and not exclusive of any rights or remedies that the DIP Agent, the DIP Lenders, the First Lien Agent and/or the First Lien Lenders may respectively have under the DIP Loan Documents or the First Lien Financing Documents, or otherwise. The MACH Gen Entities shall cooperate fully with the DIP Agent, the DIP Lenders, the First Lien Agent and the First Lien Lenders, respectively, in their exercise of rights and remedies, whether against the Collateral or otherwise.

35.    <u>Limitations on Borrowings</u>. It shall constitute an Event of Default if any of the MACH Gen Entities seeks authorization for the MACH Gen Entities or their estates to borrow money from any person other than the DIP Lenders to the extent that the repayment of such borrowings is to be secured pursuant to section 364(d)(1) of the Bankruptcy Code by a security interest, lien or mortgage that is senior to or *pari passu* with any of the security interests, liens or mortgages held by the DIP Agent on behalf of the DIP Lenders or the First Lien Agent on behalf of the First Lien Lenders, including the Adequate Protection Liens, the Prepetition Liens, and the DIP Liens, unless in connection with such borrowings the DIP Obligations and any remaining First Lien Prepetition Obligations (including, for the avoidance of doubt, any Yield Maintenance Fees (as such term is defined in the First Lien Credit Agreement or the DIP Credit Agreement, as applicable)) are indefeasibly paid in full in cash (including the satisfactory cash collateralization of all issued and outstanding letters of credit in accordance with the DIP Loan Documents) as a condition to the closing of such borrowings.

36.    <u>Modifications of DIP Loan Documents and Budgets</u>. The MACH Gen Entities are hereby authorized, without further order of this Court, to enter into agreements with the DIP Agent, the DIP Lenders, the First Lien Agent and First Lien Lenders providing for any non-

RLF1 9987507v.1

material modifications to the Approved Budget or the DIP Loan Documents, or of any other modifications to the DIP Loan Documents necessary to conform the terms of the DIP Loan Documents to this Interim Order; provided, however, that the MACH Gen Entities shall not enter into any material modification or amendment to the Approved Budget or the DIP Loan Documents that is adverse to the MACH Gen Entities' estates absent further order of this Court.

37.    Stipulations Regarding First Lien Prepetition Obligations and Prepetition Liens Binding on Parties in Interest.  The stipulations and admissions contained in this Interim Order, including, without limitation, in recital paragraph F of this Interim Order, shall be binding on the MACH Gen Entities' estates and all parties in interest, including, without limitation, all Committees, unless (a) any Committee, or another party in interest (other than any of the MACH Gen Entities) with standing and requisite authority, has timely commenced a contested matter or adversary proceeding (subject to the limitations set forth in paragraph 26 hereof, including, for the avoidance of doubt, the Investigation Budget) (a "Challenge") challenging the amount, validity or enforceability of the First Lien Prepetition Obligations, the Second Lien Prepetition Obligations, or the perfection or priority of the Prepetition Liens, or otherwise asserting any objections, claims or causes of action on behalf of the MACH Gen Entities' estates against the Prepetition Secured Lenders relating to the First Lien Prepetition Obligations, Second Lien Prepetition Obligations or the Prepetition Liens no later than on or before either (i) if no Committee has been appointed, the earlier of (A) 75 days from the Petition Date and (B) the date on which objections to confirmation of MACH Gen's Chapter 11 plan or plans of reorganization for one or more of the MACH Gen Entities are due, or (ii) if a Committee has been appointed, the earlier of (A) 60 days after such Committee is appointed and (B) the date on which objections to confirmation of MACH Gen's Chapter 11 plan or plans of reorganization for one or

more of the MACH Gen Entities are due, and (b) to the extent the Court rules in favor of the plaintiff in any such timely and properly filed Challenge. If no such Challenge is timely commenced as of such date then, without further order of the Court, (x) the claims, liens and security interests of the Prepetition Secured Lenders shall, without further order of the Court, be deemed to be finally allowed for all purposes in the Chapter 11 Cases and any subsequent Chapter 7 cases and shall not be subject to challenge or objection by any party in interest as to validity, priority, amount or otherwise, and (y) without further order of the Court, the MACH Gen Entities and their estates shall be deemed to have released any and all claims or causes of action against the Prepetition Secured Lenders with respect to the Financing Documents or any related transactions. Notwithstanding anything to the contrary herein, if no Challenge is timely commenced, the stipulations contained in paragraph F of this Interim Order shall be binding on the MACH Gen Entities' estates, any Committee and all parties in interest. If a Challenge is timely commenced, the stipulations contained in paragraph F of this Interim Order shall be binding on the MACH Gen Entities' estates and all parties in interest except to the extent such stipulations are specifically challenged in such Challenge, as and when originally filed (ignoring any relation back principles); provided, that if and to the extent a Challenge is withdrawn, denied or overruled, the stipulations specifically challenged in such Challenge also shall be binding on the MACH Gen Entities' estates and all parties in interest.

38.    Waiver of Requirement to File Proofs of Claim.

(a)    The DIP Agent and the DIP Lenders shall not be required to file proofs of claim in the Chapter 11 Cases or any Successor Case in order to maintain their respective claims for payment of principal or interest under the DIP Loan Documents. The statements of claim in respect of the DIP Obligations set forth in this Interim Order, together with the evidence

47

accompanying the Motion and presented at the Interim Hearing are deemed sufficient to and do constitute proofs of claim in respect of such obligations and such secured status.

(b)    The First Lien Agent, the Second Lien Agent and the Prepetition Secured Lenders shall not be required to file proofs of claim in the Chapter 11 Cases or any Successor Case in order to maintain their respective claims for payment of principal or interest under the respective Financing Documents. The statements of claim in respect of the First Lien Prepetition Obligations and the Second Lien Prepetition Obligations, respectively, set forth in this Interim Order, together with the evidence accompanying the Motion and presented at the Interim Hearing are deemed sufficient to and do constitute proofs of claim in respect of such obligations and such secured status.

39.    <u>Final Hearing</u>.  The Final Hearing is scheduled for *March 28*, 2014, at *10:30 a.m.* ~~___:00 _.m.~~ (prevailing Eastern Time) before this Court. Any objections by creditors or other parties in interest to any provisions of this Interim Order shall be deemed waived unless timely filed and served in accordance with this paragraph 39. MACH Gen shall promptly serve notice of entry of this Interim Order and the Final Hearing on the appropriate parties in interest in accordance with the Bankruptcy Rules and the Local Rules. Without limiting the foregoing, MACH Gen shall promptly serve a notice of entry of this Interim Order and the Final Hearing, together with a copy of this Interim Order, by first class mail, postage prepaid, facsimile, electronic mail or overnight mail upon the Notice Parties. The notice of the entry of this Interim Order and the Final Hearing shall state that objections to the entry of a Final Order shall be filed with the United States Bankruptcy Court for the District of Delaware by no later than *4*:00 p.m. (prevailing Eastern Time) on *March 21*, 2014 (the "<u>Objection Deadline</u>").

48

40.    <u>DIP Agent and First Lien Agent Authorization</u>. For the avoidance of doubt and notwithstanding any provision of the Financing Documents or the DIP Loan Documents, each of the DIP Agent and First Lien Agent is hereby authorized to make any and all account transfers requested by MACH Gen in accordance with the Approved Budget, and is further authorized to take any other action reasonably necessary to implement the terms of this Interim Order.

41.    <u>No Modification of Interim Order</u>. The MACH Gen Entities irrevocably waive any right to seek any amendment, modification or extension of this Interim Order without the prior written consent of the DIP Lenders and the First Lien Lenders and no such consent shall be implied by any action, inaction or acquiescence of the DIP Lenders or the First Lien Lenders

42.    <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly (a) the DIP Agent's, the DIP Lenders', the First Lien Agent's, the First Lien Lenders' or the Second Lien Lenders' right to seek any other or supplemental relief in respect of MACH Gen, including the right to seek additional adequate protection, as applicable, subject to the terms of the Intercreditor Agreement and the RSA, (b) any of the rights of the DIP Agent, DIP Lender, the First Lien Agent, the First Lien Lenders, or the Second Lien Lenders under the Bankruptcy Code or applicable nonbankruptcy law (including, and subject to the terms of, the Intercreditor Agreement). Nothing contained herein shall be deemed a finding by the Court or an acknowledgement by the First Lien Agent or the First Lien Lenders that the adequate protection granted herein does in fact adequately protect the First Lien Agent or the First Lien Lenders against any diminution in value of the Prepetition Collateral.

43.    <u>Priority of Terms</u>. To the extent of any conflict between or among (a) the Motion, any other order of this Court (other than the Final Order), or any other agreements, on the one

hand, and (b) the terms and provisions of this Interim Order, on the other hand, the terms and provisions of this Interim Order shall govern.

44.     Entry of Interim Order; Effect.  This Interim Order shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof, notwithstanding the possible application of Fed. R. Bankr. P. 6004(h), 7062, 9014, or otherwise, and the Clerk of this Court is hereby directed to enter this Interim Order on this Court's docket in the Chapter 11 Cases.

45.     Limitation of Liability.  In determining to make any DIP Extensions of Credit, permitting the use of Cash Collateral, or in exercising any rights or remedies as and when permitted pursuant to this Interim Order (or any Final Order), the DIP Loan Documents, or the Financing Documents, none of the DIP Agent or the DIP Lenders, the First Lien Agent or the First Lien Lenders, or the Second Lien Agent or the Second Lien Lenders shall be deemed to be in control of the operations of the MACH Gen Entities or any affiliate (as defined in section 101(2) of the Bankruptcy Code) of the MACH Gen Entities, or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the MACH Gen Entities or any affiliate of the MACH Gen Entities (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).  Furthermore, nothing in this Interim Order, the DIP Loan Documents, or the Financing Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, the First Lien Agent, the First Lien Lenders, the Second Lien Agent or the Second Lien Lenders of any liability for any claims arising from the prepetition or postpetition activities of the MACH Gen Entities or any affiliate of the MACH Gen Entities.

50

46.  <u>Cash Management</u>.  Subject to paragraph 10 of this Interim Order, the MACH Gen Entities shall not seek approval of any cash management system without the prior approval of the DIP Lenders and the Prepetition Secured Lenders, which consent shall not be unreasonably withheld, and any order approving such cash management system shall be reasonably acceptable to the DIP Lenders and the Prepetition Secured Lenders.

47.  <u>Credit Bidding</u>.

(a)  The DIP Agent, acting at the direction of the requisite DIP Lenders, shall have the unqualified right to credit bid up to the full amount of the DIP Obligations in any sale of the Collateral (or any part thereof), without the need for further Court order authorizing the same, and whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise; and

(b)  Subject to and effective upon entry of the Final Order, the First Lien Agent, at the direction of the requisite First Lien Lenders, shall have the unqualified right to credit bid up to the full amount of any remaining First Lien Prepetition Obligations in the sale of any Prepetition Collateral (or any part thereof) subject to the satisfaction of the DIP Obligations, or as otherwise consented to by the DIP Lenders, without the need for further Court order authorizing the same, and whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

48.  <u>Equities of the Case</u>.  Subject to and effective upon entry of the Final Order and, in light of, as applicable, the subordination of the Prepetition Liens to the Adequate Protection Liens in respect of the First Lien Lenders, the DIP Liens, and the Carve-Out, and the granting of the DIP Liens, the First Lien Agent and the First Lien Lenders shall be entitled to all benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception under Bankruptcy

51

Code section 552(b) shall not apply to the First Lien Agent or the First Lien Lenders with respect to the proceeds, product, offspring, or profits of any of the Collateral, including the Prepetition Collateral.

49.    Reporting Requirements.  Notwithstanding any procedures or requirements under the Financing Documents or the DIP Loan Documents, MACH Gen shall prepare and furnish to counsel for the DIP Lenders, counsel for the First Lien Lenders and counsel for the Second Lien Lenders, in form and substance reasonably acceptable to the DIP Agent and the Prepetition Secured Lenders, a weekly report of receipts, disbursements, and a reconciliation of actual receipts and disbursements with those set forth in the Approved Budget, on a line-by-line basis, showing any percentage variance to the proposed corresponding line item of the Approved Budget (a) for the immediately preceding two-week period and (b) on a cumulative basis for the period of the Approved Budget or such other budget period, as applicable, and showing a calculation of the covenants and MACH Gen's compliance or noncompliance, which shall be certified by the chief financial officer or chief executive officer as having been prepared under such officer's supervision and in good faith (the "Budget Reconciliation").  MACH Gen shall also provide counsel to the DIP Agent, counsel to the First Lien Lenders, and counsel to the Second Lien Lenders with (i) a list of any and all prepetition claims paid during such period, each with a notation regarding which order authorized such payments, and (ii) the cumulative total of all prepetition claims paid, each with a notation regarding which order authorized such payments (the "Other Reporting Obligations").  Such Budget Reconciliation and Other Reporting Obligations shall be provided to counsel to the DIP Lenders, counsel to the First Lien Lenders and counsel to the Second Lien Lenders, so as actually to be received within three (3) business days following the end of each applicable period.  MACH Gen and its professionals shall make

52

themselves available to discuss the Budget Reconciliation and any other reports provided pursuant to this Interim Order with the professionals retained by the DIP Lenders, the First Lien Lenders and Second Lien Lenders on such basis as may be reasonably requested by the DIP Lenders, the First Lien Lenders and Second Lien Lenders.

50.   No Third Party Rights.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any party, creditor, equity holder or other entity other than the DIP Agent, the DIP Lenders, the First Lien Agent, the First Lien Lenders, the Second Lien Agent, the Second Lien Lenders, and the MACH Gen Entities, and their respective successors and assigns.

51.   Intercreditor Issues.  Nothing in this Interim Order shall be construed to convey on any individual DIP Lender or Prepetition Secured Lender any consent, voting or other rights beyond those (if any) set forth in the DIP Loan Documents, Financing Documents and RSA, as applicable.  Nothing in this Interim Order shall be construed to impair or otherwise affect any intercreditor, subordination or similar agreement or arrangement in respect of the First Lien Prepetition Obligations and the Second Lien Prepetition Obligations, including, without limitation, the Intercreditor Agreement, which, was negotiated at arm's length among commercially sophisticated parties, comprises an integral part of the Prepetition First Lien Facilities (and the use of Cash Collateral), as the case may be, and is enforceable to the fullest extent provided by Section 510(a) of the Bankruptcy Code and applicable law.

52.   Enforceability.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.  Any findings

of fact shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is stated as a finding of fact.

53.    <u>Retention of Jurisdiction</u>.  Notwithstanding any provision in the DIP Loan Documents or the Financing Documents, this Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of this Interim Order, the DIP Facility, or the DIP Loan Documents.

Dated: March 5, 2014
Wilmington, Delaware

UNITED STATES BANKRUPTCY JUDGE

54